## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In<br><br>JEVIC HOLDING CORP., et al., [1]<br><br>          Debtors. | Chapter 7<br><br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>        v.<br><br>JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., et al.; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP,<br><br>          Defendants. | Adv. Pro. No. 19-50256 (BLS) |

## PACHULSKI STANG ZIEHL & JONES LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)

---

[1] The Debtors in this Chapter 11 case, along with the last four digits of the Debtors' federal tax identification numbers are:  Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I. INTRODUCTION AND SUMMARY OF FACTS ................................................................. 1

    A.     The Bankruptcy Cases .......................................................................................... 1

    B.     The Committee commences the LBO Adversary against CIT and others
            and the parties resolve their dispute by entering into the Settlement
            Agreement ............................................................................................................. 1

    C.     The Parties accelerate the "Effective Date" knowing the Settlement
            Approval Order was the subject of an appeal, and CIT makes the CIT
            Payment to the Debtors ......................................................................................... 3

    D.     The Supreme Court of the United States reverses the decisions upholding
            the Settlement Approval Order and that Order is subsequently vacated .............. 5

    E.     The Cases are reopened and converted to chapter 7,  and the Chapter 7
            Trustee attempts to resume the LBO Adversary .................................................... 6

    F.     Commencement of the instant Adversary Proceeding .......................................... 7

II. ARGUMENT .................................................................................................................... 7

    A.     Legal standard ....................................................................................................... 7

    B.     CIT is not entitled to declaratory relief ................................................................ 9

            1.     Legal standard ........................................................................................... 9

            2.     CIT fails to state a claim for a declaratory judgment against PSZJ ......... 10

            3.     CIT is not entitled to a declaratory judgment that it has a
                 "superior" interest in the CIT Payment ..................................................... 14

             4.     CIT is not entitled to a declaratory judgment for immediate
                 recovery of the CIT Payment. .................................................................... 16

            5.     CIT is not entitled to a declaratory judgment that it is entitled to
                 recover amounts the Trustee recovers ....................................................... 17

    C.     The Complaint fails to state a claim for restitution against PSZJ ....................... 18

            1.     Section 549 of the Bankruptcy Code is the sole means through
                 which PSZJ's allowed and paid postpetition fees can be avoided. .......... 18

             2.     Even if "Restitution Due to Unjust Enrichment" could displace
                 section 549, it cannot be used against a third party, including PSZJ. ...... 18

             3.     Even if "Restitution Due to Unjust Enrichment" could displace
                 section 549, it would be inequitable to do so against PSZJ. .................... 20

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Adams v. Jankouskas,*
  452 A.2d 148 (Del. 1982) ........................................................................... 14

*Allen v. Official Employment–Related Issues Comm.* (*In re Enron Corp.*),
  297 B.R. 382 (Bankr. S.D.N.Y. 2003) ........................................................ 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) (quoting *Twombly,* 550 U.S. at 570, 557) ................. 8

*Atlantic Coast Line R. Co. v. Florida,*
  295 U.S. 301 (1935)............................................................................... 18, 20

*Balistreri v. Pacifica Police Dept.,*
  901 F.2d 696 (9th Cir. 1988) ....................................................................... 8

*Bank of United States v. Bank of Washington,*
  31 U.S. 8 (1832).................................................................................... 18, 19

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................................... 8

*Calpine Corp. v. O'Brien Envl. Energy, Inc.* (*In re O'Brien Envl. Energy, Inc.*),
  181 F.3d 527 (3d Cir. 1999)........................................................................ 15

*Corliss v. O'Brien,*
  200 F. App'x 80 (3d Cir. 2006) ................................................................. 10

*Crown Cork & Seal Co. v. Borden, Inc.,*
  779 F. Supp. 33 (E.D. Pa. 1991) ................................................................ 10

*Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*),
  2014 U.S. Dist. LEXIS 8813 (D. Del. Jan. 24, 2014).................................. 5

*Czyzewski v. Jevic Holding Corp.,*
  136 S. Ct. 2541 (2016)................................................................................... 5

*Czyzewski v. Jevic Holding Corp.,*
  137 S. Ct. 973 (2017)................................................................ 6, 13, 16, 17

*Deangelis v. Official Comm.* (*In re Kainos Partners Holding Co.*),
  2012 U.S. Dist. LEXIS 170641 (D. Del. Nov. 30, 2012) ............................ 4

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002)..................................................................................... 15

*Hartford Underwriters Ins. Co. v. Union Planters Bank,*
  530 U.S. 1 (2000)......................................................................................... 12

*In re Briscoe,*
  448 F.3d 201 (3d Cir. 2006)........................................................................ 14

*In re Consolidated Partners Inv. Co.,*
  156 B.R. 982 (Bankr. N.D. Ohio 1993) ..................................................... 12

*In re DVI, Inc.,*
  308 B.R. 703 (Bankr. D. Del. 2004) ........................................................... 16

*In re Global Home Products,*
  2006 Bankr. LEXIS 3608 (Bankr. D. Del. Dec. 21, 2006)........................ 17

*In re Grand Union Co.*,
266 B.R. 621 (Bankr. D. N.J. 2001) ................................................................ 16

*In re NE Opco, Inc.*,
501 B.R. 233 (Bankr. D. Del. 2013) ............................................................... 16

*In re Optim Energy, LLC*,
2014 Bankr. LEXIS 2155 (Bankr. D. Del. May 13, 2014) ............................ 13

*In re Philadelphia Newspapers, LLC*,
690 F.3d 161 (3d Cir. 2012).............................................................................. 15

*In re Pointer*,
952 F.2d 82 (5th Cir. 1992) ............................................................................... 12

*Isaacson v. Ivchenko* (*In re Nationwide Ambulance Servs.*),
2019 Bankr. LEXIS 2823 (Bankr. D.N.J. Sep. 6, 2019)......................... 12, 18

*Mazza v. Sheet Metal Workers' Nat'l Pension Fund*,
410 F. App'x 464 (3d Cir. 2010) ...................................................................... 21

*McCurdy v. Wedgewood Capital Mgmt. Co.*,
1999 U.S. Dist. LEXIS 8417 (E.D. Pa. May 27, 1999) ................................... 8

*Mihnlong Enters. v. New York Int'l Hostel, Inc.* (*In re New York Int'l Hostel, Inc.*),
157 B.R. 748 (S.D.N.Y. 1993) ........................................................................... 12

*Miranda v. Doral Fin. Co.* (*In re Marrero*),
382 B.R. 861 (BAP 1st Cir. 2008) .................................................................... 12

*Montanile v. Board of Trustees of the Nat'l Elevator Indus. Health Ben. Plan*,
136 S. Ct. 651 (2016)............................................................................................ 15

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .............................................................................. 8

*Nelson v. Colorado*,
137 S. Ct. 1249 (2017).............................................................................. 18, 20

*Northwestern Fuel Co. v. Brock*,
139 U.S. 216 (1891).............................................................................................. 18

*Official Comm. ex rel. Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003)................................................................................ 12

*Official Comm. v. CIT Group/Bus. Credit Inc.* (*In re Jevic Holding Corp.*),
688 F. App'x 166 (3d Cir. 2017) ........................................................................ 6

*Official Comm. v. CIT Grp. Bus. Credit* (*In re Jevic Holding Corp.*),
787 F.3d 173 (3d Cir. 2015)................................................................................. 5

*Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr.*,
258 F.3d 645 (7th Cir. 2001) ............................................................................. 21

*Paramount Film Distrib. Corp. v. State*,
30 N.Y.2d 415 (1972) ......................................................................................... 20

*Poole v. Taylor*,
466 F. Supp. 2d 578 (D. Del. 2006)................................................................... 10

*Reed v. Cooper* (*In re Cooper*),
405 B.R. 801 (Bankr. N.D. Tex. 2009).............................................................. 12

*Signature Apparel Grp. v. Laurita* (*In re Signature Apparel Grp.*),
577 B.R. 54 (Bankr. S.D.N.Y. 2017) ................................................................ 18

*State Auto Ins. Cos. v. Summy*,
234 F.3d 131 (3d Cir. 2000)................................................................................ 10

iii

*SunTrust Bank v. Matson* (*In re CHN Constr., LLC*),
   531 B.R. 126 (Bankr. E.D. Va. 2015) ........................................................................... 12
*SWJ Holdings, LLC v. Mocco* (*In re First Conn. Consulting Grp.*),
   254 F. App'x 64 (2d Cir. 2007) ................................................................................... 12
*Terra Nova Ins. Co. v. 900 Bar Inc.*,
   887 F.2d 1213 (3d Cir. 1989) ..................................................................................... 10
*United States Trustee v. Jones* (*In re Thornton's Millwork, Inc.*),
   209 B.R. 645 (Bankr. M.D. Pa. 1997) ......................................................................... 12
*United Trucking Serv. v. Trailer Rental Co. (In re United Trucking Serv.)*,
   851 F2d 159 (8th Cir. 1988) ....................................................................................... 15
*Wagner v. Christiana Bank & Trust Co.* (*In re Wagner*),
   353 B.R. 106 (Bankr. W.D. Pa. 2006) ......................................................................... 13
*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ................................................................................................... 10
*Woodbridge Baric Pre-Settlement Funding, L.L.C. v. Freeh* (*In re Deepwater Horizon*),
   845 F.3d 634 (5th Cir. 2017) ..................................................................................... 19

## STATUTES

11 U.S.C. § 1103 ............................................................................................................. 11
11 U.S.C. § 330 ........................................................................................................ 11, 20
11 U.S.C. § 362(a)(3) ...................................................................................................... 13
11 U.S.C. § 503(b) ......................................................................................................... 17
11 U.S.C. § 503(b)(9) ............................................................................................... 16, 17
11 U.S.C. § 549 ....................................................................................................... passim
11 U.S.C. § 549(a) .................................................................................................... 11, 12
11 U.S.C. § 549(d) .......................................................................................................... 14
11 U.S.C. § 551 ............................................................................................................... 17
11 U.S.C. § 726 ............................................................................................................... 17
11 U.S.C. § 726(b) .......................................................................................................... 13
28 U.S.C. § 2201 ............................................................................................................ 10

## OTHER AUTHORITIES

12 Moore's Federal Practice—Civil § 57.04 [3] (3d ed. 2020) ........................................... 10
4 S. Symons, *Pomeroy's Equity Jurisprudence* § 234 at 694 (5th ed. 1941) ............................... 15
Moore's Federal Practice—Civil § 57.04 [3] ................................................................. 16
Restatement (First) of Restitution § 215, Comment a, at 867 (1937) ................................... 15
Restatement (First) of Restitution § 74, cmt. H (1937) ...................................................... 19
Restatement (Third) of Restitution & Unjust Enrichment § 67(1)(a) (2011) .................. 19

## RULES

Fed. R. Bankr. P. 7012 ..................................................................................................... 1
Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 7, 8, 11
Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 8

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned adversary proceeding (the "Adversary Proceeding") by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Pachulski Stang Ziehl & Jones LLP ("PSZJ") submits this memorandum of points and authorities (this "Memorandum") in support of its *Motion to Dismiss Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* (the "Motion to Dismiss"), filed contemporaneously herewith.  In support thereof, PSZJ respectfully states as follows:

## I.    INTRODUCTION AND SUMMARY OF FACTS

### A.    The Bankruptcy Cases

1.    On May 20, 2008 (the "Petition Date"), Jevic Holding Corporation ("Jevic Holding") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Bankruptcy Court"), commencing the above-captioned bankruptcy cases (the "Cases").[2]

2.    On June 4, 2008, the United States Trustee appointed the Official Committee of Unsecured Creditors of the Debtors (the "Committee"),[3] for which PSZJ served as counsel.[4]

### B.    The Committee Commences the LBO Adversary Against CIT and Others and the Parties Resolve Their Dispute by Entering Into the Settlement Agreement

3.    The Debtors' bankruptcy filing was preceded by a leveraged buyout (the "LBO") sponsored by affiliates of Sun Capital and financed by CIT Group/Business Credit, Inc. ("CIT").  The Committee's professionals conducted an extensive investigation and determined

---

[2] References to pleadings filed in the Cases are indicated by "D.I."
[3] D.I. 77.
[4] D.I. 209.

that there were colorable claims against Sun Capital Partners IX, Sun Capital Partners

Management IV, LLC, and Sun Capital Partners, Inc. (collectively, "Sun") and CIT sounding in

fraudulent transfer arising out of the LBO.  On December 31, 2008, the Committee, having

initially been granted standing to do so through the DIP financing order,[5] commenced litigation

(the "LBO Adversary")[6] against CIT, asserting claims arising from the LBO.

4.    Thereafter, the Debtors and the Committee entered into a stipulation[7]

granting the Committee standing to pursue the LBO claims against Sun as well.[8]  On June 30,

2010, the Committee amended its complaint in the LBO Adversary, adding the Sun entities

(together with CIT, the "LBO Defendants") as defendants.[9]  On October 7, 2011, the Committee

filed its second amended complaint.[10]

5.    After several years of litigation and extensive negotiations between the

parties, on June 22, 2012, the Debtors, the Committee, and the LBO Defendants (collectively, the

"Settlement Parties") entered into a settlement agreement (the "Settlement Agreement").[11]  That

Agreement provided, among other things, that within ten days of the Effective Date (as defined

in the Settlement Agreement): (i) CIT was to "pay to the Debtors for the benefit of their estates

the sum of $2,000,000" (the "CIT Payment"); (ii) Sun was to release its lien on approximately

$2,000,000 of funds in favor of a liquidating trustee; (iii) the Committee's professionals,

including PSZJ, were to receive $200,000 from the Debtors on account of previously approved

fees and expenses; (iv) the Debtors were to pay chapter 11 administrative claims in full; (v)

general unsecured creditors were to receive a dividend; (vi) the Settlement Parties were to

---

[5] D.I. 118 ¶ 39.
[6] References to pleadings filed in the LBO Adversary are indicated by "LBO D.I."
[7] D.I. 434.
[8] D.I. 372; LBO Adv. D.I. 1.
[9] LBO Adv. D.I. 17.
[10] LBO Adv. D.I. 43.
[11] D.I. 1346-2; LBO Adv. D.I. 67-2.

exchange mutual releases, including a release of the claims asserted in the LBO Adversary, and dismiss the LBO Adversary; and (vii) the Cases were to be dismissed.[12]

6.      The Settlement Agreement provided, among other things, that "[t]he 'Effective Date' as used [in the Settlement Agreement] shall be the business day following the date that the Settlement Order becomes a Final Order, *unless otherwise agreed to by the Parties*" (emphasis added).[13]

7.      On December 4, 2012, the Bankruptcy Court entered an order (the "Settlement Approval Order"),[14] approving the Settlement Agreement over the objection of certain of the Debtors' former employees who asserted claims under the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Creditors") and the Office of the United States Trustee.

**C.      The Parties Accelerate the "Effective Date" Knowing the Settlement Approval Order Was the Subject of an Appeal, and CIT Makes the CIT Payment to the Debtors**

8.      On December 18, 2012, the WARN Creditors filed a notice of appeal of the Settlement Approval Order (the "Settlement Appeal"),[15] but the Bankruptcy Court denied its application for a stay pending appeal.[16]  The WARN Creditors did not seek a stay pending appeal from the United States District Court for the District of Delaware (the "District Court").

9.      With knowledge that the Settlement Approval Order was not a "Final Order" because the Settlement Appeal was pending, the Settlement Parties, including CIT,

---

[12] Settlement Agreement ¶ 2.
[13] Settlement Agreement ¶ 18.  "Final Order" was defined to include, among other things, "an order or judgment of the Bankruptcy Court . . . as to which the time to appeal, seek review or hearing, or petition for certiorari has expired and no timely appeal or petition for review, rehearing remand, or certiorari is pending . . ."  *Id*. ¶ 19.  To be clear, CIT was not obligated to pay its $2,000,000 settlement payment if the Settlement Approval Order was entered but not final due to a pending appeal.
[14] D.I. 1520; LBO Adv. D.I. 78.
[15] D.I. 1539; LBO Adv. D.I. 79.
[16] D.I. 1567.

exercised their collective right under the Settlement Agreement to establish an earlier "Effective Date" by waiving the Final Order requirement.  The game plan agreed to by the Settlement Parties was to waive the Final Order requirement, close on and consummate the Settlement Agreement, and then move to dismiss the WARN Creditors' pending appeal on grounds of mootness under prevailing case authority.[17]

10.     Thus, beginning in August of 2013 and continuing into the month of September, the Settlement Parties performed their respective obligations under the Settlement Agreement.  On or about August 29, 2013, CIT made the CIT Payment to the Debtors.  Also in that time frame, Sun released its lien on estate funds, the estates' releases of CIT and Sun became effective, the LBO Adversary was dismissed, and funds were disbursed to over a thousand administrative, priority, and general unsecured creditors.[18]  CIT made the CIT Payment to the estates knowing that there was no Final Order and that if the Settlement Parties' strategy of closing without a Final Order did not ultimately succeed and the Settlement Approval Order was vacated (as it was in 2017), its payment might not be recovered because the funds would have been distributed to a long list of recipients in 2013.

11.     During the same time frame in 2013, but independent of the Settlement Parties' fulfillment of their obligations under the Settlement Agreement, PSZJ applied for approval of its fees and expenses in the Cases on a final basis pursuant to section 330 of the Bankruptcy Code.[19]  On September 26, 2013, without objection from CIT, the Bankruptcy Court entered an order granting final allowance of PSZJ's fees and expenses as counsel to the

---

[17] *See, e.g., Deangelis v. Official Comm.* (*In re Kainos Partners Holding Co.*), 2012 U.S. Dist. LEXIS 170641, at *8-11 (D. Del. Nov. 30, 2012).  In fact, as discussed *infra*, the District Court granted the Settlement Parties' motion to dismiss, as an alternative ruling to its affirmance of the Court's Settlement Approval Order on the merits. The mootness issue was not addressed by the Third Circuit or the Supreme Court of the United States.
[18] LBO Adv. D.I. 88.
[19] D.I. 1707.

Committee in the total amount of $1,299,840.25.[20]  No appeal of that order was taken by CIT or

any other party and it became final on October 10, 2013.  PSZJ then received the unpaid portion

of its previously Court-approved fees and expenses (the "PSZJ Payment"), the amount at issue in

this Adversary Proceeding.  Other professionals and administrative claimants were also paid at or

around the same time without objection from CIT.

12.     On October 11, 2013, the Settlement Parties filed a certification

confirming that all conditions precedent to the Settlement Approval Order had been satisfied or

waived, and that all distributions had been made.[21]  On November 21, 2013, the Settlement

Parties moved to dismiss the WARN Claimants' Appeal in the District Court on mootness

grounds.

**D.     The Supreme Court of the United States Reverses the Decisions Upholding the Settlement Approval Order and that Order is Subsequently Vacated**

13.     On January 24, 2014, the District Court affirmed the Settlement Approval

Order and in the alternative dismissed the Settlement Appeal as moot.[22]  The Bankruptcy Court

dismissed the LBO Adversary on January 28, 2014, and closed the Cases on September 9, 2014.

14.     The WARN Creditors appealed from the District Court to the United

States Court of Appeals for the Third Circuit (the "Third Circuit"), which affirmed the decision

of the District Court on the merits, without addressing the District Court's mootness ruling.[23]

15.     In 2016, the Supreme Court of the United States (the "Supreme Court")

granted the WARN Creditors' petition for certiorari.[24]  On March 22, 2017, the Supreme Court

issued an Opinion and Order reversing the Third Circuit's decision and remanding the case to the

---

[20] D.I. 1729.
[21] D.I. 1741; LBO Adv. D.I. 89.
[22] *Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*), 2014 U.S. Dist. LEXIS 8813 (D. Del. Jan. 24, 2014).
[23] *Official Comm. v. CIT Grp. Bus. Credit* (*In re Jevic Holding Corp.*), 787 F.3d 173 (3d Cir. 2015) (the "Third Circuit Opinion").
[24] *Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016).

Third Circuit for further proceedings.[25]  The Third Circuit subsequently vacated its prior decision

and remanded back to the District Court.[26]  The District Court followed suit, vacated the

Settlement Approval Order, and remanded back to the Bankruptcy Court for further proceedings.

**E.**      **The Cases are Reopened and Converted to Chapter 7,**
           **and the Chapter 7 Trustee Attempts to Resume the LBO Adversary**

16.      The Bankruptcy Court reopened Jevic Holding's Case on May 17, 2017,

and the LBO Adversary on May 18, 2017.

17.      On May 23, 2018, the Bankruptcy Court converted Jevic Holding's Case

to one under chapter 7 of the Bankruptcy Code, effective as of June 5, 2018.[27]  On October 12,

2018, the Bankruptcy Court re-opened the remaining Debtors' chapter 11 Cases *nunc pro tunc* to

May 17, 2017, and converted them to cases under chapter 7 *nunc pro tunc* to June 5, 2018.[28]

18.      On April 12, 2019, George L. Miller, the chapter 7 trustee (the "Chapter 7

Trustee") appointed in all of the Cases, moved to substitute himself as the plaintiff in the LBO

Adversary (the "Motion to Substitute").[29]

19.      On April 6, 2020, Sun and CIT each filed motions for judgment on the

pleadings and memoranda in support of their motions,[30] and in opposition to the Motion to

Substitute.[31]  In its opposition to the Motion to Substitute, CIT contends, among other things,

that the Chapter 7 Trustee cannot pursue the LBO Adversary unless the estates return the entire

$2 million to CIT.[32]  It would appear that the return of the entire $2 million will never occur

---

[25] *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017).
[26] *Official Comm. v. CIT Group/Bus. Credit Inc.* (*In re Jevic Holding Corp.*), 688 F. App'x 166 (3d Cir. 2017).
[27] D.I. 1805.
[28] D.I. 1856.
[29] LBO Adv. D.I. 121.
[30] LBO Adv. D.I. 125, 130.
[31] LBO Adv. D.I. 127, 132.
[32] LBO Adv. D.I. 132, at 20.

because disbursements to administrative creditors made years ago cannot readily, if ever, be recovered.[33]  The Motion to Substitute remains *sub judice*.

**F.**    **Commencement of the Instant Adversary Proceeding**

20.    Nearly a year ago, on June 3, 2019, CIT filed the Complaint commencing the Adversary Proceeding, but at the time CIT did not seek to obtain or serve a summons.  The Complaint asserts two causes of action: (1) a declaratory judgment ("Count 1") and (2) restitution due to alleged unjust enrichment ("Count 2").  In essence, through the Adversary Proceeding, CIT seeks to recover the CIT Payment it voluntarily made to the Debtors not only from the Debtors, but from third parties —including PSZJ—that the Debtors subsequently paid on account of their allowed administrative claims against the Debtors.

21.    The Complaint languished for months on the docket because CIT did not pursue service thereof on PSZJ.  It was not until over six months later, January 23, 2020, that CIT served a summons and a copy of the Complaint on PSZJ by first-class mail.  Thereafter, CIT agreed to extend PSZJ's time to answer or move with respect to the Complaint to April 24, 2020, and the parties worked out a consensual briefing schedule by stipulation that was presented to the Court for approval.

## II.    ARGUMENT

**A.**    **Legal standard**

22.    A motion under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *McCurdy v. Wedgewood Capital Mgmt. Co.*, 1999 U.S. Dist. LEXIS 8417, at *11 n.6

---

[33] For example, in one notable circumstance, the Committee's former financial advisory firm, NHB Advisors, Inc. (who received payment of $597,233.32 from the Debtors after the entry of the Settlement Approval Order on account of their allowed professional fees), is defunct.

(E.D. Pa. May 27, 1999) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  A court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

23.    Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570, 557).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *id*. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *id.* at 557).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

24.    "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

25.     Here, neither of the claims for relief asserted in the Complaint survives the

*Twombly/Iqbal* standard and therefore the Complaint must be dismissed.

**B.      CIT is Not Entitled to Declaratory Relief**

26.     In Count 1 of the Complaint, CIT seeks a declaratory judgment against,

among others, the Debtors, the Chapter 7 Trustee, and PSZJ, declaring four matters:

(i)      CIT is entitled to recover from the Debtors and their estates the
$2,000,000 that CIT paid to the Debtors because the Approval Order has been
vacated;

(ii)     CIT is entitle to recover from each other Defendant the funds disbursed
from the Administrative Fund to such Defendant because the Approval Order has
been vacated;

(iii)    CIT's rights to recover (a) the $2,000,000 that CIT paid to the Debtors and
their estates and (b) the amounts distributed to the other Defendants from the
Administrative Fund, due to vacatur of the Approval Order, is superior to any
interest in, or right to, such funds that the Debtors, their estates, the Chapter 7
Trustee, or any Defendants may have or assert; and

(iv)    CIT is entitled to recover from (a) the Trustee, the Debtors and their
estates, any amounts disbursed from the Administrative Fund that the Trustee
recovers, whether as a result of litigation, settlement, or otherwise, or (b) any
further transferee of such recovered funds . . . .[34]

27.     On both procedural and substantive grounds, CIT fails to state a claim for

declaratory relief.

28.     As to the procedural infirmities, CIT (a) has improperly invoked the

declaratory judgment statute by simply asking the Court to proclaim that various different parties

are presently liable to it, and (b) otherwise lacks standing to seek these determinations.

*1.      Legal standard*

29.     The Declaratory Judgment Act provides that a court "may declare the

rights and other legal relations of any interested party seeking such declaration."

---

[34] Complaint at 13.

28 U.S.C. § 2201.  Whether declaratory relief should be granted is left to the sound discretion of the trial court.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000).  In determining whether to exercise its discretion to provide declaratory relief, the Third Circuit instructs courts to consider the following four factors: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  *Terra Nova Ins. Co. v. 900 Bar Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989).

30.     Importantly, though, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct.  *Nor is declaratory judgment meant simply to proclaim that one party is liable to another.*"  *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (emphasis added; citation omitted); *see also Poole v. Taylor*, 466 F. Supp. 2d 578, 584 (D. Del. 2006); *Allen v. Official Employment–Related Issues Comm.* (*In re Enron Corp.*), 297 B.R. 382, 387 (Bankr. S.D.N.Y. 2003) (citing cases).  CIT's Complaint runs afoul of these established principles.

   2.     *CIT Fails to State a Claim for a Declaratory Judgment Against PSZJ*

      a.     *Count 1 Improperly Seeks to Adjudicate Past Conduct and Incorrectly Declares that PSZJ is Liable to CIT*

31.     In the first instance, Count 1 seeks a declaratory judgment that, among other things, "(ii) CIT is entitle[d] to recover from [PSZJ] the funds disbursed from the Administrative Fund to such Defendant because the Approval Order has been vacated" on account of events that occurred over five years ago.  A declaratory judgment is unavailable for this purpose.  *See, e.g., Corliss*, 200 F. App'x at 84; *Crown Cork & Seal Co. v. Borden, Inc.*, 779 F. Supp. 33, 35 (E.D. Pa. 1991); *see also* 12 MOORE'S FEDERAL PRACTICE—CIVIL § 57.04 [3] (3d ed. 2020) ("Declaratory relief is inappropriate to adjudicate past conduct, such as when the

damages have already accrued."). For this reason alone, Count 1 must be dismissed under Rule 12(b)(6).

32.     Even if CIT could seek a declaratory judgment here, there are no grounds to do so. CIT does not—and cannot—allege or contend that PSZJ (a) entered into (let alone breached) any agreement with CIT, (b) owed any other legally cognizable duty to CIT, (c) received anything of value directly from CIT, or (d) failed to earn the PSZJ Payment and all other fees received (all of which were paid pursuant to final orders of this Court, without objection by CIT) in exchange for providing legal services in its capacity as Committee counsel.

33.     PSZJ's entitlement to payment from the Debtors' estates arose not from the Settlement Agreement, but by virtue of sections 330 and 1103 of the Bankruptcy Code. Moreover, this Court approved PSZJ's fees for services rendered and expenses incurred in furtherance of its representation of the Committee through quarterly and final fee orders—final orders of this Court which CIT never opposed—not the Settlement Agreement Order.

34.     In sum, there is no legal basis for CIT to obtain a declaratory judgment against PSZJ.

###### b.     *CIT Lacks Standing to Pursue Alleged Claims Against PSZJ*

35.     Though CIT claims to be entitled to declaratory and equitable relief, the Complaint is nothing more than a repackaged claim under section 549 of the Bankruptcy Code—a claim CIT lacks standing to pursue.

36.     Under section 549 of the Bankruptcy Code, "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case [and] that is not authorized under this title or by the court." 11 U.S.C. § 549(a). Importantly, section 549 of the Code is the exclusive means *for the estate* to avoid postpetition payments to third parties, such as the payments made to PSZJ. *See, e.g., Isaacson v. Ivchenko (In re Nationwide Ambulance*

*Servs.*), 2019 Bankr. LEXIS 2823, at *16 (Bankr. D.N.J. Sep. 6, 2019) (citing cases); *see also United States Trustee v. Jones* (*In re Thornton's Millwork, Inc.*), 209 B.R. 645, 647 (Bankr. M.D. Pa. 1997); *In re Consolidated Partners Inv. Co.*, 156 B.R. 982, 985 (Bankr. N.D. Ohio 1993).  CIT does not have, and has never sought, standing to bring a claim under section 549 of the Code.

37.     Section 549 states that "*the trustee* may avoid a [postpetition] transfer of property of the estate."  11 U.S.C. § 549(a) (emphasis added).  Consistent with *Hartford Underwriters*, "the statute appears quite plain in specifying who may use [section 549]—'the trustee.'"  *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000).  Courts, therefore, have consistently held that avoidance of postpetition transfers of property may only be instituted by a trustee or chapter 11 debtor in possession.  *See, e.g., SWJ Holdings, LLC v. Mocco* (*In re First Conn. Consulting Grp.*), 254 F. App'x 64, 67 (2d Cir. 2007); *In re Pointer*, 952 F.2d 82, 87-88 (5th Cir. 1992); *Miranda v. Doral Fin. Co.* (*In re Marrero*), 382 B.R. 861, 866 (BAP 1st Cir. 2008); *Mihnlong Enters. v. New York Int'l Hostel, Inc.* (*In re New York Int'l Hostel, Inc.*), 157 B.R. 748, 753 (S.D.N.Y. 1993).

38.     While derivative standing may be granted to an official committee to prosecute avoidance claims in chapter 11 cases in certain circumstances, the circumstances here do not warrant that result.[35]  As a threshold matter, derivative standing is *not* available in a chapter 7 case without the chapter 7 trustee's consent.  *SunTrust Bank v. Matson* (*In re CHN Constr., LLC*), 531 B.R. 126, 131 (Bankr. E.D. Va. 2015); *Reed v. Cooper* (*In re Cooper*), 405 B.R. 801, 813-14 (Bankr. N.D. Tex. 2009).  Here, CIT is not the Chapter 7 Trustee and CIT has never even sought (let alone obtained) the Chapter 7 Trustee's consent to bring claims under section 549 of the Code (or any other kind of claims).  Instead, CIT sued the Chapter 7 Trustee.

---

[35] *See Official Comm. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ("*Cybergenics II*").

39.     Moreover, CIT has not alleged *any* facts to support a request for derivative

standing under *Cybergenics II*:

> The Third Circuit has held that to be granted derivative
> standing, the moving party must demonstrate that (i) the debtor-in-
> possession has unjustifiably refused to pursue the claim or refused
> to consent to the moving party's pursuit of the claim on behalf of
> the debtor-in-possession; (ii) the moving party has alleged
> colorable claims; and (iii) the moving party has received leave to
> sue from the bankruptcy court.

*In re Optim Energy, LLC*, 2014 Bankr. LEXIS 2155, at *17 (Bankr. D. Del. May 13, 2014)

(citing *Cybergenics II*).

40.     First, CIT has not made a demand upon the Chapter 7 Trustee to bring a

section 549 action against any Defendant, including PSZJ, and therefore there is no basis to

conclude that the Chapter 7 Trustee has unjustifiably refused.  Second, for the reasons set forth

above and below, CIT has not alleged colorable claims.  And finally, CIT has not received leave

to sue PSZJ (or any other non-Debtor defendant), nor even filed a motion for the right to do so.[36]

c.     *Any claim against PSZJ under section 549 of the Code would be time-
barred*

41.     Significantly, a claim against PSZJ arising under section 549 of the Code

could not be "colorable" because it would be time-barred.  *See, e.g., In re Briscoe*, 448 F.3d 201,

---

[36] Indeed, CIT's commencement of the Adversary Proceeding arguably violates the automatic stay under section 362(a)(3) applying to any "act to obtain possession of property of the estate . . . or to exercise control over property of the estate," because the Chapter 7 Trustee exclusively possesses the avoidance powers and would be entitled to any property recovered under section 549.  To be clear, the Chapter 7 Trustee has the sole statutory right to recover property under section 549, but the property he would seek to recover would not become property of the estate unless and until it is recovered.  *See, e.g., Wagner v. Christiana Bank & Trust Co.* (*In re Wagner*), 353 B.R. 106, 113 (Bankr. W.D. Pa. 2006).  And to the extent any funds were recovered by the estate, they would have to be distributed in order of the Code's priority scheme and not simply be turned over to CIT.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 978.  Absent a lien or the establishment of a constructive trust by CIT, which it has not and could not assert, any recovered funds would be general estate funds, and would be subject to the Code's priority scheme.  Thus, in the first instance, pursuant to section 726(b) of the Code, the first in line for payment are holders of allowed administrative claims in the chapter 7 case, including the chapter 7 trustee's commission and professional fees.  Thereafter, any remaining proceeds would be shared ratably by holders of allowed administrative claims incurred during the chapter 11 cases, such that if monies were recovered, CIT would have to share in any recoveries with all other administrative claimants (including PSZJ, on account of its supplemental fee application for services incurred representing the Committee during the years of appeals).

219 (3d Cir. 2006) ("If a district court can discern, as a matter of law, that a cause of action is time-barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant.").

42.     An action under section 549 "may not be commenced after the earlier of (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."  11 U.S.C. § 549(d).

43.     The PSZJ Payment was made in or around September 2013, and the Cases were closed in September 2014.  Accordingly, the statute of limitations to bring an action to recover the PSZJ Payment, a postpetition payment made to PSZJ by the Debtors, expired in September 2015, at the latest.[37]

### 3.     *CIT is Not Entitled to a Declaratory Judgment That it Has a "Superior" Interest in the CIT Payment.*

44.     Count 1 also requests a declaratory judgment that "CIT's rights to recover (a) the $2,000,000 that CIT paid to the Debtors and their estates and (b) the amounts distributed to the other Defendants from the Administrative Fund, due to vacatur of the Approval Order, is superior to any interest in, or right to, such funds that the Debtors, their estates, the Trustee, or any Defendants may have or assert."  Complaint at 13.  This request is fatally flawed as well.

45.     In the Complaint, CIT does not assert (nor could it validly assert) a lien on, a property interest in, or constructive trust over the $2 million it paid to the Debtors pursuant to the Settlement Agreement.  *See, e.g., Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982) ("a

---

[37] The Debtors made the PSZJ Payment in October 2013.  By the time the Cases were closed in September 2014, approximately eleven months of the limitations period had already expired.  Therefore, even if the statute of limitations was somehow tolled while the Cases were closed (and CIT alleges no basis for equitable tolling), the statute of limitations would have expired sometime in June 2018, thirteen months after the Cases were reopened on May 17, 2017.  CIT did not file the Complaint until a year later, on June 3, 2019—long after the latest conceivable date on which the statute of limitation would have permitted an action to recover the PSZJ Payment.  CIT, therefore, cannot demonstrate a colorable claim against PSZJ under section 549 of the Code..

constructive trust . . . is imposed when a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty"). Nor can CIT even allege that there was a discrete "fund" against which any such putative lien, property right, or constructive trust could attach. Rather, CIT paid money into the estate, the funds were commingled and, consistent with the Settlement Parties' arrangements, were almost immediately disbursed from the estates to numerous administrative creditors with CIT's knowledge and agreement. Six years later, CIT cannot credibly contend that there was a discrete "fund" in which it has a cognizable interest. At best, CIT could only have a claim for restitution *from the estates* (not PSZJ) that is at best an unsecured administrative expense claim that arose in the chapter 11 Cases not a constructive trust or other property interest in the funds it paid into the estates.[38]

46.     CIT's claim to recover from the estate would have a chapter 11 administrative expense priority because its claim arises out of the Settlement Agreement the Debtors entered into post-petition. It is axiomatic that administrative expenses are those that arise from a postpetition transaction. *Calpine Corp. v. O'Brien Envl. Energy, Inc.* (*In re O'Brien Envl. Energy, Inc.*), 181 F.3d 527, 532 (3d Cir. 1999). This includes postpetition tort claims against a debtor, even if such claims "hav[e] no discernable benefit to the estate." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012); *see also United Trucking Serv. v. Trailer Rental Co. (In re United Trucking Serv.)*, 851 F2d 159, 162 (8th Cir. 1988)

---

[38] *See*, e.g., *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213–14 (2002) ("But where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'") (quoting RESTATEMENT (FIRST) OF RESTITUTION § 215, Comment a, at 867 (1937)). *See also Montanile v. Board of Trustees of the Nat'l Elevator Indus. Health Ben. Plan*, 136 S. Ct. 651 (2016) ("Equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally  out of the defendant's assets.'" )(quoting 4 S. Symons, *Pomeroy's Equity Jurisprudence* § 234 at 694 (5th ed. 1941));

(finding that unjust enrichment claims may be entitled to administrative priority); *In re Grand Union Co.*, 266 B.R. 621, 629 (Bankr. D. N.J. 2001) (stating that unjust enrichment of a debtor's estate would entitle creditor to administrative expense treatment).

    4.    *CIT is Not Entitled to a Declaratory Judgment for Immediate Recovery of the CIT Payment.*

47.    In Count 1, CIT requests a declaratory judgment that "CIT is entitled to recover from the Debtors and their estates the $2,000,000 that CIT paid to the Debtors because the Approval Order has been vacated." Complaint at 13. First, as discussed above, declaratory judgments like the ones sought by CIT are "inappropriate to adjudicate past conduct, such as when the damages have already accrued." MOORE'S FEDERAL PRACTICE—CIVIL § 57.04 [3], *supra*. It is also inappropriate to use the declaratory judgment mechanism to seek a finding that a defendant is liable to a plaintiff when an ordinary action to recover monies is available. See *supra*. The Adversary Proceeding is an inappropriate means to assert such a claim; CIT should file a motion to allow an administrative expense against the Debtors.

48.    Substantively, as discussed *supra*, at most, CIT may have an administrative claim against the Debtors, but that does not carry with it an absolute right to immediately recover the CIT Payment. To the extent CIT is found to have an allowed administrative claim against the Debtors, it is entitled to payment only in accordance with "the basic priority rules that apply under the primary mechanisms the Code establishes for final distributions of estate value in business bankruptcies." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 978. Accordingly, CIT is not even entitled to immediate payment in full from the Debtors (much less from PSZJ, with whom it is not in privity). *See, e.g., In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (denying immediate payment of section 503(b)(9) administrative expense); *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004) (stating that

"an administrative claim under section 503(b) need not be paid immediately"); *In re Global Home Products*, 2006 Bankr. LEXIS 3608, at **11-12 (Bankr. D. Del. Dec. 21, 2006) ("Section 503(b)(9) 'is a rule of priority, rather than payment.' The new section does not specify when payment will be made.")(quoting Alan N. Resnick, *The Future of Chapter 11: A Symposium Cosponsored by the American College of Bankruptcy: The Future of the Doctrine of Necessity and Critical Vendor Payments in Chapter 11 Cases*, 47 B.C.L. Rev 183, 204-205 (2005)). Nor can CIT hope to have its administrative claim satisfied ahead of more senior chapter 7 administrative expenses. See 11 U.S.C. § 726; *Jevic* 137 S. Ct. at 978.

    5.    *CIT is Not Entitled to a Declaratory Judgment That it is Entitled to Recover Amounts the Trustee recovers*

    49.    Finally, in Count 1, CIT also requests a declaratory judgment that it "is entitled to recover from (a) the Trustee, the Debtors and their estates, any amounts disbursed from the Administrative Fund that the Trustee recovers, whether as a result of litigation, settlement, or otherwise, or (b) any further transferee of such recovered funds." Complaint at 13. This part of Count 1 fails to state a claim for which relief can granted.

    50.    First, as explained above, any claim that the Chapter 7 Trustee might bring to avoid the PSZJ Payment (as with every other payment made from the proceeds of the Settlement) would be time-barred. Second, as also explained above, even if the Chapter 7 Trustee could successfully bring a claim against PSZJ, CIT would, at best, have an administrative claim against the Debtors, not an absolute right to recover the CIT Payment. Indeed, under section 551 of the Bankruptcy Code, a transfer avoided under section 549 of the Bankruptcy Code "is preserved **for the benefit of the estate**." 11 U.S.C. § 551 (emphasis added). As such, even if the Chapter 7 Trustee could avoid the PSZJ Payment under section 549, it

would be for the benefit of the Debtors' estates as a whole, not CIT's alone, and the proceeds

would have to be distributed in accordance with statutory priorities.

**C.**    **The Complaint fails to state a claim for restitution against PSZJ**

    *1.*    *Section 549 of the Bankruptcy Code is the Sole Means Through Which PSZJ's*
        *Allowed and Paid Postpetition Fees Can be Avoided.*

       51.    As discussed above, section 549 of the Bankruptcy Code is the exclusive

means by which a postpetition transfer from a debtor to a third party can be avoided.  *See, e.g.,*

*Isaacson*, 2019 Bankr. LEXIS 2823, at *16; *Signature Apparel Grp. v. Laurita (In re Signature*

*Apparel Grp.)*, 577 B.R. 54, 86 (Bankr. S.D.N.Y. 2017).  But, as previously stated, CIT does not

have standing to bring an action under section 549 and, even if it did, such action would have

been time-barred by the time the Complaint was filed.  *See* ¶¶ 35-43, *supra*.  CIT cannot recover

under Count 2 what neither it nor the Chapter 7 Trustee can recover under section 549.

    *2.*    *Even if "Restitution Due to Unjust Enrichment" Could Displace Section 549, it*
        *Cannot be Used Against a Third Party, Including PSZJ.*

       52.    In general, as CIT points out in its opposition to the Motion to Substitute,

where a judgment is vacated, the parties are restored to the *status quo ante*.  *Northwestern Fuel*

*Co. v. Brock*, 139 U.S. 216, 219 (1891).  This general rule, however, is not without exception.

*Nelson v. Colorado*, 137 S. Ct. 1249, 1260 (2017) (Alito, concurring) (quoting *Atlantic Coast*

*Line R. Co. v. Florida*, 295 U.S. 301, 309 (1935) (Cardozo, J.)).  One such exception is that a

right of restitution only exists against the other party to an overturned judgment; third parties

receiving what was paid are not liable for its return.  *Bank of United States v. Bank of*

*Washington*, 31 U.S. 8, 17 (1832).  "[A] bona fide payee who 'accepts the funds in satisfaction or

reduction of the payee's valid claim as creditor' is not liable to repay the funds."  *Woodbridge*

*Baric Pre-Settlement Funding, L.L.C. v. Freeh* (*In re Deepwater Horizon*), 845 F.3d 634, 638

(5th Cir. 2017) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 67(1)(a) (2011)).

53.     In *Bank of Washington*, two plaintiffs who obtained a judgment against the Bank of Washington assigned that judgment to the Bank of United States.  *Bank of Washington*, 31 U.S. at 15.  The Bank of United States presented the execution to the Bank of Washington, who paid the amount thereon to the Bank of United States.  *Id.*  In fact, the Bank of Washington *actually informed* the Bank of United States that it intended to appeal the judgment and, if they were successful in the appeal, they expected to be repaid.  *Id.*  The judgment was reversed and the Bank of Washington demanded repayment from the Bank of United States.  The Supreme Court of the United States disagreed, stating that "as it respects third parties, whatever has been done under the judgment, whilst it remained in full force, is valid and binding."  *Id.* at 17.

54.     The principle that third parties are not responsible for restitution extends to attorneys who are paid their earned fees in good faith:

> An attorney or other agent of the judgment creditor who receives payment from the judgment debtor or who receives the proceeds of sale of the debtor's things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it.

Restatement (First) of Restitution § 74, cmt. H (1937).

55.     Here, in accordance with the express terms of the Settlement Agreement, CIT made the CIT Payment directly to the Debtors' estates, not to PSZJ.  Indeed, as mentioned above, CIT and PSZJ were not in contractual privity and PSZJ owed no duty of any kind to CIT.  Thus, like the Bank of United States in *Bank of Washington* and the attorney described in the Restatement (First) of Restitution, PSZJ was merely a third party and received the PSZJ Payment

pursuant to a final Court order allowing PSZJ's fees and expenses on a final basis for its

representation of the Committee.

56.    In short, CIT is not entitled to restitution from PSZJ because PSZJ had and

has no legally cognizable duty to CIT; rather, it is a third party to the dispute concerning the CIT

Payment that CIT paid to the Debtors' estates.  Accordingly, Count 2 should be dismissed as to

PSZJ.

> *3.    Even if "Restitution Due to Unjust Enrichment" Could Displace Section 549, it Would be Inequitable to Do So Against PSZJ.*

57.    Restitution is an equitable remedy, and no party is absolutely entitled to it

in all circumstances.  *See, e.g., Nelson*, 137 S. Ct. at 1260 (restitution is "'equitable in origin and

function,' and return of the money was 'not of mere right,' but 'rest[ed] in the exercise of a

sound discretion.'") (quoting *Atlantic Coast R. Co.*, 295 U.S. at 309-10).  Similarly, unjust

enrichment "is undoubtedly equitable and depends upon broad considerations of equity and

justice."  *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972).

58.    PSZJ has not been unjustly enriched, nor is it inequitable that PSZJ

received the PSZJ Payment from the Debtors.  PSZJ's entitlement to the PSZJ Payment did not

arise out of the Settlement Agreement or Settlement Approval Order, but through the Court's

interim and final fee orders.  PSZJ was paid by the Debtors just as any other estate professional

in any other bankruptcy case—by applying for compensation and expense reimbursement under

section 330 of the Bankruptcy Code and, upon receiving Court approval, being paid those

allowed amounts from the Debtors from available estate funds.

59.    Furthermore, CIT makes no allegation – nor could it credibly do so – that

PSZJ acted inequitably.  PSZJ was paid for services rendered to the Committee and was entitled

to rely on the Court's order allowing its fees and expenses on a final basis under section 330 of

the Code when it received payment.  It is particularly disingenuous for CIT to now assert that PSZJ was "unjustly enriched" when CIT had the opportunity but failed to (a) object to PSZJ's final fee application, (b) object to the PSZJ Payment at the time it was made, or (c) obtain PSZJ's agreement (or any other professional's) to return the funds if the Settlement Approval Order was overturned.

60.     CIT was under no compulsion to make the CIT Payment before a Final Order was entered, but voluntarily assumed the risk by accelerating the Effective Date before the Settlement Approval Order became final.  It would be grossly inequitable to make PSZJ absorb the financial consequences of CIT's own judgment and knowing assumption of risk.

61.     In addition, "restitution is inequitable where the payor seeks to recoup a payment, though he has obtained a benefit from that payment which he intends to retain." *Mazza v. Sheet Metal Workers' Nat'l Pension Fund*, 410 F. App'x 464, 468 n.1 (3d Cir. 2010) (citing *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr.*, 258 F.3d 645, 651 (7th Cir. 2001)).  But that is precisely what CIT is trying to do here.  By simultaneously seeking $2 million in this Adversary Proceeding while also opposing the Motion to Substitute, arguing that it cannot be sued unless it gets the entire $2 million back (a near-certain impossibility), CIT is attempting to have it both ways, to retain the benefit of the release in the Settlement Agreement as well as get $2 million back.

62.     At the least, if the Complaint is not dismissed for the reasons set forth herein, PSZJ submits that this Adversary Proceeding should be stayed until the Motion to Substitute is finally adjudicated because if that Motion is denied, CIT will receive a *de facto* release and the alleged "inequity" it cites in the Complaint[39] will indisputably not exist.

---

[39] *See, e.g.,* Complaint ¶ 68.

## **CONCLUSION**

63.     Accordingly, for the reasons set forth herein, PSZJ respectfully requests

that the Court dismiss the Adversary Proceeding with prejudice as against PSZJ, and grant such

other and further relief as it deems just and proper.

Dated:  April 24, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

                                          */s/ Bradford J. Sandler*
                                          Robert J. Feinstein (admitted *pro hac vice*)
                                          Braford J. Sandler (DE Bar No. 4142)
                                          John A. Morris (admitted *pro hac vice*)
                                          Richard E. Mikels (admitted *pro hac vice*)
                                          919 North Market Street, 17th Floor
                                          Wilmington, Delaware 19899-8705
                                          Telephone:  (302) 652-4100
                                          Facsimile:  (302) 652-4400
                                          Email:  rfeinstein@pszjlaw.com
                                                  bsandler@pszjlw.com
                                                  jmorris@pszjlaw.com
                                                  rmikels@pszjlaw.com