## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| JEVIC HOLDING CORP., et al.,[1] | Case No. 08-11006 (BLS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group, | |
| v. | Adv. Pro. No. 19-50256 (BLS) |
| JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., et al.; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP, | **Response Deadline: May 15, 2020**<br>**Hearing Date: June 17, 2020 @ 10:00 a.m.** |
| Defendants. | **Related to Adv. Pro. Docket Nos. 19 and 20** |

## JOINDER OF KLEHR HARRISON HARVEY BRANZBURG LLP
## TO THE MOTION OF PACHULSKI STANG ZIEHL & JONES LLP TO DISMISS
## COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of the Debtors' federal tax identification numbers are:  Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

Klehr Harrison Harvey Branzburg LLP ("KHHB") hereby joins (the "Joinder") in *Pachulski Stang Ziehl & Jones LLP's Motion to Dismiss Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* [Adv. Pro. Docket No. 19] (the "Motion") and supporting Brief [Adv. Pro. Docket No. 20] (the "Brief")[2] filed in connection with the Motion and reserves its right to file any responsive pleadings with respect to the Motion and be heard at any hearing on the Motion.  In support of its Joinder, the KHHB respectfully represents, in addition to the facts and legal arguments set forth in the Brief which are incorporated by reference herein as to KHHB, as follows:

## I.    INTRODUCTION AND SUMMARY OF ADDITIONAL FACTS

### A.  The Bankruptcy Cases

1.      On May 20, 2008 (the "Petition Date"), Jevic Holding Corporation ("Jevic Holding"), Creek Road Properties, LLC, and Jevic Transportation, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Bankruptcy Court"), commencing the above-captioned bankruptcy cases (the "Cases").[3]

2.      On June 4, 2008, the United States Trustee appointed the Official Committee of Unsecured Creditors of the Debtors (the "Committee"). [4]

### B.  The Liquidation of Assets for the benefit of CIT

3.      The Debtors were a hybrid less-than-truckload and truckload carrier that provided regional and inter-regional time definite delivery across the United States and parts of Canada.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term as set forth in the Brief.
[3] References to pleadings filed in the Cases are indicated by "D.I."
[4] D.I. 77.

4.      Immediately prior to the Petition Date, the Debtors commenced a wind-down process pursuant to which they ceased substantially all of their operations and terminated approximately 90% of their employees. Post-petition, all of the Debtors' tangible assets were liquidated, and the proceeds were used to repay the outstanding obligations owed to CIT Group/Business Credit, Inc. ("CIT").

## C. The consensual use of cash collateral, provisions for a Carve-Out for Professionals including KHHB, and Final Approval of Professional Fees and Expenses

5.      The Debtors funded the liquidation of their assets and wind down of their business through a series of orders authorizing debtor-in-possession financing and the consensual use of cash collateral that each included the funding of budgeted "carve-outs" of the secured lenders' collateral for the payment of estate professionals, including KHHB.  The cash collateral orders and the amount of the budgeted carve-outs for KHHB reflected in each cash collateral order, aggregating $2,271,000.00, are as follows (collectively, the "Cash Collateral Orders"):

(a)     *Final Order (I) Authorizing Debtors-In-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders* [D.I. 118], with a budgeted "carve-out" for KHHB of $570,000;

(b)     *Order (1) Authorizing Debtors-in-Possession to Enter into First Amendment to Debtor-in-Possession Credit, Guaranty, and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders* [D.I. 217], with a budgeted "carve-out" for KHHB of $80,000;

(c)     *Order (1) Authorizing Debtors-in-Possession to Enter Into Second Amendment to Debtor-in-Possession Credit, Guaranty and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders* [D.I. 290], with a budgeted "carve-out" for KHHB of $56,000;

(d)     *Order (1) Authorizing Debtors-in-Possession to Enter Into Third Amendment to Debtor-in-Possession Credit, Guaranty and Security Agreement; and (2) Amending Final Order (I) Authorizing Debtors-in-Possession to Obtain Senior Debtor-in-Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders* [D.I. 368], with a budgeted "carve-out" for KHHB of $100,000;

(e)     *Order (A) Authorizing the Debtors' Use of Cash Collateral, and (B) Granting Adequate Protection* [D.I. 477], with a budgeted "carve-out" for KHHB of $60,000

(f)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 582], with a budgeted "carve-out" for KHHB of $147,000;

(g)     Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection [D.I. 654], with a budgeted "carve-out" for KHHB of $75,000;

(h)     Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection [D.I. 715], with a budgeted "carve-out" for KHHB of $85,000;

(i)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [Docket No. 862], with a budgeted "carve-out" for KHHB of $158,000;

(j)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 1017], with a budgeted "carve-out" for KHHB of $110,000;

(k)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 1103], with a budgeted "carve-out" for KHHB of $45,000;

(l)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 1166 , with a budgeted "carve-out" for KHHB of $30,000;

(m)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 1223 , with a budgeted "carve-out" for KHHB of $60,000;

(n)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I.1312], with a budgeted "carve-out" for KHHB of $90,000;

(o)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I.1405], with a budgeted "carve-out" for KHHB of $90,000;

(p)     *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I.1511], with a budgeted "carve-out" for KHHB of $140,000;

(q)    Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection [D.I.1586], with a budgeted "carve-out" for KHHB of $120,000;

(r)    *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I.1587 , with a budgeted "carve-out" for KHHB of $150,000; and

(s)    *Order Authorizing the Debtor's Use of Cash Collateral and Granting Adequate Protection* [D.I. 1675], with a budgeted "carve-out" for KHHB of $105,000.

6.    In addition to the $2,271,000.00 of funded "carve-outs" under the Cash Collateral Orders, as reflected on the *Debtor-In-Possession Monthly Operating Report for Filing Period May 20, 2008 - June 30, 2008 for Jevic Transportation, Inc.* [D.I. 190], KHHB held a retainer of $100,853.00 at the commencement of the cases.   Consequently, the total amount of funds carved out of secured creditors collateral and retainer held by KHHB to fund payment of fees and expenses of KHHB was $2,371,583.00 (collectively, the "KHHB Carve-Out").

7.    On September 26, 2013, the Court entered the *Fifth Omnibus Awarding Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses* [D.I. 1729] (the "Final Fee Order") approving on a final basis payment of fees and expenses to KHHB in the amount of $2,269,253, an amount that was $102,700 less than the KHHB Carve-Out.

## II.    **KHHB'S JOINDER**

8.    KHHB agrees with the arguments set forth in the Motion and Brief, including the relief requested therein, and accordingly files this Joinder in support of the Motion, incorporates by reference, and hereby joins in, and adopts, all arguments set forth in the Brief, and sets forth the additional basis in support of the request of KHHB to dismiss the Complaint as to KHHB.

## III.    **ADDITIONAL ARGUMENT**

### A.  *CIT fails to state a claim for a declaratory judgment against KHHB*

9.    In the first instance, Count 1 seeks a declaratory judgment that, among other things, "(ii) CIT is entitle[d] to recover from [KHHB] the funds disbursed from the Administrative Fund.

5

10.     The KHHB Carve-Out set forth in the Cash Collateral Orders totaled $2,371,583.00.  The Final Fee Order approved on a final basis provided for the payment of fees and expenses to KHHB in the amount of $2,269,253, an amount that was $102,700 less than the KHHB Carve-Out.

11.     The Administrative Fund was not the sole source of payment to administrative creditors. The Debtors had funds on hand as well as the carve-out amounts under the Cash Collateral Orders to pay KHHB and other professionals.  Because the KHHB Carve-Out was not exhausted by the finally approved fees and expenses of KHHB, the Administrative Fund was not needed to pay KHHB.  Rather, the Administrative Fund was used to pay other administrative and other claims.

12.     KHHB's entitlement to payment from the Debtors' estates did not arise from the Settlement Agreement, but rather by virtue of sections 330 and 1103 of the Bankruptcy Code. Moreover, the Court approved KHHB's fees for services rendered and expenses incurred in furtherance of its representation of the Debtors through quarterly fee orders and the Final Fee Order (collectively, the "<u>Fee Orders</u>")—final orders of this Court which CIT never opposed—not the Settlement Approval Order.

13.     Consequently, there is no factual or legal basis for CIT to recover damages or restitution from KHHB, nor is it entitled to a declaratory judgment to that effect.

### B.    *The Complaint fails to state a claim for Restitution against KHHB and Even if "Restitution Due to Unjust Enrichment" could displace section 549 of the Bankruptcy Code, it would be inequitable to do so against KHHB.*

14.     Restitution is an equitable remedy, and no party is absolutely entitled to it in all circumstances. *See, e.g., Nelson*, 137 S. Ct. at 1260 (restitution is "'equitable in origin and function,' and return of the money was 'not of mere right,' but 'rest[ed] in the exercise of a sound

discretion.'") (quoting *Atlantic Coast R. Co.*, 295 U.S. at 309-10).  Similarly, unjust enrichment "is undoubtedly equitable and depends upon broad considerations of equity and justice." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972).

15.    KHHB has not been unjustly enriched, nor is it inequitable that KHHB received the payments from the Debtors.  KHHB's entitlement to payments did not arise out of the Settlement Agreement or Settlement Approval Order, but through the Court's Fee Orders and Cash Collateral Orders.  KHHB was paid by the Debtors just as any other estate professional in any other bankruptcy case—by applying for compensation and expense reimbursement under section 330 of the Bankruptcy Code and, upon receiving Court approval, being paid those allowed amounts from the Debtors from available estate funds and, specifically here, from the KHHB Carve-Out. Furthermore, in no way did KHHB act inequitably.  KHHB was paid for services rendered to the Debtors (<u>including services to liquidate the assets of the Debtors that paid CIT in full and in support of the settlement CIT was supporting as well</u>) and was entitled to rely on the Court's Final Fee Order allowing its fees and expenses on a final basis under section 330 of the Bankruptcy Code when it received payment.  Also, CIT was aware the payment was made and did not request or obtain the agreement of KHHB (or any other professional) to return the funds if the Settlement Approval Order were overturned.  CIT was under no compulsion to pay the $2,000,000 unless a Final Order were entered, and assumed the risk of closing on less than a Final Order that unwinding the settlement and recouping its settlement payment was not assured.  CIT closed in the face of the Settlement Approval Order not being final for its own benefit.

16.    "[R]estitution is inequitable where the payor seeks to recoup a payment, though he has obtained a benefit from that payment which he intends to retain." *Mazza v. Sheet Metal Workers' Nat'l Pension Fund*, 410 F. App'x 464, 468 n.1 (3d Cir. 2010) (citing *Operating Eng'rs*

PHIL1 8840681v.1

*Local 139 Health Benefit Fund v. Gustafson Constr.*, 258 F.3d 645, 651 (7th Cir. 2001)).  But that is precisely what CIT is trying to do here.  By simultaneously seeking $2 million in this Adversary Proceeding while also opposing the Motion to Substitute, CIT is attempting to retain the benefit of the release in the Settlement Agreement as well as get $2 million back.  At the least, KHHB submits that this Adversary Proceeding should be stayed until the Motion to Substitute is fully and finally resolved because, should CIT's position with respect to the Motion to Substitute prevail, it will receive a de facto release and the alleged "inequity" it cites in the Complaint[5] will indisputably not exist.

17.     Consequently, there is no factual or legal basis for CIT to recover damages or restitution from KHHB, nor is it entitled to a declaratory judgment to that effect.

### IV.     CONCLUSION

18.     Accordingly, for the reasons set forth herein, KHHB respectfully requests that the Court dismiss the Adversary Proceeding with prejudice and grant such other and further relief as it deems just and proper.

Dated:  April 24, 2020                      */s/ Domenic E. Pacitti*
Wilmington, Delaware                      Domenic E. Pacitti (DE Bar No. 3989)
                                          **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                          919 North Market Street, Suite 1000
                                          Wilmington, Delaware 19801
                                          Telephone:    (302) 426-1189
                                          Facsimile:    (302) 426-9193
                                          Email:        dpacitti@klehr.com

                                          *Counsel to the Klehr Harrison Harvey Branzburg LLP*

---

[5] *See, e.g.,* Complaint ¶ 68.

PHIL1 8840681v.1