# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,<br><br>      Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>      Plaintiff,<br><br>  v.<br><br>JEVIC HOLDING CORP., JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., *et al.*; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISION, HARVEY, BRANZBURG & ELLERS LLP,<br>      Defendants. | Adv. Pro. No. 19-50256 (BLS)<br><br>**Re: Adv. Docket Nos. 19, 20, 22, 23, and 28** |

# ANSWERING BRIEF OF PLAINTIFF THE CIT GROUP/BUSINESS CREDIT, INC. IN OPPOSITION TO DEFENDANT PACHULSKI STANG ZIEHL & JONES' MOTION TO DISMISS

REED SMITH LLP
Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail:  kgwynne@reedsmith.com
E-mail:  kmorales@reedsmith.com

*Counsel for Plaintiff,*
*The CIT Group/Business Credit Inc., as*
*Agent, for itself and the Lender Group*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 3

FACTUAL BACKGROUND .................................................................................. 3

    A.    The Committee's Adversary Proceeding Against CIT and Sun. ............................ 4

    B.    The Settlement Agreement and Bankruptcy Court Approval. ................................ 4

    C.    Denial of Stay Pending Appeal and Consummation of the Settlement
        Agreement. ........................................................................................................ 6

    D.    Initial Affirmances on Appeal and then Ultimate Vacatur of the
        Approval Order. ................................................................................................. 7

LEGAL STANDARD ........................................................................................... 8

ARGUMENT ........................................................................................................ 9

    A.    In Count II, CIT States a Claim Against Defendant for Restitution. ..................... 9

    B.    In Count I, CIT States a Claim Against Defendant for Declaratory
        Judgment. ......................................................................................................... 15

    C.    Neither Count I nor Count II Constitutes a "Repackaged" Claim
        Against Defendant Under § 549 of the Bankruptcy Code. ................................... 18

LEAVE TO AMEND ........................................................................................... 21

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d. Cir. 2006)................................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................9

*Berger v. Dixon & Snow, P.C.*,
868 P.2d 1149 (Colo. App. 1993)........................................................................14

*Bernoskei v. Zarinski*,
927 A.2d 149 (N.J. Super. Ct. App. Div. 2007)..................................................14

*Bush v. Dep't of Human Servs.*,
642 Fed. Appx. 84 (3d Cir. 2016)..........................................................................8

*Conley v. Gibson*,
355 U.S. 41 (1957)..................................................................................................9

*Czyzewski v. Jevic Holding Corp.*,
136 S. Ct. 2541 (2016)............................................................................................8

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017)..............................................................................................8

*Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*,
2014 WL 268613 (D. Del. Jan. 24, 2014)..............................................................7

*ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*,
335 B.R. 580 (Bankr. D. Del. 2005)....................................................................20

*Foman v. Davis*,
371 U.S. 178 (1962)..............................................................................................21

*Frederick Hart & Co. v. Recordgraph Corp.*,
169 F.2d 580 (3d Cir. 1948)....................................................................................9

*Leslie v. Conseco Life Ins. Co.*,
2014 WL 12479931 (S.D. Fla. July 25, 2014)................................................9, 19

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993)....................................................................................21

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)..........................................................................................17

*Nance v. NYPD*,
  31 Fed. Appx. 30 (2d Cir. 2002) .......................................................................9

*Nw. Fuel Co. v. Brock*,
  139 U.S. 216 (1891)............................................................................................9

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic
  Holding Corp.)*,
  688 Fed. Appx. 166 (3d Cir. 2017).....................................................................8

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic
  Holding Corp.)*,
  787 F.3d 173 (3d Cir. 2015)................................................................................8

*Onstott v. Certified Capital Corp.*,
  950 So.2d 744 (La. App. 1st Cir. 2006).............................................................19

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d. Cir. 2008)...........................................................................8-9

*In re Potomac Supply Corporation*,
  2016 WL 675545 (E.D. Va. Feb. 18, 2016)..........................................12, 13, 14

*Professional Staff Leasing Corp. v. Unicare Life & Health Ins. Co.*,
  2003 WL 21359621 (D. Del. Mar. 31, 2003) ....................................................15

*Reifer v. Westport Ins. Corp.*,
  751 F.3d 129 (3d Cir. 2014)..............................................................................18

*In re Rodriguez*,
  2013 WL 1748800 (Bankr. S.D. Tex. Apr. 23, 2013) ........................................19

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  64 F. Supp. 3d 665 (E.D. Pa. 2014) ..................................................................15

*Tech. Lending Partners v. San Patricio Cnty. Cmty. Action Agency*,
  2010 WL 11579814 (S.D. Tex. Sept. 2, 2010) ..................................................20

*In re Tribune Media Co.*,
  799 F.3d 272 (3d Cir. 2015)........................................................................10, 11

*World Sav. & Loan Ass'n v. Foronda*,
  1998 WL 483515 (N.D.Ill. Aug. 10, 1998) .......................................................19

**Statutes**

11 U.S.C. §549 ...................................................................................20

28 U.S.C. § 2201(a) ...................................................................................17

The CIT Group/Business Credit, Inc. ("Plaintiff" or "CIT"), as agent for itself and BMO Harris Bank N.A., Bank of America, N.A., PNC Bank, National Association, and Wells Fargo Capital Finance (together with CIT in its capacity as lender, the "Lender Group"), by and through its attorneys, Reed Smith LLP, submits this Answering Brief in Opposition to the *Motion of Pachulski Stang Ziehl & Jones* ("Defendant") *to Dismiss Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* (the "Motion to Dismiss") [Adv. Docket No. 19] and *Memorandum of Points and Authorities in Support of its Motion to Dismiss Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* ("Def. Mem.") [Adv. Docket No. 20], and respectfully states as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

1.      Defendant asks this Court to dismiss CIT's *Complaint for (I) Declaratory Relief and (II) Restitution of Certain Funds Distributed Under Vacated Approval Order* (the "Complaint") [Adv. Docket No. 1], arguing that CIT has failed to state a claim upon which relief may be granted because, as a matter of law, CIT is not entitled to (i) restitution under Count II because Defendant is a bona fide payee because, notwithstanding vacatur of the Approval Order (as defined below), the funds of CIT and the Lender Group that funded the Administrative Claim Fund (as defined below) are property of the Debtors' estates, (ii) declaratory relief under Count I because CIT solely, or simply, seeks declaratory judgment regarding past conduct and to declare Defendant liable to CIT, and (iii) any relief because both Counts I and II are "repackaged" claims under section 549 of the Bankruptcy Code, which are time barred, and, in any event, CIT lacks standing to pursue such avoidance claims.  Each argument fails for the reasons set forth below.

2.      ***First***, absent the Approval Order, the Debtors had no right to the settlement funds that were the sole source of the Administrative Claim Fund.  The Administrative Claim Fund,

which was funded entirely from funds provided by CIT, was held by CIT (and the rest of the Lender Group) prior to execution of the Settlement Agreement and entry of the Approval Order. In fact, the Administrative Claim Fund was not paid to the Debtors until approximately nine (9) months after entry of the Approval Order and approximately thirteen (13) months after execution of the Settlement Agreement. As a matter of law, upon vacatur of the Approval Order, CIT (for itself and the Lender Group) is entitled to be put back in the economic position it was in *prior to* execution of the Settlement Agreement (as defined below) and the entry of the Approval Order.

3.      Moreover, CIT is entitled to restitution from Defendant because Defendant was a party in interest that negotiated for, and received, express provisions in the Approval Order and Exhibit 4 to the Settlement Agreement for the payment of Defendant's fees and expenses from the Administrative Claim Fund. As the United States Court of Appeals for the Third Circuit has recognized, payments to a readily identifiable set of payees can be disgorged upon vacatur of the order authorizing such payments.

4.      *Second*, CIT does not seek declaratory relief "simply" or "solely" to adjudicate past conduct or to declare Defendant liable to CIT. Defendant has (a) argued that the chapter 7 trustee alone has exclusive standing to seek to recover the funds disbursed from the Administrative Claim Fund and (b) asserted a right to share in any recoveries from the Administrative Claim Fund. Accordingly, CIT seeks declaratory relief, including with respect to its right to recover the Administrative Claim Fund and the superiority of its right to restitution of the Administrative Claim Fund.

5.      *Third*, there is no basis for Defendant's assertion that the Complaint constitutes a disguised claim under section 549 of the Bankruptcy Code. Claims under section 549 of the Bankruptcy Code only concern transfers of property of the estate. Here, CIT seeks restitution of

the Lender Group's own funds, not property of the estates.  Upon vacatur of the Approval Order, the estates had (and have) absolutely no interest in Lender Group's funds.

## **NATURE AND STAGE OF THE PROCEEDINGS**

6.      On June 3, 2019, CIT filed the *Complaint for (I) Declaratory Relief and (II) Restitution of Certain Funds Distributed Under Vacated Approval Order* (the "Complaint") [Adv. Docket No. 1].

7.      Contemporaneously with the Complaint, CIT filed *Plaintiff's Motion to Extend Time for Service of Complaint* (the "Motion to Extend") [Adv. Docket No. 3] in the desire to avoid litigation.   Neither the Defendant nor any other defendant opposed the Motion to Extend. Accordingly, on June 24, 2019, the Court entered an Order granting the Motion to Extend.  [Adv. Docket No. 6].  CIT, however, did serve a courtesy copy of the Complaint upon the defendants at the time it was filed.

8.      In the Complaint, CIT asserts two counts against Defendant:   Count I seeks declaratory judgment, and Count II seeks restitution.

9.      On January 23, 2020, after failed negotiations with the chapter 7 trustee, CIT formally served upon each defendant a summons and a copy of the Complaint.  [Adv. Docket No. 8].

10.     On April 24, 2020, Defendant filed the Motion Dismiss [Adv. Docket No. 19].

## **FACTUAL BACKGROUND**[1]

11.     On May 20, 2008 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Any capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the Complaint.

**A.      The Committee's Adversary Proceeding Against CIT and Sun.**

12.      Pursuant to the Final DIP Financing Order, on December 31, 2008, the Official Committee of Unsecured Creditors (the "<u>Committee</u>") commenced an adversary proceeding by filing a complaint against CIT to recover (among other things) alleged avoidable transfers. *See* Adv. Pro. No. 08-51903(BLS) (the "<u>Committee Adversary Proceeding</u>").

13.      On June 30, 2010, the Committee amended the complaint to join Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc. (collectively, "<u>Sun</u>") as defendants and to assert claims against such entities.

14.      On September 15, 2011, the Bankruptcy Court granted in part and denied in part a motion to dismiss the Committee Adversary Proceeding. *See* Opinion at Docket No. 40, Adv. Pro. No. 08-51903(BLS) (the "<u>Dismissal Order</u>").     After entry of the Dismissal Order, on October 7, 2011, the Committee filed a second amended complaint against CIT and Sun.

**B.      The Settlement Agreement and Bankruptcy Court Approval.**

15.      Subject to Bankruptcy Court approval, the Debtors, the Committee, Sun, and CIT entered into a Settlement Agreement and Release dated as of June 22, 2012 (the "<u>Settlement Agreement</u>").

16.      On December 4, 2012, over the objection of certain former employees of the Debtors (the "<u>WARN Plaintiffs</u>"),[2] the Bankruptcy Court entered an *Order Granting Joint Motion*

---

[2] The WARN Plaintiffs objected to the Settlement Agreement by filing, on July 25, 2012, the *Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [Docket No. 1396], and, on November 7, 2012, the *Objection in Opposition to the Supplement to (1) Joint Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of Order (A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection* [Docket No. 1479].

*of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of*

*an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors'*

*Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Approval

Order") [Docket No. 1520].

      17.    The Approval Order provided, in part, as follows:

> Within ten (10) business days after the Effective Date . . . of the Settlement Agreement (the "Effective Date"), the following shall occur simultaneously:
>
> (a) CIT shall pay to the Debtors $2,000,000 (the "Administrative Claim Fund");
>
> (b) The Committee, CIT and Sun shall file with the Court a fully executed stipulation of dismissal with prejudice, substantially in the form of Exhibit 2 to the Settlement Agreement;
>
> (c) The releases set forth in paragraph 2(c) of the Settlement Agreement shall become effective upon payment of the Administrative Claim Fund to the Debtors; and
>
> (d) The Estate Releasing Parties, as such term is defined in the Settlement Agreement, shall execute and deliver to CIT releases in favor of the other members of the Lender Group, as such term is defined in the Settlement Agreement, in the form attached as Exhibit 3 to the Settlement Agreement, and such releases shall be effective upon payment of the Administrative Claim Fund to the Debtors.

*See* Approval Order, ¶ 4(a)-(d).

      18.    The Approval Order provided for the payment of Estate Professionals and other

holders of allowed administrative claims using the Administrative Claim Fund. *See* Approval

Order, ¶¶ 8-10. For example, the Approval Order provided that, "[u]pon payment of the

Administrative Claim Fund to the Debtors, the Debtors shall pay the aggregate sum of $200,000

from the Administrative Claim Fund to the professionals retained by the Committee on account of

previously approved and unpaid fees and expenses." *See* Approval Order, ¶ 8.

19.     Moreover, Exhibit A to the Certification (defined below) listed certain administrative tax and 11 U.S.C. § 503(b)(9) claims totaling $328,281.65 to be paid with the Administrative Claim Fund.  Of that total, the Complaint seeks $231,604.73 from the named defendants.

20.     As the Administrative Claim Fund was to be used to pay all "unpaid professional fees, as well as all allowed 503(b)(9) Claims and Admin taxes," Settlement Motion, ¶ 15, the balance of the Administrative Claim Fund was to be used only to pay the administrative claims of professionals (including Defendant) for previously awarded attorneys' fees and expenses.

21.     Upon payment in full of the allowed administrative claims, the Debtors and the Committee were required to file with the Court a certification that administrative claims had been paid in full.  *See* Approval Order, ¶ 11; *Joint Motion for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Case upon Implementation of Settlement; and (III) Granted Related Relief* (the "<u>Settlement Motion</u>") [Docket No. 1346], Exh. C.

**C.     <u>Denial of Stay Pending Appeal and Consummation of the Settlement Agreement.</u>**

22.     On December 18, 2012, the WARN Plaintiffs filed an appeal of the Approval Order to the United States District Court for the District of Delaware (the "<u>District Court</u>").  The WARN Plaintiffs also sought, in the Bankruptcy Court, a stay of the Approval Order pending resolution of the appeal.  The Bankruptcy Court denied the WARN Plaintiffs' request for a stay pending appeal.  The WARN Plaintiffs did not request a stay pending appeal from the District Court.

23.     After the denial of the WARN Plaintiffs' request for a stay, on or about August 29, 2013, CIT paid the Administrative Claim Fund to the Debtors' estates, and the Administrative Claim Fund was distributed to administrative claimants.

24.     The Defendant would not have been paid but for the Administrative Claim Fund funded by CIT pursuant to the Settlement Agreement because the Debtors had no funds to pay administrative claims.  *See* Settlement Motion, ¶ 13 ("there are no available assets to pay outstanding administrative, priority or general unsecured claims at this time").

25.     On October 11, 2013, pursuant to paragraph 11 of the Approval Order, the Debtors and the Committee filed the *Certification of Counsel Regarding Satisfaction of Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "<u>Certification</u>") [Docket No. 1741].

26.     Some or all of the $1,471,718.35 difference between the $2,000,000 paid to establish the Administrative Claim Fund and the $528,281.65 specifically identified to be paid pursuant to the Approval Order and Exhibit A to the Certification was distributed to, *inter alia*, Estate Professionals in payment of their previously awarded chapter 11 administrative claims.  *See* Settlement Motion, ¶ 15 (Administrative Claim Fund was to be used to pay all "unpaid professional fees, as well as all allowed 503(b)(9) Claims and Admin taxes").

27.     The specific amounts of the Administrative Claim Fund distributed to each Estate Professional were not listed in the Debtors' monthly operating reports.

28.     On September 9, 2014, the Bankruptcy Court closed the Debtors' bankruptcy cases.

**D.     <u>Initial Affirmances on Appeal and then Ultimate Vacatur of the Approval Order.</u>**

29.     On appeal, the District Court affirmed the Approval Order.  *See Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 2014 WL 268613 (D. Del. Jan. 24, 2014).

30.     The WARN Plaintiffs appealed to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), which affirmed the decision of the District Court in 2015. *See Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015).

31.     In 2016, the Supreme Court of the United States (the "Supreme Court") granted *certiorari* to hear the WARN Plaintiffs' appeal. *See Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016). On March 22, 2017, the Supreme Court issued an opinion (7-2) and order reversing the Third Circuit's decision and remanding the case to the Third Circuit for further proceedings. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.").

32.     On May 9, 2017, the Third Circuit vacated its 2015 opinion and remanded the case to the District Court. *See Official Comm. of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. Appx. 166 (3d Cir. 2017).

33.     On May 12, 2017, the District Court issued an order vacating the Approval Order and remanding the case to the Bankruptcy Court for further proceedings.

34.     On May 17, 2017, the Bankruptcy Court reopened Jevic Holding's bankruptcy case and converted it to chapter 7. On October 10, 2018, the Court reopened the remaining Debtors' bankruptcy cases and converted them to chapter 7.

## LEGAL STANDARD

35.     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Bush v. Dep't of Human Servs.*, 642 Fed. Appx. 84, 85 (3d Cir. 2016). A court accepts as true the well-pled facts of the complaint and draws all possible

inferences in the plaintiff's favor when ruling on a 12(b)(6) motion. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d. Cir. 2008). A complaint will survive a motion to dismiss if it alleges enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Frederick Hart & Co. v. Recordgraph Corp.*, 169 F.2d 580, 581 (3d Cir. 1948) ("It is also well-settled that . . . [a] complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim . . . ").

## ARGUMENT

36.     The Complaint states a claim for relief that is plausible on its face, and, therefore, the Motion to Dismiss should be denied in its entirety. The Defendant's arguments are either incorrect as a matter of law or constitute factual disputes that are not appropriate for resolution by a motion to dismiss.

### A.     In Count II, CIT States a Claim Against Defendant for Restitution.

37.     For over a century, courts have recognized that parties to a settlement agreement that has been vacated on appeal should be restored to their original economic position prior to entering into that settlement agreement. *See, e.g., Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891) ("[T]he power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former position."); *Nance v. NYPD*, 31 Fed. Appx. 30, 33 (2d Cir. 2002) ("[T]his Court has held that litigants seeking to vacate settlement agreements must disgorge any monetary benefits gained as a result of the agreement."); *Leslie v. Conseco Life Ins. Co.*, 2014 WL 12479931, *2 (S.D. Fla. July 25, 2014) ("If this Court's

approval of the Settlement Agreement is reversed, vacated, or modified in any material respect by any court, *the Settlement Agreement will be void*, [and] Plaintiffs and Conseco will be *restored to their respective positions as of the date the Settlement Agreement was signed*.") (emphasis added).

38.     Here, Defendant admits that it received a distribution from the Administrate Claim Fund, which was funded by CIT, pursuant to the vacated Approval Order, almost thirteen (13) months after the Settlement Agreement was executed.  Def. Mem., ¶¶ 5, 11.

39.     As discussed further below, the Third Circuit has recognized that ordering the return or disgorgement of funds is appropriate when an order authorizing distributions under a confirmed chapter 11 plan is overturned on appeal.  *See, e.g., In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015).  Addressing the potential vacatur of a portion of a confirmed plan in *Tribune Media*, the Third Circuit declared that "[i]t is true that some of the money has been paid out, but it has gone to a readily identifiable set of creditors against whom disgorgement can be ordered."  *Id.*  The Third Circuit described the remedy of disgorgement as "conceptually," the "most straightforward."  *Id.*

40.     Defendant, however, argues that it is a "bona fide payee" and thus, not liable to return funds, notwithstanding vacatur of the Approval Order.  Defendant is wrong.

41.     Addressing the potential vacatur of a portion of a confirmed plan in *Tribune Media*, the Third Circuit, rejecting arguments like those made by Defendant, declared as follows:

> ***It is true that some of the money has been paid out, but it has gone to a readily identifiable set of creditors against whom disgorgement can be ordered, and, assuming the Trustees prevail on the merits, Class 1F members by definition cannot justifiably have relied on the payments***.  The Class 1F payouts are not "ill-gotten," *Charter*, 691 F.3d at 484, in the sense that the members of that class received them as a result of malfeasance, but the Trustees' argument is that the payments were not valid.  ***Although the trade creditors and retirees who make up Class 1F are likely not sophisticated players and may have understandably relied on any***

*payouts they received, any reliance they have placed on the Plan confirmation and implementation*—again, assuming the Trustees' argument on the merits is correct—*is still not legally justifiable* because Class 1F's claim of entitlement to the money is unlawful under the Trustees' interpretation of the relevant contract.

. . .

The *District Court held in a conclusory fashion that "[h]undreds of individuals and small-business trade creditors ... were entitled to rely upon the finality of the Confirmation Order*," 2014 WL 2797042 at *6, *but that misses the point* of equitable mootness and elevates finality over all other interests. The Plan has arguably deprived one prepetition lender class of $30 million. Requiring Class 1F to pay $30 million to Class 1E if the latter prevails on appeal would not affect Tribune's value and thus not any of its investors (nor would it harm the estate or new Tribune). *It would be unfortunate from the perspective of the members of Class 1F to require disgorgement, but, if they were never entitled to that money in the first place, it is not unfair* . . . .

*Tribune Media*, 799 F.3d at 283 (emphasis added).

42.    Here, too, money has been paid out to "a readily identifiable set of creditors against whom disgorgement can be ordered." *Id.* Specifically, the Administrative Claim Fund was distributed to an "identifiable set" of administrative claimants—all of which were listed in the Approval Order (such as the Defendant) or in Exhibit C to the Settlement Motion and Exhibit A to the Certification (which is Exhibit 4 to the Settlement Agreement). Thus, as in *Tribune Media*, which is binding, the Defendant (and the other named defendants) are among an "identifiable set" of administrative claimants "against whom disgorgement can be ordered."

43.    With respect to Defendant, the Settlement Agreement and the Approval Order expressly provided for (at least) $200,000 of the Administrative Claim Fund to be paid to the Committee's professionals. *See* Settlement Agreement, ¶ 5 and Approval Order, ¶ 8 (both providing that, "[u]pon payment of the Administrative Claim Fund to the Debtors, the Debtors shall pay the aggregate sum of $200,000 from the Administrative Claim Fund to the professionals

retained by the Committee on account of previously approved and unpaid fees and expenses."). Moreover, Exhibit C to the Joint Motion (and Exhibit A to the Certification, which is Exhibit 4 to the Settlement Agreement) listed certain administrative tax and 11 U.S.C. § 503(b)(9) claims totaling $370,757.35 to be paid with the Administrative Claim Fund.

44.     Here, too, it may be "unfortunate," but it is not "unfair," for the Defendant to return CIT's money.  None of the Recipients would have been paid but for the Administrative Claim Fund, paid pursuant to the Settlement Agreement, because the Debtors had no funds to pay their administrative claims.  Settlement Motion, ¶ 13 ("there are *no available assets* to pay outstanding administrative, priority or general unsecured claims at this time") (emphasis added). The Defendant simply would be restored to its pre-settlement position.

45.     The Defendant fails to cite, let alone discuss, the Third Circuit's decision in *Tribune Media.*

46.     Moreover, *Tribune Media* aside, Defendant is far from a bona fide payee, having participated heavily in the negotiations of the Settlement Agreement and expressly required provisions for the payment of its own fees and expenses in the Approval Order and the Settlement Agreement.

47.     The United States Bankruptcy Court for the Eastern District of Virginia in *In re Potomac Supply Corporation,* 2016 WL 675545 (E.D. Va. Feb. 18, 2016), considered a request for restitution from attorneys in the bankruptcy context and ultimately ordered disgorgement.  *Id.* at **1, 12.  Potomac Supply Corporation ("Potomac") filed a voluntary petition under chapter 11. Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") represented Potomac.  During the course of the bankruptcy case, Potomac sought to sell substantially all of its assets, and as a part of this effort, Potomac entered into an asset purchase agreement with the Chesapeake Bay Enterprise

("CBE").  CBE posted a $500,000 deposit with Pillsbury.  Ultimately, Potomac's assets were sold to a party other than CBE.  CBE demanded the return of its deposit.  Pillsbury refused.  On November 30, 2012, the bankruptcy court entered an order to settle superpriority administrative claims, which provided that the Debtor's interest in the deposit was assigned to Pillsbury and that Pillsbury was entitled to recover its fees and expenses in litigation relating to the deposit and an additional amount of up to $240,000 from the deposit, with the balance to be split among Regions Bank, unpaid administrative claimants, and (after payment of allowed administrative claims) unsecured creditors.  *Id.* at *2.

48.      Potomac's chapter 11 case was converted to a chapter 7 case.  *Id.*  The conversion order provided that Pillsbury's rights against CBE with respect to the deposit were placed in a trust for which Pillsbury would serve as trustee.  *Id.*  The trust property was not property of the estate under the conversion order.  *Id.*  On April 9, 2013, the trust filed an adversary proceeding against CBE.  *Id.*

49.      The bankruptcy court concluded that "equity does not demand that Pillsbury return the funds, *unless* Pillsbury is the real party in interest with respect to the funds" that were on deposit.  *Id.* at *15 (emphasis in original).  That court considered whether Pillsbury was a "real party in interest" with respect to the funds.  *Id.*

50.      In *Potomac Supply*, the court held that Pillsbury was a "real party in interest" and, therefore, was liable for restitution.  *Id.* at *15.  The court reasoned that Pillsbury was "the primary beneficiary of the" trust as it was entitled to payment of all of its fees in the litigation and to payment of its fees in the underlying bankruptcy case pursuant to the settlement order, plus up to an additional $240,000 from the deposited funds.  *Id.*  Furthermore, *the vacated settlement order provided the specific amount of distribution that Pillsbury would receive, thereby evidencing its*

*interest.* *Id.* Under these circumstances, the bankruptcy court concluded that Pillsbury was the real party in interest with respect to the deposit and, therefore, ordered Pillsbury to return the deposit. *Id.*

51. Defendant also argues that CIT is not entitled to restitution because CIT *paid* the Administrative Claim Fund to the Debtors knowing that the Approval Order might be vacated later. Def. Mem., ¶ 10. Defendant, however, *accepted* funds from the Administrative Claim Fund with the knowledge that the Approval Order might be vacated later. In such circumstances, Defendant is required to disgorge or repay the funds to CIT. *See Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1154 (Colo. App. 1993) ("an attorney who accepts fees with the knowledge that the award on which those fees depend could be later reversed, vacated, modified or otherwise set aside, may be ordered to restore the funds"); *Bernoskei v. Zarinski*, 927 A.2d 149, 154 (N.J. Super. Ct. App. Div. 2007) ("[I]n *Bruns*, we permitted direct recovery by judgment against the attorney, without resort to a constructive trust, where the attorney received fees and taxed costs pursuant to a court order.").

52. Moreover, there is nothing unfair or inequitable about requiring Defendant to repay funds to which it was never entitled because the Approval Order was vacated. Defendant will still have its administrative claim and will be entitled to whatever distribution (if any) the Debtors may be able to make to administrative claimants. If Defendant is unfairly permitted to retain the funds that it received under the Approval Order, Defendant's position will be improved notwithstanding the lack of any benefit to CIT in exchange for the benefit conferred on Defendant. What is patently unfair and inequitable is to fail to restore CIT's funds while forcing it to litigate previously settled claims and depriving it of the benefit of the release that it should have received in exchange for

such funds.[3]  Equity requires that both Defendant and CIT should be restored to their pre-settlement positions.

53.     Defendant's request for dismissal of CIT's restitution claim fails for another obvious reason.  The issue of unfairness or balancing the equities in deciding a claim for restitution is an inherently factual issue that is inappropriate for resolution on a motion to dismiss.  *See Professional Staff Leasing Corp. v. Unicare Life & Health Ins. Co.*, 2003 WL 21359621, at *6 (D. Del. Mar. 31, 2003) ("the Court will not dismiss such a [restitution] claim at this stage due to the factual considerations involved in the determination to award such relief, including the balancing of equities"); *cf. In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 706 (E.D. Pa. 2014) (stating, in context of an unjust enrichment claim, that "fairness" was a factual issue "inappropriate for disposition in a motion to dismiss").

54.     For the foregoing reasons, CIT has stated a claim against Defendant for restitution.

**B.     In Count I, CIT States a Claim Against Defendant for Declaratory Judgment.**

55.     Defendant erroneously argues that CIT is not entitled to declaratory relief because CIT "improperly invoked the declaratory judgment statute by *simply* asking the Court to proclaim that various different parties are presently liable to it."  Def. Mem., ¶ 28 (emphasis added).

56.     CIT seeks declaratory relief regarding more than "simply" whether the named defendants are liable to CIT.  Specifically, CIT also seeks declaratory relief regarding: (i) CIT's

---

[3] Defendant argues that CIT seeks to have the trustee's adversary proceeding against CIT (Adv. #08-51903) dismissed and to recover the Administrative Claim Fund.  Defendant ignores that if CIT were to prevail in that adversary proceeding, CIT still would not have received the benefit of the releases it was supposed to receive upon its funding of the Administrative Claim Fund.  If successful, CIT would be defeating the trustee's claim due to the trustee's lack of standing (the trustee cannot "step into the shoes" of the Committee) or on the merits, not because of any release.  Further, CIT (and the Lender Group) have spent additional funds in that adversary proceeding to brief (and eventually to argue) a motion for judgment on the pleadings, none of which would have been necessary if CIT had received the benefit of the release.  Of course, even though the trustee's adversary proceeding against CIT should be dismissed, it has *not* yet been dismissed.  Dismissal of the trustee's adversary proceeding against CIT may be a factor in determining the extent of restitution required by equity.

right to "recover from the Debtors and their estates the $2,000,000 that CIT paid to the Debtors because the Approval Order has been vacated," (ii) the "superiority" of CIT's rights to recover the Administrative Claim Fund in relation to "any interest in, or right to, such funds that the Debtors, their estates, the Chapter 7 Trustee, or any Defendants may have or assert," and (iii) CIT's right to recover from the trustee, the Debtors and their estates, "any amounts disbursed from the Administrative Claim Fund that the Trustee recovers, whether as a result of litigation, settlement, or otherwise." *See* Complaint, pg. 13.

57. First, such relief is not "simply" to adjudicate the chapter 11 administrative claimants' liability to restore CIT's funds (*see* Def. Mem., ¶ 30). Such relief is important against the chapter 7 trustee because he has settled at least one claim to recover CIT's funds disbursed from the Administrative Claim Fund and is holding such funds pending an order of the Court determining whether CIT or the trustee has the superior right to such funds. *See Order Approving Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 1896]. Declaratory relief is the most practical way to adjudicate this claim.

58. Second, Defendant *itself* has argued that (a) the chapter 7 trustee alone has standing to seek to recover the funds disbursed from the Administrative Claim Fund, s*ee* Def. Mem., ¶ 51 (asserting that 11 U.S.C. § 549 is the "exclusive" remedy to recover the Administrative Claim Fund and that CIT lacks standing to assert such claim), and (b) Defendant *itself* has a right to share in any recoveries from the Administrative Claim Fund, *see* Def. Mem., p. 13 n. 36 ("*CIT would have to share in any recoveries with all other administrative claimants (including PSZJ,* on account of its supplemental fee application)") (emphasis added). Thus, declaratory relief is appropriate with respect to present and future rights to recoveries of the Administrative Claim Fund, and, therefore, goes well beyond adjudicating liability of the chapter 11 administrative

claimants to make restitution. Such relief also is not "solely" to adjudicate past conduct (*see* Def. Mem., ¶¶ 30, 47), but rather is to determine CIT's present and future rights (and the superiority of such rights as against competing claimants, like Defendant) to funds held by the chapter 7 trustee and those that may be recovered in this adversary proceeding.

59.  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

60.  As Defendant has sought to dismiss all claims against it, arguing that the chapter 7 trustee alone can seek to recover the Administrative Claim Fund and that Defendant has a right to share in the recovery of the Administrative Claim Fund, Defendant cannot reasonably dispute that there is a substantial and actual controversy between adverse legal interests concerning whether CIT is entitled to restitution of the funds and whether CIT has the superior (and only) interest in, the recovery of the Administrative Claim Fund.

61.  The Third Circuit has listed eight (8) factors, when relevant, for a court to consider in exercising its jurisdiction under the Declaratory Judgment Act:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of

duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014). Of those factors, the following three (3) are relevant here: (i) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (ii) the convenience of the parties; and (iii) the availability and relative convenience of other remedies.

62. All of those factors weigh in favor of the Court issuing declaratory relief. Declaratory relief will resolve CIT's standing to recover the Administrative Claim Fund, the parties' alleged rights to share in any such recoveries, and the superiority of CIT's right to such recoveries. Declaratory judgment is the most convenient (if not only) means to resolve such disputes. Moreover, no other remedy is available to address the parties' conflicting claims to recover, or share in the recovery of, the Administrative Claim Fund.

63. For the foregoing reasons, CIT has stated a claim against Defendant for declaratory judgment.

**C. Neither Count I nor Count II Constitutes a "Repackaged" Claim Against Defendant Under § 549 of the Bankruptcy Code.**

64. Defendant erroneously argues that CIT's claims are "nothing more than a repackaged claim under section 549 of the Bankruptcy Code—a claim CIT lacks standing to pursue" because only the chapter 7 trustee may avoid a transfer of property of the estate under section 549 of the Bankruptcy Code. Def. Mem., ¶¶ 35–37. Defendant further argues that, even if CIT could bring this claim under section 549 of the Bankruptcy Code, it is time-barred. Def. Mem., ¶¶ 41–43.

65.    ***First***, Defendant cites no case law to support its assertion that the Complaint is actually a disguised section 549 claim.  There is no such case law.  Section 549 generally deals with *unauthorized* transfers—all of the transfers at issue here were done with court authorization that was later found to be improper.

66.    ***Second***, Defendant fails to appreciate the effect of vacatur of the Approval Order.  Specifically, "[w]hen courts vacate an order, it restores the parties to the position they were in *prior to* the issuance of the vacated order—*it is as if the order had never been issued*."  *See In re Rodriguez*, 2013 WL 1748800, at *6 (Bankr. S.D. Tex. Apr. 23, 2013) (emphasis added); *World Sav. & Loan Ass'n v. Foronda*, 1998 WL 483515, at *1 (N.D. Ill. Aug. 10, 1998) ("where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had never existed.").  Thus, the Debtors never had any basis to receive or hold CIT's funds that created the Administrative Claim Fund.  CIT's funds were *never* property of the Debtors' estates, and, therefore, section 549 is inapplicable on its face to these funds.

67.    As indicated above, upon vacatur of the Approval Order, CIT was entitled to be restored to the position it was in *prior to* execution of the Settlement Agreement and entry of the Approval Order.  *See, e.g., Leslie v. Conseco Life Ins. Co.*, 2014 WL 12479931, at *2 (S.D. Fla. July 25, 2014) ("If this Court's approval of the Settlement Agreement is reversed, vacated, or modified in any material respect by any court, the Settlement Agreement will be void, [and] Plaintiffs and Conseco will be restored to their respective positions *as of the date the Settlement Agreement was signed*."); *Onstott v. Certified Capital Corp.*, 950 So.2d 744, 748 (La. App. 1st Cir. 2006) ("Onstott is entitled to be restored to the economic position he was in *prior to entering into the settlement agreement* which was vacated by the First Circuit Court of Appeal").

68.     At the time the Settlement Agreement was executed, CIT's funds were in possession of the Lender Group, *not* the Debtors.  *See* Def. Mem., ¶ 7 (Approval Order was entered on December 4, *2012*), ¶ 10 (CIT paid $2 million to the Debtors on or about August 29, *2013*).

69.     Accordingly, upon vacatur, the Administrative Claim Fund was never property of the Debtors' estates and, therefore, neither the Debtors nor the chapter 7 trustee has (or ever had) any claim to recover *CIT's funds* under section 549 of the Bankruptcy Code.  *See* 11 U.S.C. § 549; *ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*, 335 B.R. 580, 584 (Bankr. D. Del. 2005) ("Section 549 provides the Trustee (or debtor in possession) with the authority to avoid a transfer of *property of the estate* that is not authorized by the Bankruptcy Court or the Code.") (emphasis added).[4]

70.     The United States District Court for the Southern District of Texas addressed a similar issue upon remand after the Fifth Circuit vacated an order approving a settlement in a bankruptcy case.  *See Tech. Lending Partners v. San Patricio Cnty. Cmty. Action Agency*, 2010 WL 11579814, *2 (S.D. Tex. Sept. 2, 2010).   In *Technology Lending Partners*, a settlement agreement was consummated and payments from insurance proceeds (which were not property of the debtor's estate) were distributed to more than fifty creditors.  *Id.*  Upon remand from the Fifth Circuit, the District Court for the Southern District of Texas set aside the bankruptcy court's approval of the settlement agreement and the distributions made thereunder.  *See id.* at *6.  In light of the fact that the insurer funded the settlement in exchange for a release of liability, the district court declared that "the only practical relief available to Appellants is to require the unwinding of the entire settlement.  All creditors will be required to disgorge the settlement funds that have been

---

[4] Defendants' argument that section 549 of the Bankruptcy Code is applicable (which it is not) to a non-debtor's *own* claim to recover its *own* funds would preclude every non-debtor from obtaining restitution whenever it took more than two years to conclude an appeal process that resulted in vacatur of a settlement order.

distributed [to them]." *Id.* at *6, n. 3. Importantly, the court recognized that the property distributed under the settlement agreement was *not* "property of the estate," because the estate had "no legally cognizable claim" to the funds. *Id.* at *3-4.

71.     For the foregoing reasons, the Court should reject Defendant's argument that the Complaint is a "repackaged" claim under section 549 of the Bankruptcy Code.

## LEAVE TO AMEND

72.     To the extent that the Court is inclined to accept any of Defendant's arguments (which the Court should not accept), CIT requests that the Court grant leave to amend the Complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d. Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## CONCLUSION

73.     For all of the foregoing reasons, CIT respectfully requests that the Court enter an Order (i) denying the Motion to Dismiss in its entirety, (ii) granting CIT leave to amend (to the extent the Court would otherwise dismiss any of the claims against Defendant), and (iii) granting such further relief to CIT as is appropriate.

Dated: May 15, 2020
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: _/s/ Kurt F. Gwynne_
    Kurt F. Gwynne (No. 3951)
    Katelin A. Morales (No. 6683)
    1201 N. Market Street, Suite 1500
    Wilmington, DE 19801
    Telephone: (302) 778-7500
    Facsimile: (302) 778-7575
    E-mail: kgwynne@reedsmith.com
    E-mail: kmorales@reedsmith.com

    *Counsel for Plaintiff,*
    *The CIT Group/Business Credit Inc.,*
    *as Agent, for itself and the Lender*
    *Group*