# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> JEVIC HOLDING CORP., *et al.*,[1] <br><br>             Debtors. | Chapter 7 <br><br> Case No. 08-11006 (BLS) <br><br> (Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group, <br><br>             Plaintiff, <br><br> vs. <br><br> JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., et al.; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISION, HARVEY, BRANZBURG & ELLERS LLP, <br><br>             Defendants. | Adv. No.: 19-50256 (BLS) |

**OPENING BRIEF IN SUPPORT OF THE CHAPTER 7
TRUSTEE'S MOTION TO DISMISS ADVERSARY COMPLAINT**

---

[1] The Debtors in this Chapter 7 case, along with the last four digits of the Debtors' federal tax identification numbers are: Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

13267821

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 5

      I.      Legal Standard ............................................................................................................ 5

      II.     The Complaint is Barred by the Chapter 11 Administrative Claims Bar Date Order ......................................................................................................................... 6

      III.    CIT Lacks Standing to Bring the Complaint and is Violating the Automatic Stay ............................................................................................................................ 7

      IV.    The Complaint Fails to State a Claim for Declaratory Relief................................. 8

      V.     The Complaint Fails to State a Claim for Unjust Enrichment and Restitution..... 10

      VI.    The Complaint is Barred by the Doctrine of Laches ............................................ 13

      VII.   The Complaint is Barred by the Doctrine of Judicial Estoppel ............................ 14

CONCLUSION............................................................................................................................. 16

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Am. Home Mortg. Holdings, Inc.*,
  388 B.R. 69 (Bankr. D. Del. 2008) .......................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................5, 6

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir.2006) ....................................................................................................12

*Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*),
  2014 WL 268613, at *4 (D. Del. Jan. 24, 2014) ....................................................................15

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*,
  556 F. Supp. 2d 367 (D. Del. 2008) .........................................................................................9

*In re Energy Future Holdings Corp.*,
  561 B.R. 630 (Bankr. D. Del. 2016) ......................................................................................13

*Goldberg v. New Jersey Lawyers' Fund for Client Prot.*,
  932 F.2d 273 (3d Cir. 1991) .....................................................................................................9

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000) .....................................................................................................................8

*In re Hayes Lemmerz Int'l, Inc.*, Adv. No. 11-53881 (MFW), Bankr. No. 09-
  11655 (MFW), 2013 WL 1910312 (Bankr. D. Del. Apr. 25, 2013) .......................................13

*Lightsway Litig. Servs., LLC v. Yung* (*In re Tropicana Entm't, LLC*),
  520 B.R. 455 (Bankr. D. Del. 2014) ........................................................................................6

*Mazza v. Sheet Metal Workers' Nat. Pension Fund*,
  410 F. App'x 464 (3d Cir. 2010) ............................................................................................11

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
  243 F.3d 773 (3d Cir. 2001) ...................................................................................................14

*Murray v. Silberstein*,
  882 F.2d 61 (3d Cir. 1989) .....................................................................................................15

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..................................................................................................15

*Official Committee of Unsecured Creditors v. CIT Group/Business Credit Inc.*
    *(In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015)........................................7

*Paramount Film Distrib. Corp. v. State*,
    285 N.E.2d 695 (N.Y. 1972)....................................................................................11

*In re Trans World Airlines, Inc.*,
    280 B.R. 806 (D. Del. 2002).....................................................................................7

*In re Tribune Media Co.*,
    799 F.3d 272 (3d Cir. 2015)....................................................................................12

**Statutes**

11 U.S.C. § 362.................................................................................................................8

11 U.S.C. § 503(b)............................................................................................................4

11 U.S.C. § 541.................................................................................................................7

11 U.S.C. § 549...............................................................................................1, 7, 8, 10

11 U.S.C. § 550.................................................................................................................1

11 U.S.C. § 551...............................................................................................................10

**Other Authorities**

Fed. R. Bankr. P. 7008(a) .................................................................................................5

Fed. R. Bankr. P. 7012......................................................................................................1

Fed. R. Bankr. P. 7012(b) .................................................................................................5

Fed. R. Civ. P. 8(a)(2) .......................................................................................................5

Fed. R. Civ. P. 12(b) .........................................................................................................5

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 5

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to the above-captioned adversary proceeding (this "Adversary Proceeding") by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), George L. Miller, solely in his capacity as the duly-appointed chapter 7 trustee (the "Trustee") in the above-referenced chapter 7 cases of the above-reference debtors (collectively, the "Debtors"), submits this memorandum of points and authorities (this "Memorandum") in support of his *Motion to Dismiss Adversary Complaint* (the "Motion to Dismiss"), filed contemporaneously herewith. In support thereof, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The obligation of CIT Group/Business Credit, Inc. ("CIT" or the "Plaintiff") to make a $2 million settlement payment to the Debtors was conditioned upon this Court's order approving such settlement becoming a "Final Order," *i.e.*, no longer subject to a potential appeal. Facing an impending appeal of that order, CIT made a deliberate and strategic choice to prematurely pay the $2 million settlement in order to avail itself of an equitable mootness argument in the appellate process. CIT lost its gamble and now wants its money back. CIT is requesting that this Court bless its faulty business judgment.

2. CIT's claims, however, arise from its deliberate gamble under a pre-conversion contract. As a consequence, the Adversary Proceeding must be dismissed because these claims are—at best—a chapter 11 administrative claim to be addressed through a claims resolution process.

3. Additionally, any claims against the other defendants on the basis of receipt of payment from the Debtors funded in whole or in part by CIT's voluntary $2 million settlement payment to the Debtors must be dismissed because: (i) the Trustee is vested with exclusive standing to avoid and recover any unauthorized post-petition transfers *for the benefit of the*

*estates* pursuant to sections 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and (ii) any attempt by CIT to interfere with Trustee's rights to assert such avoidance actions is prohibited by the automatic stay.  CIT waived its rights to recoupment as there was no basis for payment.

4.       Lastly, while the Adversary should be dismissed *en toto* for the foregoing reasons alone, the Trustee would be remiss not to discuss the other legal infirmities of the Complaint.

5.       In light of the foregoing, and as further discussed herein, the Trustee's Motion to Dismiss should be granted.

### BACKGROUND[2]

6.       On May 20, 2008 ("Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On June 4, 2008, the Office of the United States Trustee appointed the official committee of unsecured creditors ("Committee").

7.       On December 31, 2008, the Committee commenced an adversary proceeding against CIT asserting claims arising from the Sun Capital's leveraged buyout of the Debtors ("LBO Adversary"),[3] which later was amended to include affiliates of Sun Capital ("Sun") as defendants.  On June 27, 2012, the Debtors, the Committee, CIT, and Sun filed a joint motion

---

[2]      The Trustee will not belabor the Court with all undisputed factual background potentially relevant hereto, with which the Court is well familiar.  Rather, the Trustee incorporates by reference herein such matters readily discernable from the various main case, related adversary proceedings, and related appellate proceedings.

[3]      References herein to documents filed in the main proceeding, *In re Jevic Holding Corp.*, Case No. 08-11006 (BLS) (Bankr. D. Del.), will be cited as "[D.I. ___]."  References to documents filed in this adversary proceeding will be cited as "[A.D.I. ___]."  References to documents filed in the LBO Adversary, *Official Committee of Unsecured Creditors v. The CIT Group/Business Credit, Inc., et al.*, Adv. No. 08-51903 (BLS) (Bank. D. Del.), will be cited as "[LBO A.D.I. ___]."

2

[D.I. 1346][4] to approve that certain *Settlement Agreement and Release* dated June 22, 2012 [D.I. 1346-2] ("Proposed Settlement Agreement") settling the LBO Adversary.[5]

8.  The Proposed Settlement Agreement provided, among other things, that "[w]ithin ten (10) business days after the Effective Date…CIT shall pay to the Debtors $2,000,000 (the 'Administrative Claim Fund')…." Proposed Settlement Agreement ¶¶ 2(a), 7. The "Effective Date" was defined in the Proposed Settlement Agreement as "the business day following the date that the Settlement Order becomes a Final Order, unless otherwise agreed to by the Parties." *Id.* ¶ 18. "Final Order" is defined as:

> [A]n order or judgment of the Bankruptcy Court … that has not been reversed, stayed, modified, or amended, as to which (a) the time to appeal, seek review or hearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari is sought.

*Id.* ¶ 19.

9.  On December 4, 2012, the Court entered an Order approving the settlement [D.I. 1520] ("Settlement Order"), which was timely appealed by certain former employees of the Debtors [D.I. 1539] ("Appeal"). Notwithstanding the pending Appeal and the fact that there was no Final Order, CIT decided to fund the Administrative Claim Fund. *See* Complaint [A.D.I. 1] at ¶¶ 44-45. Ultimately, the Settlement Order was vacated as a result of the appellate process. *See id.* at ¶¶ 52-56.

---

[4]  References herein to documents filed in the main proceeding, *In re Jevic Holding Corp.*, Case No. 08-11006 (BLS) (Bankr. D. Del.), will be cited as "[D.I. ___]." References to documents filed in this adversary proceeding will be cited as "[A.D.I. ___]."

[5]  A copy of the Proposed Settlement Agreement is included in Exhibit B to the Complaint [A.D.I. 1].

10. After the matter was remanded, and the chapter 11 cases reopened, the Court ultimately converted the Debtors' bankruptcy cases to cases under chapter 7 [D.I. 1805] on May 22, 2018. The Court appointed the Trustee on June 5, 2018 [D.I. 1807].

11. On December 3, 2018, the Court entered that certain *Order (I) Establishing the Deadlines to File Proofs of Claim and Requests for Payment of Certain Administrative Expense Claims Pursuant to 11 U.S.C. § 503(b), (II) Approving Form and Manner of Notice Thereof and (III) Granting Related Relief* [D.I. 1865] (the "Chapter 11 Administrative Claims Bar Date Order"). The Chapter 11 Administrative Claims Bar Date Order provides the following standard resolution procedure for chapter 11 administrative claims asserted in the context of a case converted to chapter 7:

> Notwithstanding section 503(b) of the Bankruptcy Code, any Requests for Payment (and Professional fee applications) shall be filed without a scheduled hearing date and response deadline or a request by the claimant for a scheduled hearing. To the extent a Chapter 11 Administrative Claim is disputed by the Trustee, and such dispute cannot be resolved consensually by the Trustee and the claimant, the Trustee will: (a) file an objection to the claimant's Request for Payment; (b) schedule a hearing on such objection and the affected Request for Payment; and (c) provide notice to the affected claimant of the Trustee's objection and scheduled hearing.
>
> \*\*\*
>
> ***The procedures set forth and approved in this Order are the <u>sole and exclusive</u> method for the assertion of any Chapter 11 Administrative Claim that is required to be filed, and all claimants asserting a Chapter 11 Administrative Claim are prohibited from invoking any other means of asserting such claims pursuant to the Bankruptcy Code.***

Chapter 11 Administrative Claims Bar Date Order at ¶¶ 17-18 (all emphasis added).

12. On February 11, 2019, CIT filed the *Motion of the CIT Group/Business Credit, Inc. for Allowance of and Administrative Claim and a Superpriority Administrative Claim Pursuant to 11 U.S.C. § 503(b) and § 364(c)(1) and §507* [D.I. 1875] (the "CIT Request for

4

Payment"). The CIT Request for Payment, *inter alia*, expressly asserts an administrative claim in the amount of $2 million on account of the Administrative Claim Fund.

13. CIT filed the complaint [A.D.I. 1] (the "Complaint") initiating this Adversary Proceeding on June 3, 2019.

**ARGUMENT**

I. **Legal Standard**

14. A pleading which states a claim for relief must contain "a short and plain statement of claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (applicable in adversary proceedings under Fed. R. Bankr. P. 7008(a)). To satisfy this requirement, the pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A failure to allege facts sufficient to state a facially plausible claim subjects the pleading to dismissal under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Bankr. P. 7012(b) (providing for the applicability of Fed. R. Civ. P. 12(b) in adversary proceedings).

15. Thus, to survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). The court is to consider whether the complaint contains well-pleaded factual allegations or simply "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Id.* Only the former are entitled to the assumption that they are true. *Id*.; *see also Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

raise a right to relief above the speculative level." *Lightsway Litig. Servs., LLC v. Yung* (*In re Tropicana Entm't, LLC*), 520 B.R. 455, 467 (Bankr. D. Del. 2014) (citing *Twombly*, 550 U.S. at 555 (internal citations omitted)).

16. Even if the complaint contains well-pleaded factual allegations, the court must consider whether they are enough to state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. This analysis is "a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Id.* The factual content of the complaint must be sufficient to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

17. Application of these standards mandates dismissal of the Complaint. Here, under any reasonable version of the facts, it is clear that: (i) the Adversary Proceeding is barred by the Chapter 11 Administrative Claims Bar Date Order; (ii) CIT lacks standing to avoid and recover the payments; and (iii) the Complaint otherwise fails to state viable claims. Moreover, the Complaint should be barred by the doctrines of laches and judicial estoppel. The Court should therefore dismiss the Complaint with prejudice.

**II.    The Complaint is Barred by the Chapter 11 Administrative Claims Bar Date Order**

18. CIT's Complaint is based on its risky *pre-conversion* conduct under a *pre-conversion* contract. The Chapter 11 Administrative Claims Bar Date Order provides the sole and exclusive method for asserting chapter 11 administrative claims, *i.e.*, filing a Request for Payment that will be dealt with in due course through consensual resolution or objection by the Trustee. This is a standard process in cases that convert from chapter 11 to chapter 7 in this district. *See*, *e.g.*, Order (I) Establishing the Deadlines to File Requests for Payment of Certain

6

Administrative Expense Claims Pursuant to 11 U.S.C. § 503(b), (II) Approving Form and Manner of Notice Thereof and (III) Granting Related Relief at ¶¶ 11-12, *In re J & M Sales, Inc., et al.*, Case No. 18-11801 (Apr. 16, 2019), Docket No. 1425 (substantially similar provisions); *see also In re Trans World Airlines, Inc.*, 280 B.R. 806, 807-08 (D. Del. 2002) (holding that no proceeding existed in the bankruptcy court on party's proof of claim for breach of contract against debtor in the absence of an objection initiating a contested matter).

19. The CIT Request for Payment [D.I. 1875] asserts an administrative claim for the same $2 million Administrative Claim Fund that is the subject of the Complaint initiating this Adversary Proceeding. The fact that the CIT Request for Payment was not noticed for a hearing reflects that CIT is aware of the Chapter 11 Administrative Claims Bar Date Order's prohibition against affirmatively seeking relief on account of its pre-conversion claims. This Adversary Proceeding is in blatant disregard of the Chapter 11 Administrative Claims Bar Date Order, from which CIT never sought a Court-approved modification, and it should be dismissed as to the Trustee and bankruptcy estates for that reason alone.

**III. CIT Lacks Standing to Bring the Complaint and is Violating the Automatic Stay**

20. CIT's Complaint is a thinly-veiled attempt to hijack the avoidance actions[6] that constitute property of the estate[7] and, therefore, CIT is violating the automatic stay imposed by

---

[6] The Trustee reserves all rights as to his right and ability to avoid and recover any transfers pursuant to chapter 5 of the Bankruptcy Code, including section 549, and any related legal rights and remedies, including without limitation the issue of tolling of any statutes of limitation, repose, or similar matters.

[7] The Administrative Claim Fund is property of the Debtors' estates under 11 U.S.C. § 541 as proceeds of the LBO Adversary. As noted in the Third Circuit's dissenting opinion in the Appeal, "the money paid by the secured creditors in the settlement was property of the estate," because "[a] cause of action held by the debtor is property of the estate … and 'proceeds ... of or from property of the estate' are considered estate property as well." *Official Committee of Unsecured Creditors v. CIT Group/Business Credit Inc.* (*In re*

7

section 362 of the Bankruptcy Code.[8]  This Adversary Proceeding is an action to avoid and recover post-petition transfers of funds to estate creditors.  But, section 549 of the Bankruptcy Code confers sole authority to avoid post-petition transfers to the Trustee.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (holding that a trustee is the only party that may invoke § 506(c) interpreting similar statutory language that "the trustee may recover ….").  As such, CIT's Complaint represents a "nontrustee's" attempt to "unilaterally…circumvent the Code's remedial scheme." *Id.* at 13 n. 5.

21. The Complaint must therefore be dismissed as to all Defendants because the Trustee has the exclusive right to bring any causes of action for avoidance and recovery of post-petition transfers for the benefit of the Debtors' estates as a whole, and not for the exclusive benefit of CIT.  Any interference with such right is a violation of the automatic stay.

IV.  **The Complaint Fails to State a Claim for Declaratory Relief**

22. Count I of the Complaint, as relevant to the Trustee, seeks a declaratory judgment that (1) "CIT is entitled to recover from the Debtors and their estates the $2,000,000 that CIT paid to the Debtors because the [Settlement] Order has been vacated"; (2) "CIT's right to recover … the $2,000,000 that CIT paid to the Debtors and their estates … due to vacatur of the

---

*Jevic Holding Corp.*), 787 F.3d 173, 188 (3d Cir. 2015) (Scirica, J. dissenting), *as amended* (Aug. 18, 2015), *rev'd and remanded sub nom. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) (citing *Bd. of Trs. of Teamsters Local 863 v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir.2002)) (quoting 11 U.S.C. § 541(a)(6)).  Although the Settlement Order has since been vacated, it is still equitable for the Court to find that the Administrative Claim Fund remains proceeds of the LBO Adversary where, as here, CIT strategically acted outside of the terms of the Proposed Settlement Agreement to obtain the misguided benefit of an appellate argument.  Indeed, the Proposed Settlement Agreement provides that CIT was required to "pay to the Debtors for the benefit of their estates the sum of $2,000,000." Compl. Ex. B, Proposed Settlement Agreement ¶ 2(a).  Any right to recover the Administrative Claim Fund therefore belongs to the Trustee.

[8]  The Trustee reserves all rights on account of CIT's violation of the automatic stay.

[Settlement] Order, is superior to any interest in, or right to, such funds that the Debtors, their estates, the Trustee, or any Defendants may have or assert"; and (3) "CIT is entitled to recover from … the Trustee, the Debtors and their estates, any amounts disbursed from the Administrative [Claim] Fund that the Trustee recovers, whether as a result of litigation, settlement, or otherwise." Compl. at 13.

23. As for (1) and (2), however, a request for declaratory relief is inappropriate to adjudicate past conduct. *See Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) ("'A declaratory judgment is inappropriate solely to adjudicate past conduct.'") (citation omitted). At best, CIT has an administrative expense claim which is required to be resolved in the claims resolution process, not in an adversary proceeding.[9] Nor does the Complaint assert (nor could it) that CIT possesses a lien on, property interest in, or constructive trust over the $2 million Administrative Claim Fund that may justify a superior interest. Indeed, as contemplated and agreed to by CIT under the Proposed Settlement Agreement, the Administrative Claim Fund was commingled with the estates' funds and immediately disbursed to multiple administrative claimholders and to a creditors trust for further distribution to general unsecured creditors and priority unsecured creditors. *See Goldberg v. New Jersey Lawyers' Fund for Client Prot.*, 932 F.2d 273, 280-81 (3d Cir. 1991) (holding that creditors of like status were entitled to pro rata distribution where creditors were unable to trace commingled funds); Joint Brief in Support of Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors to Dismiss Appeal of Settlement Order as Equitably Moot at 8-9, *Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*), No. 13-

---

[9] The Trustee reserves all rights with respect to any claim that CIT has asserted or may assert.

104-SLR (D. Del. Nov. 21, 2013), ECF No. 15 ("Equitable Mootness Brief" or "Equitable Mootness Br.") (discussing disbursement of funds including that only $1.525 million (*i.e.*, less than the full $2 million voluntarily contributed by CIT) was distributed to administrative claimholders with the remainder of the Debtors' cash distributed to a creditors trust for further distributions).

24. CIT similarly cannot establish that it is entitled to any of the Administrative Claim Fund that may be recovered by the Trustee. Rather, any post-petition transfers that the Trustee recovers under section 549 will be "preserved for the benefit of the estate," not solely for the benefit of CIT. *See* 11 U.S.C. § 551. Again, any recovered transfers would then be distributed under the Bankruptcy Code's priority scheme.

25. Count One of the Complaint should therefore be dismissed because (1) declaratory judgment is inappropriate to adjudge prior conduct surrounding the settlement and (2) CIT has failed to adequately allege a superior right to the Administrative Claim Fund outside what may be distributed through the claims resolution process.

**V.    The Complaint Fails to State a Claim for Unjust Enrichment and Restitution**

26. Count Two of the Complaint for restitution due to unjust enrichment similarly fails to state a claim and should be dismissed. The claim is flawed for various reasons, three of which will be discussed here.

27. Under New York law,[10] "[t]o prevail on a claim for unjust enrichment …, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *In re Am. Home Mortg. Holdings, Inc.*,

---

[10] The Trustee assumes, solely for purposes of the Motion, that New York law applies because the Proposed Settlement Agreement contains a New York choice of law provision. Proposed Settlement Agreement ¶ 21.

388 B.R. 69, 96–97 (Bankr. D. Del. 2008). "The ***essential inquiry*** in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (N.Y. 1972) (emphasis added). "Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Id.*

28. Importantly here, the Trustee has neither received nor retained any benefit as a result of the Settlement Order. The Debtors disbursed the Administrative Claim Fund over six years ago, and over four years before the Trustee's appointment. *See* Settlement Certification [D.I. 1741] at 2. To that end, Debtors were a conduit through which administrative claimholders were paid for services rendered. There is no allegation that the Trustee, or the Debtors' estates for that matter, have acted inequitably as the representative of the estates. Further, as explained below, there is no inequity here where CIT voluntarily, strategically, and deliberately assumed the risk that the settlement could be reversed when it paid the Administrative Claim Fund before the Settlement Order was final and non-appealable. CIT's claim against the Trustee for unjust enrichment fails for this reason alone and it would be inequitable to force the Trustee and the Debtors' estates to pay the risk voluntarily assumed by CIT.

29. Second, "restitution is inequitable where the payor seeks to recoup a payment, though he has obtained a benefit from that payment which he intends to retain." *Mazza v. Sheet Metal Workers' Nat. Pension Fund*, 410 F. App'x 464, 468 n.1 (3d Cir. 2010) (citing *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr.*, 258 F.3d 645, 651 (7th Cir.2001)). In the LBO Adversary, which has since resumed since the conversion date, CIT argues that the

Trustee cannot sue CIT absent a return of the Administrative Claim Fund. *See* Opening Brief of the CIT Group/Business Credit, Inc., as Agent, in (I) Opposition to the Motion to Substitute Chapter 7 Trustee as Real Party in Interest and (II) Support of the Motion of the CIT Group/Business Credit, Inc., as Agent, for Judgment on the Pleadings [LBO A.D.I. 132] at 20. In essence, CIT attempts to retain the benefit of a release under the Proposed Settlement Agreement by blocking the Trustee from pursuing the LBO Adversary while simultaneously seeking a recovery of the Administrative Claim Fund here. Such a result would be unjust and the Court should not permit CIT to have it both ways.

30. Finally, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (quotation omitted). There is no dispute: a written contract (*i.e.*, the Proposed Settlement Agreement) governs the parties' agreement. So there can be no colorable claim for unjust enrichment under settled New York law, and Count II must be dismissed.

31. For these reasons, the Complaint fails to state a claim for unjust enrichment and restitution and Count Two should therefore be dismissed.[11]

---

[11] CIT's reliance on *Tribune* to support that "[r]estitution or disgorgement is an appropriate equitable relief upon setting aside or vacating a settlement agreement" is misplaced. Compl. ¶ 71 (citing *In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015)). As an initial matter, the *Tribune* Court's discussion of disgorgement is, at most, dicta and was in relation to whether a class of creditors' appeal was equitably moot; not the appropriate form of relief upon vacating a settlement. *See Tribune*, 799 F.3d at 283. The funds at issue also do not appear to have been fully disbursed. *See id.* ("It is true that *some* of the money has been paid out….") (emphasis added). Moreover, unlike CIT here, the appealing class in *Tribune* had not previously agreed to the disbursement of funds over which it claimed an entitlement to gain a strategic litigation advantage, nor represented to a court in a prior proceeding that recovery of those funds would be "virtually

**VI.    The Complaint is Barred by the Doctrine of Laches**

32.    The Court should also bar the Complaint under the doctrine of laches.  "'For laches to apply, the following factors must be shown: (1) delay in assertion of a claim; (2) the delay is inexcusable; and (3) undue prejudice results from the delay.'"  *In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016) (citation omitted); *see also In re Hayes Lemmerz Int'l, Inc.*, Adv. No. 11-53881 (MFW), Bankr. No. 09-11655 (MFW), 2013 WL 1910312, at *5 (Bankr. D. Del. Apr. 25, 2013) (holding that party who waited "approximately two years before filing the Complaint" asserting breaches of a settlement agreement had "sat on their rights and are now estopped from asserting" breach).

33.    Here CIT delayed asserting its claim for more than two years after the Supreme Court's reversal of the Settlement Order and the remand to this Court.  Further, its delay was inexcusable because CIT, as a party to both the Proposed Settlement Agreement and the appeal of the Settlement Order, was keenly aware of the facts surrounding the settlement and its eventual vacatur.  Finally, there would be undue prejudice in requiring the Trustee to defend against the Complaint where the Trustee was not a party to the settlement, was never in possession of the Administrative Claim Fund, and where CIT now seeks to recover payments that the Debtors made over six years ago.  As in *Hayes Lemmerz*, CIT sat on its rights, if any, for over two years before filing the Complaint and should therefore be estopped from seeking recovery of the Administrative Claim Fund now.

---

impossible."  Equitable Mootness Br. at 8.  Based on CIT's prior arguments and representations in these proceedings, the relief it seeks here would be unfair to the Debtors and their estates and should be dismissed.

13

**VII.    The Complaint is Barred by the Doctrine of Judicial Estoppel**

34.    Finally, CIT should be barred by the doctrine of judicial estoppel from arguing that the Administrative Claim Fund should be returned.

> Three requirements must be met before a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. … Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." … Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (citations omitted).

35.    CIT made a voluntary, strategic decision to prematurely pay $2 million under the Proposed Settlement Agreement before the order approving became a Final Order. CIT should bear the risk of that misguided strategy. While the Settlement Order was pending on appeal in the District Court, CIT funded the $2 million Administrative Claim Fund—knowing, and intending, that the funds would be disbursed to numerous third parties—even though it did not have to do so absent a final, non-appealable order. CIT then filed a joint brief on appeal arguing to dismiss the appeal as equitably moot because "[a]ny attempt to undo these transaction and events and return to the status quo that existed before the … Settlement Order and the parties consummated the [Proposed] Settlement Agreement ***would be virtually impossible***" and that "it likely is ***impossible*** to put CIT, the Lender Group, and Sun back in the position they occupied before they relied on the unstayed Settlement Order." *See* Equitable Mootness Br. at p. 8, 12 (emphasis added).

36.    CIT now finds itself in a situation that it intentionally created. Despite arguing that it would be impossible to return the parties to the status quo on appeal to the District Court,

14

that is exactly what CIT seeks in the Complaint, thereby taking irreconcilably inconsistent positions and the first element of judicial estoppel is satisfied.

37. CIT's change in position also appears to be an attempt to play fast and loose with the Court. In the appeal of the Settlement Order to the District Court, CIT made the strategic decision to pay the Administrative Claim Fund before the Settlement Order became a final order and then made an equitable mootness argument right after. Indeed, CIT benefitted from taking this position in the District Court that alternatively dismissed the appeal on equitable mootness grounds. *Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*), 2014 WL 268613, at *4 (D. Del. Jan. 24, 2014), *vacated and remanded on other grounds*, 688 F. App'x 166 (3d Cir. 2017) (holding that Appeal was equitably moot "in view of the settlement" and finding "that the settlement has been substantially consummated as all the funds have been distributed"); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[C]ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'") (citation omitted); *Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989) ("This case is particulary [sic] appropriate for applying an estoppel because [appellant] benefited from his original position."). Moreover, the risk of reversal of the Settlement Order was contemplated in the Proposed Settlement Agreement, as CIT was not required to contribute funds until the Settlement Order became a final, non-appealable order. CIT should not be allowed to seek recovery of the Administrative Claim Fund in the Complaint now that its gamble on equitable mootness has failed.

38. Finally, no lesser sanction would remedy CIT's conduct here. CIT paid the Administrative Claim Fund, when it did not have to do so, to gain a strategic, litigation

advantage in the appeal of the Settlement Order. Under the specific circumstances here, CIT should not be permitted to seek recovery of the Administrative Claim Fund over six years after the Debtors disbursed those funds with CIT's full knowledge and consent.

39. The Court should therefore apply the doctrine of judicial estoppel to prevent CIT from pursuing the Complaint.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order: (i) dismissing the Complaint with prejudice as against the Trustee and the Debtors' bankruptcy estates; and (ii) granting such other and further relief as the Court deems just a proper.

Dated: May 26, 2020
      Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

 /s/ Michael J. Barrie
Michael J. Barrie (No. 4684)
Jennifer R. Hoover (No. 5111)
Kevin M. Capuzzi (No. 5462)
Sean A. Meluney (No. 5514)
Matthew D. Beebe (No. 5980)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
jhoover@beneschlaw.com
kcapuzzi@beneschlaw.com
smeluney@beneschlaw.com
mbeebe@beneschlaw.com

*Special Litigation Counsel for George L. Miller, Chapter 7 Trustee*