## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,<br><br>               Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>               Plaintiff,<br>     v.<br><br>JEVIC HOLDING CORP., JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., *et al.*; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP,<br><br>               Defendants. | Adv. Pro. No. 19-50256 (BLS)<br><br><br>**Re: Adv. Docket No. 37** |

## ANSWERING BRIEF OF PLAINTIFF THE CIT GROUP/BUSINESS CREDIT, INC. IN OPPOSITION TO TRUSTEE'S MOTION TO DISMISS

REED SMITH LLP
Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail:  kgwynne@reedsmith.com
E-mail:  kmorales@reedsmith.com

*Counsel for Plaintiff,*
*The CIT Group/Business Credit Inc., as*
*Agent, for itself and the Lender Group*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 5

FACTUAL BACKGROUND ...................................................................................... 6

    A.    The Committee's Adversary Proceeding Against CIT and Sun. .......................... 6

    B.    The Settlement Agreement and Bankruptcy Court Approval. ............................... 6

    C.    Denial of Stay Pending Appeal and Consummation of the Settlement Agreement. ...................................................................................................... 8

    D.    Initial Affirmances on Appeal and then Ultimate Vacatur of the Approval Order. ...................................................................................... 10

    E.    The Administrative Claim Bar Date Order and CIT's Administrative Claim. ............................................................................................................. 11

    F.    The Adversary Proceedings ................................................................. 11

LEGAL STANDARD ............................................................................................. 11

ARGUMENT .......................................................................................................... 12

    A.    The Administrative Claims Bar Date Order Does Not Affect CIT's Right to Recover the *Lender Group's Own Funds*. ................................................ 12

    B.    As the Approval Order Was Vacated, (i) It Never Existed, (ii) the Administrative Claim Fund Was Never "Property of the Estate," (iii) CIT, as Agent, Has Standing to Recover the Lender Group's Funds, and (iv) There Is No Stay Violation. ...................................................... 13

    C.    CIT States a Claim Against the Trustee for Declaratory Judgment ..................... 16

        1.    CIT Does Not Seek Declaratory Judgment "Solely" to Adjudicate Past Conduct. ................................................................. 16

        2.    CIT's Administrative Claim Does Not Preclude CIT's Declaratory Judgment Claim. ............................................................... 17

        3.    Section 551 of the Bankruptcy Code Is Irrelevant. ............................ 18

    D.    CIT States a Claim Against the Trustee for Unjust Enrichment and Restitution. ................................................................................................... 18

    E.    The Complaint Is Not Barred by the Doctrine of Laches ..................................... 21

    F.    CIT Is Not Judicially Estopped From Recovering the Administrative Claim Fund. ............................................................................................... 23

LEAVE TO AMEND ............................................................................................. 25

CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abo State v. Gonzales*,
215 Fed. Appx. 134 (3d Cir. 2007) ........................................................................14

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006) ...................................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................12

*Bush v. Dep't of Human Servs.*,
642 Fed. Appx. 84 (3d Cir. 2016) ...........................................................................11

*Coast Auto. Grp, Ltd. v. VW Credit, Inc.*,
34 Fed. Appx. 818 (3d Cir. 2002) ...........................................................................25

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*,
723 F.2d 357 (3d Cir. 1983) ....................................................................................23

*Conley v. Gibson*,
355 U.S. 41 (1957) ..................................................................................................12

*Costello v. United States*,
365 U.S. 265 (1961) ................................................................................................21

*Czyzewski v. Jevic Holding Corp.*,
136 S. Ct. 2541 (2016) ............................................................................................10

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017) ..............................................................................................10

*Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*,
2014 WL 268613 (D. Del. Jan. 24, 2014) ...............................................................10

*D'Agostino v. Appliances Buy Phone, Inc.*,
633 Fed. Appx. 88 (3d Cir. 2015) ...........................................................................22

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*,
556 F. Supp. 2d 367 (D. Del. 2008) ........................................................................16

*EEOC v. Great Atlantic & Pacific Tea Co.*,
735 F.2d 69 (3d Cir. 1984) ......................................................................................21

*ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*,
   335 B.R. 580 (Bankr. D. Del. 2005) ...................................................16

*Foman v. Davis*,
   371 U.S. 178 (1962)........................................................................25

*Frederick Hart & Co. v. Recordgraph Corp.*,
   169 F.2d 580 (3d Cir. 1948)..............................................................12

*Garrison v. United States*,
   2018 LEXIS 69661  (S.D. Fla. Apr. 24, 2018) .......................................14

*Hudak v. Procek*,
   806 A.2d 140 (Del. 2002) ................................................................23

*In re Jevic Transportation, Inc.*,
   Case #08-11008(BLS), Dkt. No. 17......................................................22

*Leslie v. Conseco Life Ins. Co.*,
   2014 WL 12479931 (S.D. Fla. July 25, 2014)................................14, 18

*Lorenz v. CSX Corp.*,
   1 F.3d 1406 (3d Cir. 1993)...............................................................25

*Mitchell v. Joseph*,
   117 F.2d 253 (7th Cir. 1941) ...........................................................14

*Montrose Medical Grp. Participating Sav. Plan v. Bulger*,
   243 F.3d 773 (3d Cir. 2001)..............................................................24

*In re MS55, Inc.*,
   477 F. 3d 1131 (10th Cir. 2007) ........................................................20

*Nance v. NYPD*,
   31 Fed. Appx. 30 (2d Cir. 2002) ........................................................18

*Nw. Fuel Co. v. Brock*,
   139 U.S. 216 (1891)........................................................................18

*Official Comm. of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic
   Holding Corp.)*,
   688 Fed. Appx. 166 (3d Cir. 2017)......................................................10

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic
   Holding Corp.)*,
   787 F.3d 173 (3d Cir. 2015)..................................................1, 7, 9, 10

*Official Comm. of Unsecured Creditors v. SGPA, Inc. (In re SGPA, Inc.)*,
    34 Fed. Appx. 49 (3d Cir. 2002) .................................................................24

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d. Cir. 2008) ....................................................................12

*Professional Staff Leasing Corp. v. Unicare Life & Health Ins. Co.*,
    2003 WL 21359621 (D. Del. Mar. 31, 2003) ...........................................21

*Reid v. Spazio*,
    970 A.2d 176 (Del. 2009) .........................................................................22

*In re Rodriguez*,
    2013 WL 1748800 (Bankr. S.D. Tex. Apr. 23, 2013) ..............................14

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    64 F. Supp. 3d 665 (E.D. Pa. 2014) .........................................................21

*Tech. Lending Partners v. San Patricio Cnty. Cmty. Action Agency*,
    2010 WL 11579814 (S.D. Tex. Sept. 2, 2010) ........................................15

*In re Tribune Media Co.*,
    799 F.3d 272 (3d Cir. 2015) .....................................................................18

*United States v. Jerry*,
    487 F.2d 600 (3d Cir. 1973) .....................................................................14

*World Sav. & Loan Ass'n v. Foronda*,
    1998 WL 483515 (N.D. Ill. Aug. 10, 1998) ............................................15

**Statutes**

10 Del. C. § 8106(a) ...........................................................................................23

11 U.S.C. § 503(b)(1)(A) ....................................................................................18

11 U.S.C. § 507(a)(2) ..........................................................................................18

11 U.S.C. § 549 ...................................................................................................16

11 U.S.C. § 551 ...................................................................................................18

11 U.S.C. § 726 ...................................................................................................17

**Other Authorities**

60 C.J.S. MOTIONS AND ORDERS § 72 ..................................................................14

The CIT Group/Business Credit, Inc. ("Plaintiff" or "CIT"), as agent for itself and BMO Harris Bank N.A., Bank of America, N.A., PNC Bank, National Association, and Wells Fargo Capital Finance (together with CIT in its capacity as lender, the "Lender Group"), by and through its attorneys, Reed Smith LLP, submits this Answering Brief in Opposition to the *Chapter 7 Trustee's Motion to Dismiss Adversary Complaint* (the "Motion to Dismiss") [Adv. Docket No. 37] and *Opening Brief in Support of the Chapter 7 Trustee's Motion to Dismiss Adversary Complaint* ("Trustee Brief") [Adv. Docket No. 37-1], and respectfully states as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

1.      George L. Miller, the chapter 7 trustee for the estates of the above captioned Debtors (the "Trustee") seeks dismissal of CIT's *Complaint for (I) Declaratory Relief and (II) Restitution of Certain Funds Distributed Under Vacated Approval Order* (the "Complaint") [Adv. Docket No. 1], arguing that CIT has failed to state a claim upon which relief may be granted because, as a matter of law, CIT is not entitled to (i) declaratory relief under Count I because CIT (a) lacks any interest in the Administrative Claim Fund and (b) seeks declaratory judgment solely regarding past conduct; (ii) restitution for unjust enrichment under Count II because neither the Trustee nor the Debtors' estates received any benefit from CIT's payment of the Administrative Claim Fund, and restitution would be inequitable; or (iii) any relief because (a) CIT lacks standing to bring the Complaint and is violating the automatic stay, as only a trustee can assert claims under section 549 of the Bankruptcy Code, (b) the Complaint is barred by the Administrative Claims Bar Date Order, defined below, (c) the Complaint is barred by the doctrine of judicial estoppel, and (d) the Complaint is barred by the doctrine of laches.  CIT respectfully submits that the Court should reject each of the Trustee's arguments for the reasons set forth below.

2.      *First*, the Administrative Claims Bar Date Order does not bar CIT from asserting the claims set forth in the Complaint.  The Administrative Claims Bar Date Order established the procedure for filing administrative claims.  CIT timely complied with the procedure and, therefore, is entitled to recover from property of the estate under section 726 of the Bankruptcy Code.  That right is important, especially with respect to the portion of the Administrative Claim Fund that was paid to the now defunct financial advisor to the Committee or to the bankrupt Sungard Availability Services LP ("Sungard").  CIT's only recovery of such amounts may come from "*property of the estate*" under section 726 of the Bankruptcy Code.  However, the administrative claim process has absolutely no effect on CIT's right to recover the *Lender Group's property* by pursuing restitution of the Lender Group's funds from the recipients thereof.  In any event, CIT's administrative claims were protective in nature and were filed in the alternative to comply with the Administrative Claims Bar Date Order.

3.      *Second*, CIT is not asserting a section 549 claim or violating the automatic stay because the Debtors did not transfer "property of the estate," and CIT does not seek to recover "property of the estate."  Instead, the Debtors transferred the Lender Group's property, and that is what CIT now seeks to recover.

4.      As the Third Circuit has declared repeatedly, as a matter of law, a vacated order (like the Approval Order) "never existed."  As the Approval Order "never existed," the Debtors never had any right to the Lender Group's funds that created the Administrative Claim Fund.  Indeed, vacatur of the Approval Order entitles CIT (and the rest of the Lender Group) to be put back in the economic position it was in *prior to* execution of the Settlement Agreement (as defined below) and the entry of the Approval Order.  Thus, the Administrative Claim Fund is not, and never was, "property of the estate."  The absence of "property of the estate" renders the Trustee's

reliance upon sections 549, 362 and 551 misplaced.  The various equitable and procedural arguments advanced by the Trustee are simply attempts to override the effect of the Supreme Court's vacatur of the Approval Order and should be rejected.

5.     **Third**, CIT does not seek declaratory relief "solely" to adjudicate *past* conduct. CIT seeks declaratory relief with respect to its *present* right to recover the Administrative Claim Fund and the *present* superiority of its right to restitution of the Administrative Claim Fund.  As the Trustee—along with a host of other Defendants (Pachulski, Klehr Harrison, Irving Oil)—assert (i) a competing claim to recoveries of the Administrative Claim Fund and (ii) that CIT is violating the automatic stay by seeking to recover the Lender Group's funds, it is obvious that declaratory judgment is appropriate and necessary.

6.     **Fourth**, the Trustee's assertion that CIT is not entitled to restitution because the estates did not receive any benefit from the Administrative Claim Fund is belied by reality. The Debtors admitted that they had no funds other than the Administrative Claim Fund to pay administrative claimants.  The Administrative Claim Fund was used to pay the *Debtors' obligations* to administrative claimants.

7.     **Fifth,** there is *no* basis to dismiss the Adversary Proceeding for laches.  On April 12, 2019, the Trustee filed the *Motion to Substitute Chapter 7 Trustee as Real Party in Interest* (the "Motion to Substitute") [Committee Adv. Docket. No. 121] seeking to substitute himself as "plaintiff" in the Committee Adversary Proceeding.  Less than *two months* later, on June 3, 2019, CIT filed the Complaint, thereby commencing this Adversary Proceeding. Moreover, this Adversary Proceeding is simply the procedural mechanism that CIT chose to proactively carry out the Supreme Court's mandate vacating the Approval Order and get these cases moving towards a resolution.  Even if CIT had taken no action, the Court would have

eventually had to fashion relief that would comply with the Supreme Court's ruling vacating the Approval Order. It would also be highly inequitable to invoke laches to bar CIT from unwinding a 2012 settlement agreement, only to allow the Trustee to restart litigation that was filed in 2008 on the same claims. The Trustee has also failed to show any prejudice, let alone "undue" prejudice. Further, when CIT filed the Complaint, there was almost a year remaining under the most analogous three-year statute of limitations for a breach of contract claim – The Approval Order was not vacated by the District Court until May 12, 2017.

8.      **Sixth,** none of the requirements for judicial estoppel have been met here. CIT's prior statements that the WARN Plaintiffs' appeal was equitably moot because it would be "virtually impossible" for CIT to recover the entire Administrative Claims is not "irreconcilably inconsistent" with CIT's present argument that it is entitled to restitution. It has already proven prescient. CIT will be unable to recover the portion of the Administrative Claim Fund that was paid to the Committee's defunct financial advisor or to bankrupt Sungard. The fact that CIT cannot possibly recover the *entire* Administrative Claim Fund does not preclude CIT from seeking to recover the *balance* of it.

9.      Moreover, CIT did not act in "bad faith" by making the settlement payment without awaiting a final order. In fact, CIT (at the Committee's urging and for the Debtors' benefit) made the payment "in good faith" *and* as permitted by the Settlement Agreement. Settlement Agreement (defined below), ¶ 18. CIT did not rush to fund the Administrative Claim Fund to moot an appeal. The Administrative Claim Fund was not paid until after the WARN Plaintiffs *lost* their motion for a stay pending appeal, approximately *nine (9) months* after entry of the Approval Order, and approximately *thirteen (13) months* after execution of the Settlement Agreement. In any event, as a matter of law, the Trustee's judicial estoppel argument fails because the Third Circuit has held

that a party has not displayed bad faith for judicial estoppel purposes if the initial position was never adopted by the court.

10.     If anyone should be judicially estopped for bad faith, it is *the Trustee*.  The Trustee claims that he has a superior right to recover the Administrative Claim Fund while he simultaneously seeks to prosecute the claims that were released in exchange therefor.

## NATURE AND STAGE OF THE PROCEEDINGS

11.     On June 3, 2019, CIT filed the *Complaint for (I) Declaratory Relief and (II) Restitution of Certain Funds Distributed Under Vacated Approval Order* (the "Complaint") [Adv. Docket No. 1].

12.     Contemporaneously with the Complaint, CIT filed *Plaintiff's Motion to Extend Time for Service of Complaint* (the "Motion to Extend") [Adv. Docket No. 3] in the desire to avoid litigation.   Neither the Defendant nor any other defendant opposed the Motion to Extend. Accordingly, on June 24, 2019, the Court entered an Order granting the Motion to Extend.  [Adv. Docket No. 6].  CIT, however, did serve a courtesy copy of the Complaint upon the defendants at the time it was filed.

13.     In the Complaint, CIT asserts two counts against the Trustee:  Count I seeks declaratory judgment, and Count II seeks restitution.

14.     On January 23, 2020, after failed negotiations with the Trustee, CIT formally served upon each defendant a summons and a copy of the Complaint.  [Adv. Docket No. 8].

15.     On May 26, 2020, the Trustee filed the Motion Dismiss. [Adv. Docket No. 37].

## FACTUAL BACKGROUND[1]

16.     On May 20, 2008 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

### A.     The Committee's Adversary Proceeding Against CIT and Sun.

17.     Pursuant to the Final DIP Financing Order, on December 31, 2008, the Official Committee of Unsecured Creditors (the "Committee") commenced an adversary proceeding by filing a complaint against CIT to recover (among other things) alleged avoidable transfers. *See* Adv. Pro. No. 08-51903(BLS) (the "Committee Adversary Proceeding").

18.     On June 30, 2010, the Committee amended the complaint to join Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc. (collectively, "Sun") as defendants and to assert claims against such entities.

19.     On September 15, 2011, the Bankruptcy Court granted in part and denied in part a motion to dismiss the Committee Adversary Proceeding. *See* Opinion at Docket No. 40, Adv. Pro. No. 08-51903(BLS) (the "Dismissal Order").    After entry of the Dismissal Order, on October 7, 2011, the Committee filed a second amended complaint against CIT and Sun.

### B.     The Settlement Agreement and Bankruptcy Court Approval.

20.     Subject to Bankruptcy Court approval, the Debtors, the Committee, Sun, and CIT entered into a Settlement Agreement and Release dated as of June 22, 2012 (the "Settlement Agreement").

---

[1] Capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the Complaint.

21.    On December 4, 2012, over the objection of certain former employees of the Debtors (the "WARN Plaintiffs"),[2] the Bankruptcy Court entered an *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Approval Order") [Docket No. 1520].

22.    The Approval Order provided, in part, as follows:

Within ten (10) business days after the Effective Date . . . of the Settlement Agreement (the "Effective Date"), the following shall occur simultaneously:

(a) CIT shall pay to the Debtors $2,000,000 (the "Administrative Claim Fund");

(b) The Committee, CIT and Sun shall file with the Court a fully executed stipulation of dismissal with prejudice, substantially in the form of Exhibit 2 to the Settlement Agreement;

(c) The releases set forth in paragraph 2(c) of the Settlement Agreement shall become effective upon payment of the Administrative Claim Fund to the Debtors; and

(d) The Estate Releasing Parties, as such term is defined in the Settlement Agreement, shall execute and deliver to CIT releases in favor of the other members of the Lender Group, as such term is defined in the Settlement Agreement, in the form attached as Exhibit 3 to the Settlement Agreement, and such releases shall be effective upon payment of the Administrative Claim Fund to the Debtors.

---

[2] The WARN Plaintiffs objected to the Settlement Agreement by filing, on July 25, 2012, the *Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [Docket No. 1396], and, on November 7, 2012, the *Objection in Opposition to the Supplement to (1) Joint Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of Order (A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection* [Docket No. 1479].

*See* Approval Order, ¶ 4(a)-(d).

23.     The Approval Order provided for the payment of Estate Professionals and other holders of allowed administrative claims using the Administrative Claim Fund.  *See* Approval Order, ¶¶ 8-10.  For example, the Approval Order provided that, "[u]pon payment of the Administrative Claim Fund to the Debtors, the Debtors shall pay the aggregate sum of $200,000 from the Administrative Claim Fund to the professionals retained by the Committee on account of previously approved and unpaid fees and expenses."  *See* Approval Order, ¶ 8.

24.     Moreover, Exhibit A to the Certification (defined below) listed certain administrative tax and 11 U.S.C. § 503(b)(9) claims totaling $328,281.65 to be paid with the Administrative Claim Fund.  Of that total, the Complaint seeks $231,604.73 from the named defendants.

25.     As the Administrative Claim Fund was to be used to pay all "unpaid professional fees, as well as all allowed 503(b)(9) Claims and Admin taxes," Settlement Motion, ¶ 15, the balance of the Administrative Claim Fund was to be used only to pay the administrative claims of professionals for previously awarded attorneys' fees and expenses.

26.     Upon payment in full of the allowed administrative claims, the Debtors and the Committee were required to file with the Court a certification that administrative claims had been paid in full.  *See* Approval Order, ¶ 11; *Joint Motion for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Case upon Implementation of Settlement; and (III) Granted Related Relief* (the "Settlement Motion") [Docket No. 1346], Exh. C.

**C.     Denial of Stay Pending Appeal and Consummation of the Settlement Agreement.**

27.     On December 18, 2012, the WARN Plaintiffs filed an appeal of the Approval Order to the United States District Court for the District of Delaware (the "District Court").  The WARN

Plaintiffs also sought, in the Bankruptcy Court, a stay of the Approval Order pending resolution of the appeal.  The Bankruptcy Court denied the WARN Plaintiffs' request for a stay pending appeal.  The WARN Plaintiffs did not request a stay pending appeal from the District Court.

28.    After the denial of the WARN Plaintiffs' request for a stay, on or about August 29, 2013, CIT paid the Administrative Claim Fund to the Debtors' estates, and the Administrative Claim Fund was distributed to administrative claimants.

29.    The Debtors' administrative claimants would not have been paid but for the Administrative Claim Fund funded by CIT pursuant to the Settlement Agreement because the Debtors had no funds to pay administrative claims.  *See* Settlement Motion, ¶ 13 ("there are no available assets to pay outstanding administrative, priority or general unsecured claims at this time").

30.    On October 11, 2013, pursuant to paragraph 11 of the Approval Order, the Debtors and the Committee filed the *Certification of Counsel Regarding Satisfaction of Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Certification") [Docket No. 1741].

31.    Some or all of the $1,471,718.35 difference between the $2,000,000 paid to establish the Administrative Claim Fund and the $528,281.65 specifically identified to be paid pursuant to the Approval Order and Exhibit A to the Certification was distributed to, *inter alia*, Estate Professionals in payment of their previously awarded chapter 11 administrative claims.  *See*

Settlement Motion, ¶ 15 (Administrative Claim Fund was to be used to pay all "unpaid professional fees, as well as all allowed 503(b)(9) Claims and Admin taxes").

32.     The specific amounts of the Administrative Claim Fund distributed to each Estate Professional were not listed in the Debtors' monthly operating reports.

33.     On September 9, 2014, the Bankruptcy Court closed the Debtors' bankruptcy cases.

**D.     Initial Affirmances on Appeal and then Ultimate Vacatur of the Approval Order.**

34.     On appeal, the District Court affirmed the Approval Order.  *See Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 2014 WL 268613 (D. Del. Jan. 24, 2014).

35.     The WARN Plaintiffs appealed to the United States Court of Appeals for the Third Circuit, which affirmed the decision of the District Court in 2015.  *See Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015).

36.     In 2016, the Supreme Court of the United States (the "Supreme Court") granted *certiorari* to hear the WARN Plaintiffs' appeal.  *See Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016).  On March 22, 2017, the Supreme Court issued an opinion (7-2) and order reversing the Third Circuit's decision and remanding the case to the Third Circuit for further proceedings. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.").

37.     On May 9, 2017, the Third Circuit vacated its 2015 opinion and remanded the case to the District Court.  *See Official Comm. of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. Appx. 166 (3d Cir. 2017).

38.     On May 12, 2017, the District Court issued an order vacating the Approval Order and remanding the case to the Bankruptcy Court for further proceedings.

39.     On May 17, 2017, the Bankruptcy Court reopened Jevic Holding's bankruptcy case and on May 23, 2018, converted it to chapter 7.  On October 12, 2018, the Court reopened the remaining Debtors' bankruptcy cases and converted them to chapter 7.

**E.      The Administrative Claim Bar Date Order and CIT's Administrative Claim**

40.     On December 3, 2018, the Court entered the *Order (I) Establishing the Deadlines to File Proofs of Claim and Requests for Payment of Certain Administrative Expense Claims Pursuant to 11 U.S.C. § 503(b), (II) Approving Form and Manner of Notice Thereof and (III) Granting Related Relief* (the "Administrative Claims Bar Date Order") [Docket No. 1865], thereby establishing February 21, 2019 as the administrative claims bar date.

41.     On February 11, 2019, CIT timely filed the *Motion of the CIT Group/Business Credit, Inc. for Allowance of an Administrative Claim Pursuant to 11 U.S.C. § 503(b) and § 364(c)(1) and § 507* (the "Admin. Claim Motion") [Docket No. 1875].

**F.      The Adversary Proceedings**

42.     On April 12, 2019, the Trustee filed the *Motion to Substitute* seeking to substitute himself as "plaintiff" in the Committee Adversary Proceeding.

43.     Less than two months later, on June 3, 2019, CIT filed the Complaint, thereby commencing this Adversary Proceeding.

**LEGAL STANDARD**

44.     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint.  *Bush v. Dep't of Human Servs.*, 642 Fed. Appx. 84, 85 (3d Cir. 2016).  A court accepts as true the well-pled facts of the complaint and draws all possible inferences in the plaintiff's favor when ruling on a 12(b)(6) motion.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d. Cir. 2008).  A complaint will survive a motion to dismiss if it alleges

enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Frederick Hart & Co. v. Recordgraph Corp.*, 169 F.2d 580, 581 (3d Cir. 1948) ("It is also well-settled that . . . [a] complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim . . . ").

## ARGUMENT

45.     The Complaint states a claim for relief that is plausible on its face, and, therefore, the Motion to Dismiss should be denied in its entirety. The Trustee's arguments are either incorrect as a matter of law or constitute factual disputes that are not appropriate for resolution by the Motion to Dismiss.

**A.     The Administrative Claims Bar Date Order Does Not Affect CIT's Right to Recover the *Lender Group's Own Funds*.**

46.     The Trustee argues that CIT cannot seek to recover the *Lender Group's funds* because the Administrative Claims Bar Date Order states that "the *procedures* set forth and approved in this order are the sole and exclusive method for the *assertion* of any Chapter 11 Administrative Claim" (*see* Administrative Claims Bar Date Order, ¶ 18 (emphasis added)), CIT is barred from seeking the relief sought in the Complaint. The Trustee is incorrect.

47.     CIT *asserted* its administrative claim pursuant to the Administrative Claims Bar Date Order. Trustee Brief, ¶ 19.[3] To the extent that CIT does not recover the Lender Group's own

---

[3] The Trustee conveniently ignores that CIT specifically reserved its right to seek disgorgement of the Administrative Claim Fund in the Admin. Claim Motion and that CIT should be restored to its pre-settlement position. *See* Admin. Claim Motion, p. 7, n. 4 and ¶¶ 30-31.

funds, CIT will be entitled to recover on its administrative claim from the estates. For example, the Committee's former financial advisor no longer exists. Accordingly, CIT has an administrative claim against the estates to recover the amounts that were paid to such financial advisor.

48.     *Nothing* in the Administrative Claims Bar Date Order entitles (or could entitle) the Trustee to *collect the Lender Group's funds*. The procedural Administrative Claims Bar Date Order addresses the procedure for asserting claims to recover from property of the estates. The Administrative Claims Bar Date Order does *not* strip the Lender Group members' property interests in their own funds or grant the Trustee (or the estates) a license to collect the Lender Group's funds.

**B.      As the Approval Order Was Vacated, (i) It Never Existed, (ii) the Administrative Claim Fund Was Never "Property of the Estate," (iii) CIT, as Agent, Has Standing to Recover the Lender Group's Funds, and (iv) There Is No Stay Violation.**

49.     The Trustee argues that "CIT's Complaint is a thinly-veiled attempt to hijack the avoidance actions that constitute property of the estate and, therefore, CIT is violating the automatic stay." Trustee Brief, ¶ 20. The Trustee is wrong as a matter of law on both counts.

50.     Throughout his brief, the Trustee fails to appreciate the effect of vacatur of the Approval Order. In fact, the Trustee argues, in a footnote, as if the Approval Order was never vacated.[4] Contrary to binding Third Circuit precedent, the Trustee also argues in that same footnote that the Court should equitably deem the Administrative Claim Fund to be property of the estates.[5]

---

[4]  *See* Trustee Brief, pp. 7-8, n.7 (arguing that the "The Administrative Claim Fund is property of the Debtors' estates under 11 U.S.C. § 541 as proceeds of the [Committee Adversary Proceeding].").

[5]  *Id.*, p. 8 n. 7 ("arguing that "[a]lthough the Settlement Order has since been vacated, it is still equitable for the Court to find that the Administrative Claim Fund remains proceeds of the [Committee Adversary Proceeding] where, as here, CIT strategically acted outside of the terms of the Proposed Settlement Agreement to obtain the misguided benefit of an appellate argument."). By the Trustee's logic, the Court

51.     The legal effect of vacatur of an order is that the order *never existed*—it is *void*. As the Third Circuit Court of Appeals has recognized on multiple occasions, "it is clear that, once vacated, the . . . order '***never existed.***'"  *Abo State v. Gonzales*, 215 Fed. Appx. 134, 137 (3d Cir. 2007) (emphasis added); *United States v. Jerry*, 487 F.2d 600, 607 (3d Cir. 1973) ("when a court vacates an order previously entered, the legal status is the same as if the order ***never existed***.") (emphasis added).

52.     Indeed, the Third Circuit has recognized as "***axiomatic*** that 'where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had ***never existed***.'"  *Abo State*, 215 Fed. Appx. at 137 (citing *Mitchell v. Joseph*, 117 F.2d 253, 255 (7th Cir. 1941)) (emphasis added).  Indeed, that is hornbook law.  *See Garrison v. United States*, 2018 LEXIS 69661, 7 n.3 (S.D. Fla. Apr. 24, 2018) ("'[W]hen an order is vacated, it is as though it had ***never existed***.'  60 C.J.S. MOTIONS AND ORDERS § 72") (emphasis added); *see also, e.g., Leslie v. Conseco Life Ins. Co.*, 2014 WL 12479931, at *2 (S.D. Fla. July 25, 2014) ("If this Court's approval of the Settlement Agreement is reversed, vacated, or modified in any material respect by any court, the Settlement Agreement will be ***void***").

53.     In other words, "[w]hen courts vacate an order, it restores the parties to the position they were in *prior to* the issuance of the vacated order—*it is as if the order had never been issued*." *See In re Rodriguez*, 2013 WL 1748800, at *6 (Bankr. S.D. Tex. Apr. 23, 2013) (emphasis added); *World Sav. & Loan Ass'n v. Foronda*, 1998 WL 483515, at *1 (N.D. Ill. Aug. 10, 1998) ("where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had never existed.").

---

should equitably find that CIT and the Lender Group are released from all claims asserted by the Trustee relating to the [Committee Adversary Proceeding] because CIT paid $2.0 million for such release.

54.    The United States District Court for the Southern District of Texas addressed a similar issue upon remand after the Fifth Circuit vacated an order approving a settlement in a bankruptcy case.  *See Tech. Lending Partners v. San Patricio Cnty. Cmty. Action Agency*, 2010 WL 11579814, *2 (S.D. Tex. Sept. 2, 2010).  In *Technology Lending Partners*, a settlement agreement was consummated and payments from insurance proceeds (which were not property of the debtor's estate) were distributed to more than fifty creditors.  *Id*.  Upon remand from the Fifth Circuit, the District Court for the Southern District of Texas set aside the bankruptcy court's approval of the settlement agreement and the distributions made thereunder.  *See id.* at *6.  In light of the fact that the insurer funded the settlement in exchange for a release of liability, the district court declared that "the only practical relief available to Appellants is to require the unwinding of the entire settlement.  All creditors will be required to disgorge the settlement funds that have been distributed [to them]."  *Id.* at *6, n. 3.  Importantly, the court recognized that the property distributed under the settlement agreement was *not* "property of the estate," because the estate had "no legally cognizable claim" to the funds.  *Id.* at *3-4.

55.    Therefore, the Trustee's argument that the Administrative Claim Fund should be deemed to be "property of the estates" because CIT paid such amount to the Debtors pursuant to the vacated Approval Order lacks any merit.

56.    The Trustee has no claim to recover the Administrative Claim Fund, under section 549 of the Bankruptcy Code because that section only applies to unauthorized transfers of "property of the estate."  Upon vacatur, the Administrative Claim Fund was never property of the Debtors' estates and, therefore, neither the Debtors nor the Trustee has (or ever had) any claim to recover *the Lender Group's funds* under section 549 of the Bankruptcy Code.  *See* 11 U.S.C. § 549; *ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*, 335 B.R. 580, 584 (Bankr.

D. Del. 2005) ("Section 549 provides the Trustee (or debtor in possession) with the authority to avoid a transfer of *property of the estate* that is not authorized by the Bankruptcy Court or the Code.") (emphasis added).[6]

57.     As the Administrative Claim Fund was never property of the estates, (a) it is the Trustee—not CIT—that lacks standing to recover the Administrative Claim Fund and (b) CIT is not violating the automatic stay in seeking to recover the Lender Group's Funds.

**C.     CIT States a Claim Against the Trustee for Declaratory Judgment.**

58.     The Trustee erroneously argues that CIT is not entitled to declaratory relief because (i) a request for declaratory relief is inappropriate "solely" to adjudicate past conduct, (ii) CIT "at best" has an administrative expense claim which is required to be resolved in the claims resolution process, and (iii) the Trustee cannot assert a superior interest in the Administrative Claim Fund because any recoveries will be for the benefit of the estates under section 551 of the Bankruptcy Code.  Trustee Brief, ¶ 23.

**1.     CIT Does Not Seek Declaratory Judgment "Solely" to Adjudicate Past Conduct.**

59.     The Trustee claims that CIT's request for declaratory relief regarding its right to restitution and the superiority of that right of restitution is an improper attempt use of declaratory judgment "solely" to adjudicate past conduct.  Trustee Brief, ¶ 23 (citing *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) ("A declaratory judgment is inappropriate *solely* to adjudicate past conduct.") (citation omitted) (emphasis added)).

---

[6] Section 549 of the Bankruptcy Code also does not apply here because the Settlement Agreement and its related transfer was authorized by the Court pursuant to Rule 9019.

60.     Of course, the superiority of CIT's right of restitution is a present and future (not past) right.  The superiority of CIT's present right can only be determined based upon past conduct.  Thus, the Trustee's request for declaratory judgment is not "solely" to adjudicate past conduct.

61.     Declaratory judgment is appropriate—and necessary—to determine CIT's present and future rights and the superiority of such rights to recover the *Lender Group's funds* against the competing claims of (at least) the Trustee, Pachulski Stang Ziehl & Jones LLP, Morris Anderson & Associates, Klehr Harrison, Harvey, Branzburg & Ellers LLP, and Irving Oil Corporation, which have all asserted a right to share in the recovery of funds paid out pursuant to the Approval Order, whether funds already been recovered[7] or that may be recovered in this Adversary Proceeding.  Declaratory relief is the most practical—and only—way to adjudicate the claimants' respective rights.

62.     As the Trustee has sought to dismiss all claims against him, arguing that he alone can seek to recover the Administrative Claim Fund, the Trustee cannot reasonably dispute that there is a substantial and actual controversy between adverse legal interests concerning whether CIT is entitled to restitution of the funds and whether CIT has the superior (and only) interest in, the recovery of the Administrative Claim Fund.

> **2.     CIT's Administrative Claim Does Not Preclude CIT's Declaratory Judgment Claim.**

63.     CIT's administrative claim gives it the right to recover from any "property of the estate" as an expense of administration under section 726 of the Bankruptcy Code.  *See* 11 U.S.C. § 726 ("property of the estate shall be distributed . . . .");  *see also* 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).  That administrative claim is important in instances where CIT is unable to recover the

---

[7] CIT has settled with certain defendants that have been dismissed from this Adversary Proceeding.  The Trustee also is holding funds pursuant to a settlement to recover funds paid under the Settlement Agreement. *See Order Approving Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 1896].

*Lender Group's* funds through restitution, such as in the case of funds paid from the Administrative Claim Fund to the now defunct Committee financial advisor. That administrative claim payable from "*property of the estate*," however, does not preclude CIT from asserting its right to restitution to recover the *Lender Group's funds* that were paid out pursuant to the Approval Order.

### 3.    Section 551 of the Bankruptcy Code Is Irrelevant.

64.    The Trustee's reliance upon section 551 of the Bankruptcy Code is misplaced. As there will be no avoidance of any transfer of "property of the estate" (as discussed above), section 551 is irrelevant. *See* 11 U.S.C. § 551 ("Any transfer avoided under section . . . 549 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate.").

## D.    CIT States a Claim Against the Trustee for Unjust Enrichment and Restitution.

65.    For over a century, courts have recognized that parties to a settlement agreement that has been vacated on appeal should be restored to their original economic position prior to entering into that settlement agreement. *See, e.g., Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891) ("[T]he power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former position."); *Nance v. NYPD*, 31 Fed. Appx. 30, 33 (2d Cir. 2002) ("[T]his Court has held that litigants seeking to vacate settlement agreements must disgorge any monetary benefits gained as a result of the agreement."); *In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015) (describing the remedy of disgorgement as "conceptually," the "most straightforward"); *Leslie v. Conseco Life Ins. Co.*, 2014 WL 12479931, *2 (S.D. Fla. July 25, 2014) ("If this Court's approval of the Settlement Agreement is reversed, vacated, or modified in any material respect by any court, *the Settlement Agreement will*

*be void*, [and] Plaintiffs and Conseco will be *restored to their respective positions as of the date the Settlement Agreement was signed*.") (emphasis added).

66.    The Trustee, however, incorrectly asserts three (3) reasons why CIT allegedly fails to state a claim against the Trustee for unjust enrichment and restitution.  Specifically, the Trustee asserts that (i) the "Trustee has neither received nor retained any benefit as a result of the Settlement Order . . . [because] [t]he Debtors disbursed the Administrative Claim Fund . . . four years before the Trustee's appointment" and "[t]o that end, Debtors were a conduit through which administrative claimholders were paid for services rendered" and did not act "inequitably," Trustee Brief, ¶ 28; (ii) "CIT attempts to retain the benefit of a release under the . . . Settlement Agreement by blocking the Trustee from pursuing the [Committee Adversary Proceeding] while simultaneously seeking a recovery of the Administrative Claim Fund here," Trustee Brief, ¶ 29; and (iii) the Settlement Agreement—an allegedly valid and enforceable written contract governing a particular subject matter—precludes recovery in quasi contract for events arising out of the same subject matter, Trustee Brief, ¶ 30.

67.    First, the Trustee—who wants to "step into the shoes" of the Committee in the Committee Adversary Proceeding—seeks to go barefoot here by distancing himself from the estates representatives (and the estates themselves).  As in the Committee Adversary Proceeding, the Trustee fails to recognize that he is bound by the Debtors' actions and "steps into the shoes" of the Debtors.  The Debtors were not mere "conduits" that received no benefit from the Settlement Agreement.  The *Debtors' obligations* were satisfied by the payments from the Administrative Claim Fund.  Having received such benefit, the Trustee, as the Debtors' successor, is acting inequitably by seeking to recover the Lender Group's funds while attempting to step into the

Committee's shoes to assert claims in the Committee Adversary Proceeding that were released in exchange for the Lender Group's funds.

68.    Second, CIT is not seeking "the benefit of the release" *under* the Settlement Agreement.  CIT seeks restoration to its *pre*-settlement position before any claims can be asserted against CIT.  At the time the Settlement Agreement was executed, CIT's funds were in possession of the Lender Group, *not* the Debtors.  Trustee Brief, ¶ 9.  Seeking repayment of its funds to restore its *pre*-settlement position is much different than seeking to enforce a release *under* the Settlement Agreement.  CIT also challenges the merits, and standing of the Trustee, in the Committee Adversary Proceeding.[8]

69.    Third, the Trustee astonishingly asserts that the Settlement Agreement (or "Proposed" Settlement Agreement in the Trustee's vernacular) precludes restitution for unjust enrichment because the Settlement Agreement is valid and enforceable.  The Trustee does not attempt to explain how the Settlement Agreement can be valid and binding when the Approval Order was vacated.  If the Settlement Agreement is valid and binding, the Trustee immediately must dismiss the Committee Adversary Proceeding because the Trustee is breaching a valid and binding agreement.

---

[8] There is also a significant difference between challenging the Trustee's standing to pursue the Committee Adversary Proceeding and seeking to enforce the vacated release.  In challenging the Trustee's standing, CIT argues that, in consideration for providing DIP Financing, it bargained for and received a complete release from the Debtors in the Final DIP Order that binds the Trustee (subject to a long-expired Investigation Period). *See, e.g.*, Docket No. 140 (Case No. 08-51903) (*citing In re MS55, Inc.*, 477 F. 3d 1131 (10th Cir. 2007)).  Thus, CIT is simply trying to enforce the parties' agreements embodied in the Final DIP Order.  The Debtors or the Committee could have attempted to negotiate a broader carve-out that would have preserved the rights of a future chapter 7 trustee, but they failed to do so.  Thus, in challenging the Trustee's standing, CIT is merely pointing to an alternate reason beyond the Settlement Agreement why the Trustee cannot proceed with these claims.  Even if there was some equitable concern at play with the Trustee's standing that is relevant to the Motion to Dismiss, the equities would weigh heavily in favor of CIT because no reasonable lender would provide DIP financing if bargained-for releases could be circumvented in the event of the case converting—years later—to a chapter 7 proceeding.

70.    Fourth, the Trustee's request for dismissal of CIT's restitution claim fails for another obvious reason.  The issue of unfairness or balancing the equities in deciding a claim for restitution is an inherently factual issue that is inappropriate for resolution on a motion to dismiss. *See  Professional Staff Leasing Corp. v. Unicare Life & Health Ins. Co.*, 2003 WL 21359621, at *6 (D. Del. Mar. 31, 2003) ("the Court will not dismiss such a [restitution] claim at this stage due to the factual considerations involved in the determination to award such relief, including the balancing of equities"); *cf. In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 706 (E.D. Pa. 2014) (stating, in context of an unjust enrichment claim, that "fairness" was a factual issue "inappropriate for disposition in a motion to dismiss").

**E.    The Complaint Is Not Barred by the Doctrine of Laches**

71.    The Trustee erroneously argues that the Court should bar the Complaint under the doctrine of laches because CIT delayed asserting its claim for more than two (2) years after the vacatur of the Approval Order.  This argument is erroneous.

72.    The elements of laches are "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984) (quoting *Costello v. United Stat*es, 365 U.S. 265, 282 (1961)).  The Trustee bears the burden of proof.  *See EEOC*, 735 F.2d at 80.

73.    As detailed above, the Supreme Court's mandate required that the Court place the parties in their pre-settlement position.  Here, CIT's adversary proceeding is simply a vehicle to carry out the Supreme Court's mandate while giving full due process to all parties.  Regardless, there was no lack of diligence by CIT.  Ironically, the facts evidence that if anyone demonstrated a lack of diligence, it was *the Trustee*.

74.     On May 23, 2018, the Bankruptcy Court entered an order converting JHC's bankruptcy case, as of June 5, 2018, to a chapter 7 case.  *See* Dkt. No. 1805.  The Trustee was appointed on June 5, 2018.  *See* Dkt No. 1807.

75.     It took the Trustee *four months* to get the remaining Debtors' cases converted to chapter 7 on October 12, 2018.  *See, e.g., In re Jevic Transportation, Inc.*, Case #08-11008(BLS), Dkt. No. 17.  On October 15, 2018, the Trustee was appointed in the Jevic Transportation, Inc. case.  *See id.*, Dkt. No. 18.

76.     After an *additional six months*, on April 12, 2019, the Trustee filed the *Motion to Substitute* seeking to substitute himself as "plaintiff" in the Committee Adversary Proceeding.

77.     Less than *two months* later, on June 3, 2019, CIT filed the Complaint, thereby commencing this Adversary Proceeding.

78.     The Trustee has attempted to step into the lawsuit against CIT to prosecute claims that were released in exchange for CIT's funding of the Administrative Claim Fund. Notwithstanding the Trustee's attempt to prosecute claims against CIT, the Trustee argues that CIT's demand for restitution is inequitable.  That same Trustee also argues that CIT is barred by laches for not seeking restitution *before* the Trustee even attempted to prosecute claims against CIT.  The irony (and lack of merit) of the Trustee's positions should not be lost on the Court.

79.     There is *no* basis to dismiss the Adversary Proceeding for laches.  As the Supreme Court of Delaware has explained, "[u]nder ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law[.]"  *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009); *D'Agostino v. Appliances Buy Phone, Inc.*, 633 Fed. Appx. 88, 91 n.3 (3d Cir. 2015) ("'Inexcusable delay' for purposes of

- 22 -

laches is measured by looking to 'the most analogous' state statute of limitations.") (citation omitted).

80.    Here, using the Trustee's moniker of "quasi-contract" claim for CIT's restitution/unjust enrichment claim (Trustee Brief, ¶ 30), the most analogous statute of limitations would be no less than the three-year breach of contract statute of limitations.  10 Del. C. § 8106(a).  The Approval Order was not vacated by the District Court until May 12, 2017.  The Complaint was filed almost a full year before the earliest that the three-year statute of limitations could have expired.

81.    But, even if there were any reasonable argument that CIT did not act diligently, under Delaware law, "[w]hat constitutes unreasonable delay and prejudice are questions of fact that depend upon the totality of the circumstances."  *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002) (citations omitted).  It would be inappropriate to make a determination of such facts on a motion to dismiss.  *See Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 363 (3d Cir. 1983) (dismissal on the basis of laches was inappropriate when the defense depended on "disputed issues of fact").

**F.    CIT Is Not Judicially Estopped From Recovering the Administrative Claim Fund.**

82.    None of the requirements for judicial estoppel have been met here.

83.    CIT's prior statements that the WARN Plaintiffs' appeal was equitably moot because it would be "virtually impossible" for CIT to recover the Administrative Claims is not "irreconcilably inconsistent" with CIT's present argument that it is entitled to restitution.  It has already proven true that CIT will be unable to recover the entire Administrative Claim Fund.  The Committee's financial advisor is defunct.  In addition, Sungard filed for relief under chapter 11 of the Bankruptcy Code and has been dismissed from this Adversary Proceeding.  The fact that it has

proven true that CIT cannot recover the entire Administrative Claim Fund does not preclude CIT from seeking to recover the balance of it.

84.    CIT's agreement (at the Committee's urging) to pay the Administrative Claim Fund pending the WARN Plaintiffs' appeal was not done "in bad faith."  In fact, CIT made the payment "in good faith"' and pursuant to the terms of the Settlement Agreement.  This is not a case where CIT had rushed to fund the Administrative Claim Fund to moot an appeal.  The Administrative Claim Fund was not paid until approximately *nine (9) months* after entry of the Approval Order and approximately *thirteen (13) months* after execution of the Settlement Agreement.

85.    The Settlement Agreement, as then approved by the Court, expressly allowed the parties to waive the requirement of a Final Order.  The Settlement Agreement defined its "Effective Date" the business day following the date that the Settlement Order becomes a Final Order, *unless otherwise agreed to by the Parties*."  Settlement Agreement, ¶ 18 (emphasis added).  As the Third Circuit has recognized, waiving a right to a final order to moot an appeal is not "bad faith," and "the existence of the power of appellees to exercise its right to waive a final order should have put appellant on notice to seek a stay of the confirmation order pending appeal. *Official Comm. of Unsecured Creditors v. SGPA, Inc. (In re SGPA, Inc.)*, 34 Fed. Appx. 49, 53 (3d Cir. 2002).  In the present case, the WARN Plaintiffs recognized that the parties had the right to waive a final order, and the WARN Plaintiffs sought a stay pending appeal.  The WARN Plaintiffs *lost* their motion for a stay pending appeal.

86.    In any event, as a matter of law, the Trustee's judicial estoppel argument fails. There is no bad faith if a party's prior position was not adopted or accepted by a court.  *See Montrose Medical Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001) ("we hold that a party has not displayed bad faith for judicial estoppel purposes if the initial claim was

never accepted or adopted by a court or agency"); *Coast Auto. Grp, Ltd. v. VW Credit, Inc.*, 34 Fed. Appx. 818, 823 (3d Cir. 2002) (quoting *Montrose*).

87.    If anyone should be judicially estopped for bad faith, it is *the Trustee*.  The Trustee claims that he has a superior right to recover the settlement payment (*i.e.,* the Administrative Claim Fund) while he simultaneously seeks to prosecute the claims that were released in exchange for the settlement payment.  The Trustee argues that it would be inequitable for CIT to recover the Administrative Claim Fund even *after* the Trustee has sought to prosecute such claims against CIT while simultaneously arguing that CIT is barred by laches for not suing to recover the Administrative Claim Fund *before* the Trustee sought to prosecute the claims.  Worse yet, the Trustee argues the Settlement Agreement is valid and binding such that it precludes quasi-contract restitution/unjust enrichment claims.

## LEAVE TO AMEND

88.    To the extent that the Court is inclined to accept any of Trustee's arguments (which the Court should not accept), CIT requests that the Court grant leave to amend the Complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

**<u>CONCLUSION</u>**

For all of the foregoing reasons, CIT respectfully requests that the Court enter an Order

(i) denying the Motion to Dismiss in its entirety, (ii) granting CIT leave to amend (to the extent

the Court would otherwise dismiss any of the claims against the Trustee), and (iii) granting such

further relief to CIT as is appropriate.

Dated:  June 26, 2020
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:  */s/ Kurt F. Gwynne*
    Kurt F. Gwynne (No. 3951)
    Katelin A. Morales (No. 6683)
    1201 N. Market Street, Suite 1500
    Wilmington, DE 19801
    Telephone: (302) 778-7500
    Facsimile: (302) 778-7575
    E-mail:  kgwynne@reedsmith.com
    E-mail:  kmorales@reedsmith.com

    *Counsel for Plaintiff,*
    *The CIT Group/Business Credit Inc.,*
    *as Agent, for itself and the Lender*
    *Group*