IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br><br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., et al.; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISION, HARVEY, BRANZBURG & ELLERS LLP,<br><br>　　　　　　Defendants. | Adv. No.:  19-50256 (BLS) |

**REPLY BRIEF IN SUPPORT OF THE CHAPTER 7
TRUSTEE'S MOTION TO DISMISS ADVERSARY COMPLAINT**

---

[1]　　The Debtors in this Chapter 7 case, along with the last four digits of the Debtors' federal tax identification numbers are: Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

13579641

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The Complaint is Barred by the Chapter 11 Administrative Claims Bar Date Order .................................................................................................................. 2

    II.    CIT Lacks Standing to Bring the Complaint Because the Administrative Claim Fund is Property of the Debtors' Estates and CIT Funded the Administrative Claim Fund Outside of the Terms of the Proposed Settlement Agreement .................................................................................................................. 3

    III.    CIT Concedes that Its Claim For Declaratory Judgment "Can Only Be Determined Based Upon Past Conduct" and Declaratory Relief Is Therefore Inappropriate .................................................................................................................. 6

    IV.    The Complaint Fails to State a Claim for Unjust Enrichment and Restitution....... 7

    V.    The Complaint is Barred by the Doctrine of Laches ........................................... 10

    VI.    The Complaint is Barred by the Doctrine of Judicial Estoppel ............................ 13

    VII.    The Court Should Deny CIT Leave to Amend as Futile ...................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Churma v. U.S. Steel Corp.*,
  514 F.2d 589 (3d Cir. 1975)................................................................................................11

*Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*),
  2014 WL 268613 (D. Del. Jan. 24, 2014)............................................................................14

*Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*,
  556 F. Supp. 2d 367 (D. Del. 2008)......................................................................................6

*In re Hayes Lemmerz Int'l, Inc.*,
  Adv. No. 11-53881 (MFW), 2013 WL 1910312
  (Bankr. D. Del. Apr. 25, 2013) ............................................................................................10

*Mazza v. Sheet Metal Workers' Nat. Pension Fund*,
  410 F. App'x 464 (3d Cir. 2010) ..........................................................................................9

*McTernan v. City of York, Penn.*,
  577 F.3d 521 (3d Cir. 2009).........................................................................................10, 12

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
  243 F.3d 773 (3d Cir. 2001)..........................................................................................13, 14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).............................................................................................................14

*Nw. Fuel Co. v. Brock*,
  139 U.S. 216 (1891)..............................................................................................................8

*Official Committee of Unsecured Creditors v. CIT Group/Business Credit Inc.* (*In
  re Jevic Holding Corp.*), 787 F.3d 173 (3d Cir. 2015) ....................................................1, 5

*Paramount Film Distrib. Corp. v. State*,
  285 N.E.2d 695 (N.Y. 1972).................................................................................................7

*In re Sungard Availability Services, LP*,
  Case No. 19-22914-rdd (Bankr. S.D.N.Y. May 1, 2019) ...................................................11

*Tech. Lending Partners, LLC v. San Patricio Cnty. Cmty. Action Agency*,
  2010 WL 11579814 (S.D. Tex. Sept. 2, 2010) .................................................................4, 5

*Tech. Lending Partners, LLC v. San Patricio Cty. Cmty. Action Agency*,
    Case No. 2:07-cv-00346 (S.D. Tex. Dec. 23, 2010) ................................................................4

*In re Tribune Media Co.*,
    799 F.3d 272 (3d Cir. 2015) ....................................................................................................8

*Whittington v. Dragon Grp. L.L.C.*,
    No. CIV.A. 2291-VCP, 2008 WL 4419075 (Del. Ch. June 6, 2008) ................................10, 11

**Statutes**

11 U.S.C. § 503(b) ........................................................................................................................2

11 U.S.C. § 507(a) ........................................................................................................................2

George L. Miller, the Chapter 7 Trustee (the "Trustee") solely in his capacity as the duly-appointed chapter 7 trustee (the "Trustee") in the above-referenced chapter 7 cases of the above-reference debtors (collectively, the "Debtors"), hereby files his reply brief to the *Answering Brief of Plaintiff the CIT Group/Business Credit, Inc. in Opposition to Trustee's Motion to Dismiss* [A.D.I. 40] (the "Opposition" or "Opp. Br.") filed by The CIT Group/Business Credit, Inc. ("CIT"), and in further support of the *Motion to Dismiss Adversary Complaint* [A.D.I. 37] (the "Motion to Dismiss").  For the reasons set forth below, the Motion to Dismiss should be granted and the Complaint should be dismissed in its entirety.

## PRELIMINARY STATEMENT

1. CIT fails to recognize that all the issues identified in the Opposition are of CIT's own making when it made the decision (albeit misguided; but clearly strategic) to fund the Proposed Settlement Agreement before the entry of a *final* order to gain a perceived litigation advantage on Appeal.  Their actions in doing so belie logic and should not be countenanced.  CIT should not now be permitted to shift the risk it took on its own behalf onto the Trustee and the Debtors' estates.

2. At bottom, CIT argues that the Administrative Claim Fund is its own—and not the Debtors' property—and that CIT should therefore be allowed to proceed with the Complaint.  CIT is wrong on all counts.  **First**, the Chapter 11 Claims Administrative Bar Date Order precludes CIT from proceeding on its claims in the Complaint.  In fact, CIT recognized this when it filed its motion seeking approval of an administrative expense claim [D.I. 1875] (the "CIT Admin Claim").  **Second**, disbursements from the Administrative Claim Fund recovered by the Trustee are property of the estates and CIT therefore lacks standing to bring the Complaint.  **Third**, CIT has failed to state a claim for declaratory judgment and restitution.  **Finally**, CIT's Complaint is barred by the equitable doctrines of laches and judicial estoppel.

3. For the reasons discussed below and in the Motion to Dismiss, the Complaint should be dismissed in its entirety.

## ARGUMENT

I. **The Complaint is Barred by the Chapter 11 Administrative Claims Bar Date Order**

4. CIT concedes, as it must, that "[t]he … Administrative Claims Bar Date Order addresses the procedure for asserting claims to recover from ***property of the estates***." Opp. Br. ¶ 48 (emphasis added). CIT mistakenly tries to distinguish the Complaint as seeking recovery of CIT's own funds, rather than the fact that it seeks to recover funds that are property of the estate and subject to the CIT Admin Claim. But the CIT Admin Claim makes no such distinction and both the Complaint and the CIT Admin Claim seek to recover the same $2,000,000 Administrative Claim Fund based on the same arguments. CIT simply cannot have it both ways.

5. Indeed, the CIT Admin Claim broadly provides that "[t]he $2,000,000 administrative claim is for the amount that the Lender Group paid to the Debtors to establish [the Administrative Claim Fund] pursuant to the [Settlement] Order …, which has been vacated." CIT Admin Claim at 1. CIT then argues in the CIT Admin Claim that it is entitled to an administrative claim based on an alleged right of restitution. *See* ¶¶ 32-33 (alleging that "[t]he use of ***the Lender Group's funds*** to pay the Debtors' obligations benefitted the Debtors …. Therefore [after vacatur of the Settlement Order] the Lender group is entitled to an additional ***administrative claim*** in the amount of $2,000,000 pursuant to sections 503(b) and 507(a) of the Bankruptcy Code") (emphasis added) (citing case law for the proposition that "restitution constitutes a basis for an administrative claim").[2] Here, CIT similarly argues that (1) it is entitled to a declaratory judgment that CIT may

---

[2] Neither footnote 4 nor paragraphs 30-31 of the CIT Admin Claim, relied upon by CIT in a footnote (Opp. Br. at 12 n.3), provide otherwise. Footnote 4 of the CIT Admin Claim merely reserves the right "to seek disgorgement of the Administrative Claim Fund ***from***

2

recover the full $2,000,000 Administrative Claim Fund from the Debtors and their estates and that CIT also has a super priority interest in such funds; and (2) it is entitled to restitution in the full $2,000,000 amount. Complaint Counts I & II (WHEREFORE clauses).

6. As CIT recognized when it filed the CIT Admin Claim, to the extent it is entitled to any recovery (it is not), it must seek recovery through the claims resolution process and as provided in the Chapter 11 Administrative Claims Bar Date Order. Moreover, by filing the CIT Admin Claim, seeking recovery from property of the estates, CIT has acknowledged that the Administrative Claim Fund constitutes property of the estates. This Court should not allow CIT to pursue both an adversary complaint—in contravention to the Chapter 11 Administrative Claims Bar Date Order—and an administrative claim against the Debtors and their estates seeking the same recovery based on the same allegations and legal theories. The Court may therefore dismiss the Complaint as against the Trustee and the Debtors' estates on this ground alone.

## II. CIT Lacks Standing to Bring the Complaint Because the Administrative Claim Fund is Property of the Debtors' Estates and CIT Funded the Administrative Claim Fund Outside of the Terms of the Proposed Settlement Agreement

7. CIT next argues that the Administrative Claim Fund is not property of the estates because "CIT paid such amount to the Debtors pursuant to the vacated Settlement Order" which should be treated as if it never existed. *See* Opp Br. ¶¶ 49-57. However, CIT's argument misses the mark because CIT did not pay the Administrative Claim Fund "pursuant to the vacated

---

*the recipients* of amounts disbursed therefrom." CIT Admin Claim at 7 n.4 (emphasis added). This reservation is inapplicable here because it expressly applies to "recipients of amounts disbursed" from the Administrative Claim Fund (*i.e.*, creditors), not from the Debtors or their estates. Similarly, paragraphs 30-31 merely cite case law to support CIT's assertion that parties to a vacated settlement "should be restored to their original economic position," and a discussion of general principles of restitution, neither of which apply here for the reasons provided below.

3

Settlement Order," and CIT ignores its own independent conduct in pursuit of mooting the Appeal. *See* Opp. Br. ¶ 55. The Proposed Settlement Agreement expressly provided that CIT was not required to fund the Administrative Claim Fund absent a final, non-appealable order. Proposed Settlement Agreement ¶¶ 2(a), 18-19. None of the cases cited by CIT address such a unique circumstance and are therefore readily distinguishable.

8. The primary case relied on by CIT, the out-of-circuit decision in *Tech. Lending Partners, LLC v. San Patricio Cnty. Cmty. Action Agency*, 2010 WL 11579814 (S.D. Tex. Sept. 2, 2010), is no different. First, the decision is of questionable precedential and persuasive value, even in its home jurisdiction, because the opinion was later withdrawn by the court ordering that "the Court's MEMORANDUM OPINION AND ORDER OF SEPTEMBER 2, 2010 (ENTERED AS DOC. #53 IN 07-237 AND AS DOC. #50 IN 07-346) IS HEREBY WITHDRAWN and ***shall have no precedential value or effect***." Order Lifting Stay Imposed on Appeals and Withdrawing Memorandum Opinion and Order at 2, *Tech. Lending Partners, LLC v. San Patricio Cty. Cmty. Action Agency*, Case No. 2:07-cv-00346 (S.D. Tex. Dec. 23, 2010), ECF No. 57 (bold and italics added) (attached hereto as **Exhibit A**).

9. Second, the court's decision on whether insurance proceeds used to fund the settlement in *Tech Lending Partners* were property of the estate based on Fifth Circuit law has no bearing on whether the non-insurance proceeds of the Administrative Claim Fund are property of the Debtors' estates. *See Tech. Lending Partners, LLC*, 2010 WL 11579814, at *4-5. The court's decision that the insurance proceeds were not property of the estate turned on Fifth Circuit law that *liability* insurance policies are for the benefit of those harmed by the debtor, and would never be paid directly to a debtor. *See id.* at *5 ("[T]he liability policy at issue is designed to insure against wrongful acts committed against third parties by the insureds, not to pay the Debtor for any claims

4

it asserts, nor is it designed to replace any property lost by the bankruptcy estate."). There are no insurance proceeds at issue here and the *Tech. Lending Partners* court's reasoning that liability insurance proceeds are not property of a debtor's estate, under Fifth Circuit law, are of no moment.

10.  Third, the *Tech Lending Partners* decision also turned on a finding that the underlying state court litigation that was the subject of the settlement was itself not property of the debtor's estate. *See id.* at *3. In contrast here, there can be no dispute that the claims in the underlying LBO Adversary are property of the Debtors' estates and so too are any proceeds of the litigation such as the Administrative Claim Fund. *See Official Committee of Unsecured Creditors v. CIT Group/Business Credit Inc.* (*In re Jevic Holding Corp.*), 787 F.3d 173, 188 (3d Cir. 2015) (Scirica, J. dissenting), *as amended* (Aug. 18, 2015), *rev'd and remanded sub nom. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) ("[T]he money paid by the secured creditors in the settlement was property of the estate [because a] cause of action held by the debtor is property of the estate … and 'proceeds ... of or from property of the estate' are considered estate property as well.") (citations omitted). Moreover, as discussed above, CIT has acknowledged that the Administrative Claim Fund is property of the estates by filing the CIT Admin Claim.

11.  Finally, and perhaps most importantly, the *Tech Lending Partners* case did not involve the inequities presented by the Complaint here. The court in *Tech Lending Partners* ruled for the appellant who was a party allegedly aggrieved by the proposed settlement, not a proponent of the settlement as CIT is here. So the appellant in *Tech Lending Partners* would be more analogous to the WARN Plaintiffs (as defined in the Opposition) here. Unlike the appellants in *Tech Lending Partners*, CIT took action to push the Proposed Settlement Agreement through before there was a final, non-appealable order before its briefing in the District Court to moot the WARN Plaintiffs' Appeal and deny them their right to otherwise receive a decision on the merits.

Thus, even if the Court finds that the Administrative Claim Fund is not proceeds of the LBO Adversary litigation, the Court should exercise its equitable powers and deem the Administrative Claim Fund property of the estates based on the unique circumstances here.

12. The Administrative Claim Fund is therefore property of the estates and any right to recover funds disbursed from the Administrative Claim Fund belongs to the Trustee and interference with that right violates the automatic stay. CIT lacks standing and the Complaint should be dismissed with prejudice.

**III. CIT Concedes that Its Claim For Declaratory Judgment "Can Only Be Determined Based Upon Past Conduct" and Declaratory Relief Is Therefore Inappropriate**

13. CIT argues that its request for declaratory judgment is not "solely" to adjudicate past conduct because its alleged "superpriority right of restitution is a present and future (not past) *right*," but then concedes that its alleged "present right can only be determined ***based upon past conduct***." Opp. Br. ¶ 60 (emphasis added). As noted by the district court, "'[a] declaratory judgment is inappropriate solely to adjudicate past ***conduct***.'" *Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (emphasis added) (citation omitted). Even though CIT alleges a present "right," it concedes that its alleged right is based *solely* on past *conduct* and declaratory relief is therefore inappropriate.

14. Additionally, "[a] court should not grant declaratory relief 'if it finds that a declaratory judgment action will not serve a useful purpose or is otherwise undesirable.'" *Id.* at 373 (further providing that "the court 'must ask whether the requested declaratory judgment will (1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action.'") (citations omitted). At least with respect to the Trustee and the Debtors' estates, a declaratory judgment is further inappropriate here because any claim against the Debtors' estates belongs in the claims resolution

process as discussed above.³  Nor has CIT even rebutted the Trustee's argument that declaratory relief here is inappropriate because CIT has not alleged that it possesses a lien on, property interest in, or constructive trust over the $2 million Administrative Claim Fund that may justify its alleged superior interest.  *See* Motion to Dismiss Opening Brief at ¶ 23.

15.  The Court should therefore dismiss CIT's claim for declaratory judgment against the Trustee and the estates with prejudice.

## IV.  The Complaint Fails to State a Claim for Unjust Enrichment and Restitution

16.  CIT does not dispute that "[t]he ***essential inquiry*** in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (N.Y. 1972) (emphasis added).  Nor does CIT dispute that "[g]enerally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Id.*

17.  Rather, CIT disputes that it would be inequitable to order restitution in favor of CIT.  CIT is mistaken.⁴  Most importantly, there is no inequity to CIT in dismissing Count II where

---

3  CIT's argument that the CIT Admin Claim does not preclude its declaratory judgment claim fails for the reasons provided above that CIT's Admin Claim precludes CIT from raising the claims in the Complaint in its entirety.  Section 551 is also applicable here because the Administrative Claim Fund is property of the estates and any avoided transfers are recovered for the benefit of the estates as a whole and not solely CIT.

4  CIT's cited case law to support that parties to a vacated settlement agreement "should be restored to their original economic position" is similarly inapposite.  *See* Opp. Br. ¶ 65.  None of the cited cases involve the unique circumstances here where a proponent of the settlement previously sought, and obtained in the District Court, a dismissal of an Appeal as equitably moot arguing that recovery of its own funds would be "virtually impossible." *See* Equitable Mootness Br. at 8.  Indeed, the *Northwestern Fuel Co.* case, which does not involve a settlement, provides that a court has the power "to restore, ***so far as possible***, the

7

CIT is seeking a solution to a problem wholly of its own making (and to the extreme detriment of the Debtors' estates and creditors). CIT's claim against the Trustee for unjust enrichment fails for this reason alone. It would be inequitable to force the Trustee and the Debtors' estates to pay for the risk voluntarily assumed by CIT.

18. Further, as CIT argued in the Equitable Mootness Brief, the Administrative Claim Fund, in addition to other funds, were disbursed to administrative and unsecured creditors over six years ago. *See* Equitable Mootness Br. at 9 (stating that over $1.5 million was paid on administrative expense claims and that over 1,000 checks totaling over $1 million had been disbursed to priority unsecured tax claimants and general unsecured creditors). At a minimum, the Trustee, Debtors, and their estates did not retain the Administrative Claim Funds and restitution against the Trustee and the Debtors' estates would be inappropriate.

19. It is further inequitable to award CIT restitution here because, much like CIT's attempt to seek the same relief in the Complaint as in the CIT Admin Claim, CIT seeks to simultaneously block the Trustee from pursuing the LBO Adversary and to recover the Administrative Claim Fund from the Debtors' estates. This would have the effect of allowing CIT to recover the $2 million it paid into the Administrative Claim Fund under the Proposed Settlement Agreement while simultaneously obtaining a free *de facto* release. CIT simply cannot have it both ways.[5] *See Mazza v. Sheet Metal Workers' Nat. Pension Fund*, 410 F. App'x 464, 468 n.1 (3d Cir.

---

parties to their former position." *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891) (emphasis added). CIT's reliance on dicta in *Tribune* is similarly misplaced for the same reasons as discussed in the Motion to Dismiss, which CIT has not rebutted, to include that the funds at issue in *Tribune* were not fully disbursed. *See* Motion to Dismiss Opening Brief at 12 n.11 (citing *In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015)).

[5]  CIT also raises issues unique to its motion for judgment on the pleadings in the LBO Adversary and a release in the Final DIP Order that CIT alleges bars the Trustee's claims. Although it is not appropriate to litigate those issues here, the Trustee reiterates that the

2010) ("[R]estitution is inequitable where the payor seeks to recoup a payment, though he has obtained a benefit from that payment which he intends to retain.") (citation omitted).

20.  Moreover, the Proposed Settlement Agreement, although now vacated, governed the conduct of the parties at the time that CIT decided to fund the Administrative Claim Fund. The Proposed Settlement Agreement provided that CIT had to fund the Administrative Claim Fund only after the Proposed Settlement Agreement was approved by a final, non-appealable order. Proposed Settlement Agreement ¶¶ 2(a), 17-18.  Nonetheless, CIT assumed the risk of funding the Administrative Claim Fund in order to moot the Appeal with no clear provision or plan for what would happen if the Settlement Order was overturned.  Indeed, the more "impossible" it is to recover the disbursed Administrative Claim Fund, the stronger CIT's equitable mootness argument was on Appeal. *See* Equitable Mootness Br. at 7-8 (detailing actions taken under the Proposed Settlement Agreement and arguing that "[a]ny attempt to undo these transactions and events and return to the status quo that existed before the Bankruptcy Court entered the Settlement Order and the parties consummated the Settlement Agreement would be virtually impossible.").

21.  Furthermore, to the extent CIT has a claim for restitution (it does not), such a claim belongs in the claims resolution process in the main bankruptcy proceeding and not in an adversary complaint as CIT acknowledged in the CIT Admin Claim as discussed above.  *See* CIT Admin Claim ¶¶ 32-33 (citing case law for the proposition that "restitution constitutes a basis for an ***administrative claim***") (emphasis added).

---

    release in the Final DIP Order is inapplicable to the Trustee and the out-of-circuit case law relied upon by CIT is inapposite for the reasons stated in its *Combined (I) Opposition Brief to Sun Capital's and CIT Group/Business Credit, Inc.'s Motions for Judgment on the Pleadings, and (II) Reply Brief in Support of Motion to Substitute Chapter 7 Trustee as Real Party in Interest* [LBO A.D.I. 136].

9

22. Finally, unlike *Professional Staff Leasing Corp. v. Unicare Life & Health Ins. Co.*, dismissal of the CIT's restitution claim here does not require "factual considerations," but may be decided based on the record of these cases and the documents attached to the Complaint. Here, the Trustee's motion to dismiss is based entirely on the Complaint and its attachments, matters of public record, and prior judicial opinions. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009). ("Courts[, on a motion to dismiss,] can review documents attached to the complaint and matters of public record, … and a court may take judicial notice of a prior judicial opinion.").

23. For these reasons, the Complaint fails to state a claim for unjust enrichment and restitution and Count Two should be dismissed.

## V.   The Complaint is Barred by the Doctrine of Laches

24. As established in the Motion to Dismiss, and contrary to the Opposition, there *is* a basis to dismiss the Complaint for laches. Specifically, and as cited in the Motion to Dismiss, at least one bankruptcy court in this district has dismissed a complaint asserting breaches of a post-petition settlement agreement where the plaintiff waited "approximately two years before filing the Complaint." *In re Hayes Lemmerz Int'l, Inc.*, Adv. No. 11-53881 (MFW), Bankr. No. 09-11655 (MFW), 2013 WL 1910312, at *5 (Bankr. D. Del. Apr. 25, 2013). Similar to *Hayes*, a case not discussed in the Opposition despite being cited in the Motion to Dismiss, CIT waited over two years between the remand to the Bankruptcy Court on or about May 16, 2017 [D.I. 1759] and CIT's filing of the Complaint on June 3, 2019 [A.D.I. 1].

25. Moreover, laches can apply to bar claims even when an analogous statute of limitations has yet to run. *See Whittington v. Dragon Grp. L.L.C.*, No. CIV.A. 2291-VCP, 2008 WL 4419075, at *7 (Del. Ch. June 6, 2008) ("The 'doctrine of laches also permits this court to hold a plaintiff to a shorter period if, in terms of equity, the plaintiff should have acted with greater alacrity, and when the plaintiff's failure to seek equitable relief with alacrity threatens prejudice to

the other party.'") (quoting *Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 808 (Del. Ch.2007)); *see also Churma v. U.S. Steel Corp.*, 514 F.2d 589, 593 (3d Cir. 1975) ("Prior to the running of the statute, the defendant has to prove laches, but thereafter the plaintiff has to disprove laches.").

26. Even assuming, as CIT urges, that a three year statute of limitations applies, the Court should still bar the Complaint under the doctrine of laches because CIT "should have acted with greater alacrity" and its failure to do so "threatens prejudice to" the Debtors' estates and creditors. *Whittington v. Dragon Grp. LLC*, 2008 WL 4419075, at *7. As CIT argues, it is entitled to recover an administrative claim against the Debtors' estates to the extent that it is unable to recover the Administrative Claim Funds from creditors. Opp. Br. ¶ 47. Further, as CIT concedes, "the Committee's former financial advisor no longer exists," and therefore CIT alleges that it "has an administrative claim against the estates to recover the amounts that were paid to such financial advisor." *Id.* Moreover, at least one other alleged recipient of disbursements of the Administrative Claim Fund, and a former named defendant in the Complaint, filed for bankruptcy relief during CIT's delay in filing the Complaint. *See id.* at ¶ 83 ("Sungard filed for relief under chapter 11 of the Bankruptcy Code and has been dismissed from this Adversary Proceeding."); *see also* Voluntary Petition for Non-Individuals Filing for Bankruptcy, *In re Sungard Availability Services, LP*, Case No. 19-22914-rdd (Bankr. S.D.N.Y. May 1, 2019) (former defendant Sungard Availability Services, LP filing for chapter 11 relief more than a month before CIT filed the Complaint).

27. Although the Trustee disputes CIT's arguments, taken as true, it merely demonstrates that the estates and creditors will be, and have been, prejudiced by CIT's inexcusable delay in bringing the Complaint where (i) funds were disbursed to creditors over six years ago

pursuant to a non-final Settlement Order so that CIT could seek equitable mootness in the Appeal, (ii) creditors that received funds have ceased to exist and/or can no longer be recovered from; and (iii) despite being a party to the Appeal and keenly aware of the vacatur of the Settlement Order CIT waited over two years to commence the Complaint.

28. Moreover, the facts necessary to establish the Trustee's laches defense—among other things: (i) the timing of disbursements under the Proposed Settlement Agreement; (ii) CITs efforts to equitably moot the Appeal; (iii) the vacatur of the Settlement Order by the Supreme Court; (iv) that at least some creditors receiving disbursements from the Administrative Claim Fund ceased to "exist" during the time of CIT's delay in filing the Complaint; and (v) that CIT waited over two years to file the Complaint—are clear on the face of the Complaint, the record in these bankruptcy cases, and/or other matters of public record, or are otherwise admitted by Plaintiff as noted above. The Court may therefore consider these facts on the Trustee's motion to dismiss. *See McTernan*, 577 F.3d at 526.

29. Under these unique circumstances, the Court here should bar the Complaint under the doctrine of laches.[6]

---

[6] CIT offers no explanation for why it waited over two years to file the Complaint other than to recite procedural history of the Trustee's actions that have no bearing on CIT's inaction in filing the Complaint. *See* Opp. Br. ¶¶ 73-77. Further, although CIT notes, with emphasis, that it filed the Complaint "[l]ess than *two months*" after the Trustee filed its motion to substitute in the LBO Adversary, CIT's own filings show that it was aware of the Trustee's intention to substitute as the real party in interest in the LBO Adversary at least four months before CIT filed the Complaint. *See* CIT Admin Claim at 7 n.5 (noting, on February 11, 2019, that "[t]he Chapter 7 Trustee claims he has standing to 'step into the shoes' of the plaintiff" in the LBO Adversary).

**VI.     The Complaint is Barred by the Doctrine of Judicial Estoppel**

30.     Finally, CIT's argument that "[t]his is not a case where CIT had rushed to fund the Administrative Claim Fund to moot an appeal" (Opp. Br. ¶ 84) is not availing because CIT still used the consummation of the Proposed Settlement Agreement to its strategic advantage in the Appeal and has taken an irreconcilably inconsistent position in this Adversary Proceeding. Thus, CIT should be barred by the doctrine of judicial estoppel from arguing that the Administrative Claim Fund should be returned. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (citations omitted).

31.     Indeed, CIT used the consummation of the Proposed Settlement Agreement to its strategic advantage—their actions were not a mistake and cannot be countenanced as such. Rather, CIT's actions were calculated steps taken by a sophisticated entity; represented by equally sophisticated counsel.

32.     Contrary to CIT's assertion, the Trustee does not argue that seeking equitable mootness *alone* constitutes "bad faith." *See* Opp Br. ¶ 85 (citing *Official Comm. of Unsecured Creditors v. SGPA, Inc.* (*In re SGPA, Inc.*), 34 Fed. Appx. 49, 53 (3d Cir. 2002). Rather, the Trustee takes issue with CIT arguing in the district court that it would be "virtually impossible" to recover the Administrative Claim Fund and then, after the Settlement Order is vacated, seeking to do just that in the Complaint. *See* Equitable Mootness Br. at p. 8, 12. CIT's argument that "[t]here is no bad faith if a party's prior position was not adopted or accepted by a court" (Opp. Br. ¶ 86), ignores that CIT was able to persuade the district court that recovery of the disbursed Administrative Claim fund was "impossible" such that "judicial acceptance of [CIT's] inconsistent position in [this] later proceeding would create 'the perception that either the first or the second

court was misled.'"[7] *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted); *see also Czyzewski v. Jevic Holding Corp.* (*In re Jevic Holding Corp.*), 2014 WL 268613, at *4 (D. Del. Jan. 24, 2014), *vacated and remanded on other grounds*, 688 F. App'x 166 (3d Cir. 2017) (holding that Appeal was equitably moot "in view of the settlement" and finding "that the settlement has been substantially consummated as all the funds have been distributed").

33. Finally, there is no bad faith on the part of the Trustee here. The Trustee is seeking to recover on claims timely raised in the LBO Adversary and further believes that he and the Debtors' estates should not have to bear the burden of CIT's mistaken gamble on equitable mootness in the Appeal.

34. The Court should therefore apply the doctrine of judicial estoppel to prevent CIT from pursuing the Complaint.

## VII. The Court Should Deny CIT Leave to Amend as Futile

35. The Court should deny CIT's request for leave to amend because the Complaint's deficiencies identified above and in the Motion to Dismiss cannot be remedied by amendment and, therefore, any attempt to amend would be futile.

---

[7] CIT's citation of *Montrose Med. Grp. Participating Sav. Plan v. Bulger* for the proposition that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency" is therefore inapposite here where the district court adopted CIT's argument and held, in the alternative, that the Appeal was equitably moot. 243 F.3d 773 (3d Cir. 2001).

**CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order: (i) dismissing the Complaint with prejudice as against the Trustee and the Debtors' bankruptcy estates; and (ii) granting such other and further relief as the Court deems just a proper.

Dated: July 7, 2020
      Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

  */s/ Michael J. Barrie*
Michael J. Barrie (No. 4684)
Jennifer R. Hoover (No. 5111)
Kevin M. Capuzzi (No. 5462)
Sean A. Meluney (No. 5514)
Matthew D. Beebe (No. 5980)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
jhoover@beneschlaw.com
kcapuzzi@beneschlaw.com
smeluney@beneschlaw.com
mbeebe@beneschlaw.com

*Special Litigation Counsel for George L. Miller, Chapter 7 Trustee*

15