# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In<br><br>JEVIC HOLDING CORP., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>v.<br><br>JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., *et al.*; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP,<br><br>Defendants. | Adv. Pro. No. 19-50256 (BLS) |

## REPLY OF PACHULSKI STANG ZIEHL & JONES LLP
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Pachulski Stang Ziehl & Jones LLP ("PSZJ") hereby submits this reply memorandum of

points and authorities (this "Memorandum") in support of its *Motion to Dismiss Complaint for*

---

[1] The Debtors in this Chapter 11 case, along with the last four digits of the Debtors' federal tax identification numbers are:  Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

*Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* (the "Motion to Dismiss") [Dkt. 19]. In support thereof, PSZJ respectfully states as follows:

### Introduction

1. On May 15, 2020, CIT filed its response to the Motion to Dismiss (the "CIT Response"). [Dkt. 32]. For the reasons set forth in *PSZJ's Memorandum of Points and Authorities in Support of its Motion to Dismiss Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)* [Dkt. 20] and below, CIT's contentions fail to stave off dismissal of the Complaint.

2. On May 26, 2020, George Miller, in his capacity as chapter 7 trustee (the "Trustee") in these cases and a named defendant in the instant adversary proceeding, filed the *Chapter 7 Trustee's Motion to Dismiss Adversary Complaint* (the "Trustee's Motion") [Dkt. 37], and his opening brief in support thereof. [Dkt. 37-1]. On June 26, 2020, CIT filed its opposition to the Trustee's Motion [Dkt. 40], and on July 7, 2020, the Trustee filed a reply in further support of the Trustee's Motion. [Dkt. 42].

3. PSZJ hereby joins in the Trustee's Motion and incorporates the arguments set forth in the Trustee's motion papers, including without limitation the compelling argument that the adversary complaint violates the automatic stay.[2]

---

[2] In this regard, CIT has admitted that in exchange for dropping the instant adversary proceeding against several named defendants, it has collected payments from the named defendants that are more than arguably estate property and CIT has refused to disclose the amount of the payments it has received to date.

**ARGUMENT**

**I.     CIT'S Arguments Premised On The Existence Of An
        "Administrative Fund" Which Was CIT's Property Are Without Merit**

4.     The foundation of CIT's opposition to the Motion to Dismiss is the fallacious notion that a pot of identifiable money called the "Administrative Fund" existed and which was, and remains, CIT's property to recover. Thus, CIT argues that section 549 of the Bankruptcy Code governing the recovery of avoidable post-petition transfers of estate property is inapplicable because the funds CIT paid the estate in connection with the Settlement somehow remained CIT's property even after (a) they were deposited into the Debtors' bank account and (b) the Debtors disbursed those funds to creditors. CIT's arguments are factually incorrect and legally untenable.

5.     CIT retained no property interest in the funds once it parted with them, does not (nor could it) assert a constructive trust over the funds and thus the fundamental premise of its argument that section 549 does not apply is simply wrong. Similarly, CIT's contention that it can bypass the Debtors altogether and assert direct claims of restitution against payees of the Debtors is based on the same misguided premise that the funds remained CIT's property even after being paid to the estate under the settlement and disbursed to administrative creditors. This fatal flaw mandates dismissal of its complaint.

6.     CIT cannot credibly dispute that after the parties to the Settlement agreed to waive the final order requirement and consummate the Settlement in the face of a pending appeal, CIT paid money into the Debtors' bank accounts where it was commingled with other funds. The Debtors did not place CIT's settlement payment in a segregated account. Rather, once the funds were paid by CIT to the Debtors, they became property of the Debtors' estates pursuant to Sections 541(a) of the Bankruptcy Code.

7. Notably, CIT never requested nor demanded that the CIT Payment be segregated or that the Debtors refrain from distributing the settlement funds to creditors until the WARN Claimants' appeal of the Settlement was resolved.[3] Nor did CIT request or demand a provision in any document or order requiring the return of the CIT Payment in the event that the Order approving the Settlement was overturned. In short, CIT gambled that its strategy to moot out the appeal would work; it did not, and as a result, CIT is left with an administrative claim against the estate, not a right to violate the automatic stay and sue creditors of the bankruptcy estate for the return of funds that CIT contemporaneously knew were paid to them by the Debtors – all without objection by CIT.

8. CIT consented to the making of these payments in conjunction with the parties' modification of the Effective Date of the Settlement, and the funds were used for the purposes contemplated by the Settlement and the Bankruptcy Code. Once the Debtors made those payments, the funds were no longer property of the estates but became the property of the creditors who received the payments. CIT cannot credibly assert that it retained a property interest in those funds after they were paid to administrative creditors of the estate -- many of whom CIT has sued in this action – after notice and entry of this Court's orders. Even if similar amounts were repaid to the Trustee, the only appropriate party to seek any such relief, there would still be no basis for CIT to assert a property interest in those funds collected by the estate. In short, the Administrative Fund concept is a baseless construct that does not survive scrutiny.

9. CIT appears to have conceded this point in its opposition to the Trustee's motion to dismiss. Countering the Trustee's argument that Debtors were a "conduit" through which administrative claimholders were paid for services rendered, CIT insists that the Debtors

---

[3] Indeed, CIT and the other parties to the Settlement Agreement hoped that the disbursal of the funds from the CIT Payment to legitimate creditors would provide a basis for the appeal to be dismissed as equitably moot.

were not mere conduits because the Debtors used the funds to pay their administrative creditors. That necessarily implies that CIT parted ownership with the funds and they became property of the estate, and were no longer property of CIT, a fundamental underpinning to many of its arguments.

10. CIT also argues that once the Settlement Order was vacated by the Supreme Court, it is as if this Court's Order approving the Settlement never existed and since the funds it paid were in CIT's hands and hence its property before the Settlement Order was entered, per force it is entitled to revert to the status quo ante when the funds were in CIT's hands. That overly simplistic view ignores the fact that CIT voluntarily waived the final order requirement and took its chances to try and moot the pending appeal, an intervening event which undermines its right to revert to the pre-Settlement Order status.

11. Because there was and is no discrete "Administrative Fund" in which CIT holds any property or security interest or any other basis for it to assert that funds in the hands of the Defendants, including PSZJ, are its property, its arguments in opposition to the Motion to Dismiss premised on that notion – nearly all of its arguments in response -- must fail.

## II. **CIT's Putative Restitution Claim Is Subject To Additional Defenses**

12. CIT's inability to establish that it had a continuing property interest in the $2 million that it voluntarily paid to the estate is fatal to its claims. In addition, however, its putative restitution claim suffers from further irreparable defects.

### A. **CIT Cannot Assert A Claim For Restitution Against Third Parties**

13. If CIT has any right to restitution, it is only against the party it contracted with and paid its money to, the Debtors, not creditors of the estate with whom CIT has no privity. Nothing in CIT's opposition to the Motion to Dismiss supports a contrary conclusion, and thus CIT's restitution claims against PSZJ and other defendants must be dismissed.

14. As argued in the Motion to Dismiss, a party who satisfies a judgment may be entitled to recover the amounts paid, if the judgment is overturned, from the judgment creditor. However, the law also dictates that third parties, including attorneys, who receive the funds from the judgment creditor are not required to return the funds received. PSZJ and CIT both cited to an analogous case, *Chesapeake Trust v. Chesapeake Bay Enter. (In re Potomac Supply Corp.)*, 2016 Bankr. LEXIS 509 (Bankr.E.D. Va. 2016), wherein counsel to the debtor was paid from a contract deposit that was later ordered to be returned. By the time the order granting the contract counterparty's motion to compel the return of the deposit, the funds had been exhausted to pay the fees of debtor's counsel, Pillsbury, such that absent a right of restitution in favor of Chesapeake and against Pillsbury, any judgment on the motion would be uncollectable.

15. In considering whether Chesapeake had a right of restitution directly against Pillsbury, the court looked to the Restatement of The Law (First), Restitution (the "First Restatement") and the Restatements of the Law 3d, Restitution and Unjust Enrichment (the "Third Restatement") and determined the rules paraphrased below (the "Rules") apply:

(1) As between two litigants, a defendant who satisfies a judgment is ordinarily entitled to restitution from the plaintiff if the judgment is overturned.[4][5]

(2) An attorney for the Plaintiff who is paid from the proceeds of the Defendant's payment is not required to disgorge its

---

[4] Section 74 of the First Restatement states "A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess."

[5] Section 18 of the Third Restatement states "A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment."

>       fees on account of a restitution claim by the Defendant.[6]
>       This rule has exceptions covering attorneys who were paid
>       under contingency fees[7] and lawyers that are aware that the
>       judgement was obtained on account of its client's fraud.[8]
>
> (3)   The Rules protecting Attorneys and other creditors of the
>       plaintiff from having to disgorge do not apply if the
>       creditor is a "real party in interest" in the litigation.[9]
>       Ordinarily an attorney for a party is not a real party in
>       interest in the litigation.[10]  A real party in interest is one
>       who receives payment as the beneficial owner or one of the
>       beneficial owners.[11]

16.    The court concluded that a lawyer for a party, in that case Pillsbury, was not required to make restitution unless Pillsbury was a "real party in interest" in addition to representing the trust, the result would change.[12]  And based on the peculiar facts of the case, the Court determined that Pillsbury was in fact a real party in interest insofar as it was not just the debtor's attorney, but subsequently was appointed as trustee of the liquidation trust formed under

---

[6] Section 74 of the First Restatement comment h states "h. *Restitution from attorney or agent of judgment creditor.* An attorney or other agent of the judgment creditor who receives payment from the judgment debtor or who receives the proceeds of sale of the debtor's things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge [*28] of any fraud used in securing it.  Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him (see Illustration 20) since he received the money as a bona fide purchaser."

[7] Section 67 of the Third Restatement states "[A] lawyer who receives a share of a judgment *pursuant to a contingent-fee arrangement* does not take the money as a bona fide payee, notwithstanding that the lawyer takes the money in good faith.  Between lawyer and client, in such circumstances, the lawyer assumes the risk of nonrecovery: This makes the lawyer, not the client's creditor, but an assignee pro tanto of the client's judgment. Vis-à-vis the judgment debtor, therefore, the lawyer stands in the position of the judgment creditor."

[8] Section 74 of the First Restatement states "the attorney of the judgment creditor who conducted the proceedings… If the judgment reversed was void … if he knew that the judgment was obtained by fraud, he was a participant in a tort and cannot… escape liability for having dealt with the debtor's things."

[9] Comment k to the First Restatement section 74 states "*Restitution against other parties*.  After the reversal of a judgment any person who, although not a party to the action, was a real party in interest and who received payment in whole or in part as the beneficial owner or as one of several owners, is under a duty to restore the amount received by him."

[10] *Supra* n.7.

[11] *Supra* n.9.

[12] "[T]he Court concludes that equity does not demand that Pillsbury return the funds, *unless* Pillsbury is the real party in interest with respect to the funds." *In re Potomac Supply*, 2016 Bankr. LEXIS 509 *40.

the debtor plan, was counsel to the trust and a beneficiary of the trust, and had complete control over the decisions of the trust regarding the litigation and the deposit. Pillsbury exercised its own discretion to pay itself and delayed in disclosing this to the courts. In *Potomac*, Pillsbury was a quintessential "real party in interest" and was ordered to pay restitution on that basis.[13]

17. Here, in sharp contrast, PSZJ was committee counsel who received payments from the estate on account of its final fee application. The fee applications were approved by the Court after notice to all parties in interest and without objection by CIT. Thus, while the legal principles of *Potomac* are instructive, the facts are plainly distinguishable. CIT's reliance on a provision in the Settlement Agreement for the payment of a small portion of PSZJ's unpaid fees at the time hardly puts PSZJ in the position of Pillsbury in *Potomac*.[14]

### B. Restitution Claims Are Subject To Equitable Defenses[15]

18. The facts and circumstance of this case render CIT's restitution claim particularly susceptible to equitable defenses. In order to determine the parties' rights, a court must balance the equities and consider whether (a) CIT assumed the risk of the appeal by the

---

[13] "Pillsbury occupied the position not just of the primary beneficiary (the only beneficiary, as it turns out) but that of Trustee and sole decision-maker as well. Thus, even though the Court would not order a return of the Deposit from Pillsbury if Pillsbury simply occupied the position of counsel for the Trust, the Court concludes that Pillsbury is the real party in interest for purposes hereof, and, therefore, will order a return of the deposit." *Id*. at 42.

[14] Similarly misguided is CIT's heavy reliance on *In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015). That case, which involved the appeal of a confirmed plan, is factually inapposite in numerous respects, and does not support the grander propositions CIT advances regarding its claim for restitution in this case. There, the Third Circuit held that equitable mootness would not be applied to dismiss an appeal of plan confirmation where the relief sought would not "(a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." The court did not order disgorgement of any funds, but did determine that if disgorgement or another remedy were ordered on remand the confirmed plan would survive. That is the extent of the ruling and it is otherwise irrelevant here.

[15] "Restitution is an equitable remedy, and no party is absolutely entitled to it in all circumstances." *See, e.g., Nelson*, 137 S. Ct. at 1260 (restitution is "'equitable in origin and function,' and return of the money was 'not of mere right,' but 'rest[ed] in the exercise of a sound discretion.'") (quoting *Atlantic Coast R. Co.*, 295 U.S. at 309-10). Similarly, unjust enrichment "is undoubtedly equitable and depends upon broad considerations of equity and justice." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972). Motion to Dismiss ¶ 58.

WARN claimants and (b) it would be equitable to require third-party administrative creditors who got paid upon court order to surrender their earned payments under these circumstances.

19. CIT's contention that it made the $2 million settlement payment "at the Committee's urging" is remarkable, without evidentiary support, and legally irrelevant. [Dkt. 40, ¶ 9]. CIT is a sophisticated financial institution that made a calculated decision about the risks and rewards of consummating the settlement in the face of a non-final order; its suggestion that it acted against its own self-interest in the face of the Committee's coercion is not credible. Pursuant to the terms of the Settlement Agreement, CIT was not required to close or fund if an appeal was pending. CIT decided to make the CIT Payment voluntarily and with full knowledge of the facts, circumstances and risks.[16] It knew of the existence of the appeal and decided to make CIT's payment and run the risk that the Order would be overturned. Under the facts and circumstances, it is readily apparent that CIT calculated that the risk of the Order being overturned and not being able to get its money back was small compared to the benefits of the settlement, which asserted claims against CIT for tens of millions of dollars. Moving forward with the Settlement and paying $2 million to the estate while reserving no protections whatsoever in the event the Order was overturned, constitutes an assumption of the risk of the appeal.[17] [18]

---

[16] In this regard, CIT's claim may be subject to the voluntary payment doctrine, which holds that "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Pondersosa Pine Energy, LLC v. Illinova Generating Co.*, No. 05-15-00339-CV, 2016 Tex. App. LEXIS 7578, at 103 (Tex. App. July 14, 2016).

[17] Section 11(1) of the First Restatement states "[a] person is not entitled to rescind a transaction with another if, by way of compromise or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution."

[18] Section 5(3)(b) of the Third Restatement states "(3) A claimant bears the risk of a mistake when… (b) the claimant has consciously assumed the risk by deciding to act in the face of a recognized uncertainty…"

20. Under the circumstances, as an equitable matter, CIT claim to seek recovery from Jevic is subject to equitable defenses given its assumption of the risk.[19] And a balancing of the equities would also bar CIT from any claim of restitution from the recipients of payments by the Debtor as they received payment on account of services rendered and goods delivered for the benefit of the Debtors' estates, after notice and the entry of court orders.

21. CIT's claims are also barred under the equitable doctrine of laches and judicial estoppel, for the reasons set forth in the Trustees' motion to dismiss.

### III.  CIT's Declaratory Judgment Claim Must Be Dismissed

22. CIT did not effectively rebut PSZJ's argument that it is misusing the declaratory judgment action to seek a determination of past conduct. Moreover, CIT's substantive claim to declaratory relief is subject to the same defect as its restitution claim, it assumes without a factual or legal basis that it has a continuing property interest in funds it voluntarily paid into the estate seven years ago in an attempt to moot a pending appeal.

---

[19] Illustration C to Section 11(1) of the First Restatement states "The chief instance for the application of the rules stated in this Section is in the case of a compromise; that is, an agreement for the settlement of a real or supposed claim in which each party surrenders something in exchange for a concession by the other. The fact that the claim of one of them proves to be invalid does not, if the claim was honestly made, entitle the other to rescind and to obtain restitution.

## **CONCLUSION**

23. For the reasons set forth in PSZJ's Opening Memorandum and herein, PSZJ respectfully requests that the Court dismiss the Adversary Proceeding with prejudice as against PSZJ, and grant such other and further relief as it deems just and proper.

Dated: July 10, 2020

PACHULSKI STANG ZIEHL & JONES LLP

 */s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
Robert J. Feinstein (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Richard E. Mikels (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  bsandler@pszjlw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          rmikels@pszjlaw.com